JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

KAREN S. BLOOM
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098 (phone)
(804) 819-7417 (fax)
robert.c.merritt@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and BETSY DEVOS, in her official capacity as Secretary of Education,<br><br>Defendants. | No. 3:17-cv-7210-SK<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY OF PROCEEDINGS AND TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Date: August 19, 2019<br>Time: 9:30 a.m.<br>Place: Courtroom C, 15th Floor<br>Magistrate Judge Sallie Kim |

**INTRODUCTION**

On August 30, 2018, the Court stayed district court proceedings pending resolution of Defendants' appeal of the Court's preliminary injunction order, finding that a stay would promote judicial economy because, among other things, it would prevent the Court from having to "address the summary judgment claims in piecemeal fashion."  Order at 6, ECF No. 88 ("Stay Order"). That remains the case today, notwithstanding Plaintiffs' motion to lift the stay of proceedings, ECF No. 103 ("Pls.' Mot.").  The Ninth Circuit's ruling will provide significant, if not dispositive, guidance on central legal questions—such as whether the methodology the Department of Education ("Department") developed in December 2017 to evaluate certain types of borrower defense claims (which Plaintiffs and the Court have termed the "Average Earnings Rule") violates the Privacy Act or is arbitrary and capricious—and substantially shape the litigation moving forward.  Proceeding "piecemeal" with potentially duplicative litigation without that guidance remains a wasteful and inefficient exercise regardless of when the Ninth Circuit issues its ruling. There is thus no basis to grant Plaintiffs' request to lift the stay.

Moreover, the efficiency gained by staying proceedings outweighs any harm to Plaintiffs that will result from the continued stay.  The Department is committed to complying with the Court's preliminary injunction and ensuring that covered borrowers are not required to make payments on their loans.  Regrettably, in an operation as expansive as the Department's federal student loan program, implementation of the injunction has faced challenges and, as Plaintiffs' motion highlights, there have been limited instances in which students covered by the injunction were temporarily and inadvertently placed by their loan servicers in an incorrect repayment status. But as explained below, the Department has worked diligently to rectify these servicer errors once they have been brought to the Department's attention.  With this filing, the Department submits a declaration describing the efforts the Department has taken to comply with the preliminary injunction, including actions taken in response to the specific issues Plaintiffs have identified and actions the Department plans to take going forward to prevent similar issues from arising in the future.  The Department is also willing, should the Court find it necessary, to submit periodic status reports that detail its ongoing oversight and compliance efforts.

Defendants believe that these safeguards will do more to ensure that Plaintiff class members are not harmed during the remaining pendency of the Court's stay than moving forward with proceedings (*e.g.*, filing an answer or administrative record, deciding a privilege dispute) that will not themselves provide Plaintiffs any relief.  As this Court has recognized, the Ninth Circuit's ruling on legal issues that are central to Plaintiffs' complaint is a necessary precondition to the Court "deciding the final relief, if any" in this case.  Stay Order at 6.

Therefore, the Court should deny Plaintiffs' request to proceed in piecemeal fashion and allow the stay to remain in place until the Ninth Circuit rules on Defendants' appeal.  During that time period, should the Court deem it necessary to alleviate any concerns about the continued effectiveness of the preliminary injunction, the Department will provide periodic status reports detailing its compliance.

## ARGUMENT

### I.   THE DEPARTMENT'S GOOD FAITH EFFORTS TO ENSURE COMPLIANCE AND REMEDIATE HARM TO BORROWERS

As the Court is aware, it granted in part and denied in part Plaintiffs' motion for a preliminary injunction on May 25, 2018.  *See* ECF No. 60 ("PI Order").  In that original opinion, the Court temporarily ordered the Secretary to "cease all efforts to collect debts from Plaintiffs." *Id*. at 37.  On June 19, 2018, the Court issued an "Amended Order Regarding Plaintiffs' Motion for Preliminary Injunction," ECF No. 70 ("Amended Order"), which modified the PI Order to require the Secretary and the Department temporarily to "cease all efforts to collect debts from Plaintiffs and any other [Corinthian] borrower who has successfully completed the attestation form," *id*. at 1.  The Court later clarified that its orders did not require Defendants to "take any action with respect to individuals who have not yet submitted an attestation form."  ECF No. 89.

The Department has undertaken good faith efforts to comply with the Court's orders, as described in the attached declaration of Sara Hayhurst, Senior Advisor with the Department's office of Federal Student Aid ("FSA") ("Hayhurst Decl.").  These efforts, however, have been complicated by the fact the Department does not itself service federal student loans, a process that includes collecting payments and performing other administrative tasks.  *See* Hayhurst Decl. ¶ 7.

Defendants' Response in Opposition to Plaintiffs' Motion to Lift Stay of Proceedings and to Enforce Preliminary Injunction
No. 3:17-cv-7210-SK

3

Instead, the Department contracts with multiple loan "servicers" to provide these services, each of which has its own contract with the Department and its own "unique system, processes, and procedures." *Id*. ¶¶ 8-9; *see also* 20 U.S.C. § 1087f (directing the Secretary to enter contracts with entities to provide these services).  Collectively, these servicers manage the federal student loans of approximately 45 million borrowers, each of whom may have more than one federal student loan and records with more than one servicer. *Id*. ¶¶ 7, 13.  Given the sheer magnitude of this operation, it can take time for the Department to implement large-scale loan servicing changes and respond to any issues associated with loan servicing status.  Importantly, the Department cannot access the servicers' systems directly, but must instead rely on the servicers to comply with the Department's instructions and guidelines and make any necessary changes to their systems. *Id*. ¶¶ 10-12.

As Defendants have previously represented, it has long been the Department's policy, even before the Court entered its preliminary injunction, to provide, with certain exceptions, *see* Hayhurst Decl. ¶¶ 16, 19, forbearance to individuals with pending borrower defense applications and, for such borrowers already in default, to halt collection activities.[1] *See, e.g.*, Defs.' Brief in Resp. to Court's May 25, 2018 Order at 9-10, ECF No. 64.  Consistent with that policy, and to prevent the forbearance status of some borrowers with still pending applications from lapsing, the Department directed its servicers in March 2018 to place all individuals with pending borrower defense applications into forbearance or stopped collections status for a period of twelve months, in accordance with the Department's policy of providing forbearance for twelve months at a time, subject to renewal as needed.  Hayhurst Decl. ¶¶ 21-22.  In June 2018, to respond to the concern that borrower defense applicants' forbearance would lapse upon expiration of the twelve months, the Department additionally requested that servicers "implement a solution" to extend forbearance and stopped collections status indefinitely until notified otherwise by the Department. *Id*. ¶¶ 30-31.  And, in addition to the instructions the Department had already issued about placing borrowers

---

[1] The declaration explains that "forbearance" allows a borrower who is not in default to "temporarily stop making payments on the borrower's federal student loan."  When the Department places a borrower in "[s]topped collections status," it stops engaging in involuntary debt collection against a borrower who is already in default.  Hayhurst Decl. ¶¶ 17-18.

with pending applications into forbearance, the Department, in instructions issued on July 5, 2018 to implement the Court's preliminary injunction, required all servicers to place all borrowers who had received a partial discharge under the Department's now-enjoined "Average Earnings Rule," into forbearance or, as appropriate, stopped collections status, until further notice from the Department. *Id*. ¶¶ 43-47.  As of June 30, 2019, 15,017 borrowers had received a partial discharge and 59,764 Corinthian borrowers had pending borrower defense applications. *Id*. ¶ 37.  The Department engages in regular communications with its servicers to ensure that the preliminary injunction is followed and to resolve individual borrower issues as they arise. *Id*. ¶ 39.

Nonetheless, as outlined in Plaintiffs' motion, it appears that some servicers have committed some limited errors implementing the Department's instructions.  In particular, Plaintiffs point to a situation in the spring of 2019 in which some loan servicers notified borrowers covered by the Court's injunction that their loans were going back into repayment. *See* Pls.' Mot. at 3, 4.  As detailed in the Hayhurst Declaration, this issue resulted in part from the Department's migration of borrower defense data to a new platform, which unintentionally caused certain borrowers' forbearance or stopped collections status to lapse.  Hayhurst Decl. ¶¶ 24, 50-51.  As the declaration makes clear, however, this "should not have" happened. *Id*. ¶ 48.  Once made aware of the problem, the Department began working to remediate it "immediately," instructing servicers, through both automated system instructions and guidance letters, to confirm that all Corinthian borrower defense applicants covered by the Court's injunction were in the appropriate loan repayment status and, if necessary, to place them into the correct forbearance or stopped collections status, backdated to before the repayment issue arose and to cover the entirety of the period for which the borrower should have been in forbearance or stopped collections status. *Id*. ¶¶ 53-58.

In addition, the Department has engaged in oversight to confirm that the servicers have complied with the Department's instructions, confirming that the Department's three largest servicers, which together service approximately 90% of the Plaintiff class members' loans, had placed the loans of the majority of the class members that they service into proper repayment status. *Id*. ¶¶ 59-62.  While this process has been delayed somewhat by the difficulty of verifying

Defendants' Response in Opposition to Plaintiffs' Motion to Lift Stay of Proceedings and to Enforce Preliminary Injunction
No. 3:17-cv-7210-SK

5

the reasons an individual borrower may not be in forbearance (for example, he or she can choose to opt out), *see id*. ¶ 61, and other demands on FSA's resources, *id*. ¶¶ 65-66, FSA is committed to confirming, at least preliminarily, that all class members are in correct repayment status by late-August 2019. *Id*. ¶ 67. The Department anticipates being able to validate these results, and provide the Court with "high-level report of the *Manriquez* class members' repayment status on an aggregate level" by the end of September. *Id*. ¶ 68. In the meantime, to the extent borrowers continue to be affected by this servicer error, the Department intends to contact affected borrowers, through multiple means, and provide information about the steps they can take to fix the situation without making unnecessary payments on their loans. *Id*. ¶¶ 63-64, 68. As Ms. Hayhurst's declaration emphasizes, when borrowers raise issues related to their loan repayment status with the Department directly, "[s]uch issues are generally resolved within 48 hours and any [necessary] refunds of payments or offsets . . . can be issued quickly within weeks." *Id*. ¶ 82.

Plaintiffs also reference the situation of Erica Maupin, a class member who was informed on July 3 that her loans were back in repayment. Pls.' Mot. at 3, 5. This problem has only recently been brought to the Department's attention, but it was once again the result of an "individual servicer system issue," Hayhurst Decl. ¶ 70, and in contravention of the Department's repeated instructions that individuals covered by the Court's order be placed in non-repayment status. Ms. Maupin's declaration, which does not indicate that she made any payment on her loan in response to the notification, states that she has now been placed back into forbearance, Decl. of Erica Maupin ¶ 13, ECF No. 103-1 at 3, which the Department has confirmed with Ms. Maupin's servicer, Hayhurst Decl. ¶ 71. The Department has learned from the offending servicer that this system issue, which inadvertently caused a lapse in forbearance status on July 4, 2019, affected approximately 3,000 borrowers, but that the servicer has now "remediated" the issue and placed each of the 3,000 borrowers back in forbearance. *Id*. ¶¶ 72-73. The Department will be reviewing the servicer's work to ensure that the affected borrowers, as well as all other class members whose loan accounts are serviced by the offending servicer, are indeed in the correct forbearance status, as well as work with the servicer to "send notices to borrowers and refund any payments that might have been made in error." *Id*. ¶¶ 74-75. The Department is also working with other loan servicers

1    to confirm that this issue is unique to Ms. Maupin's servicer. *Id.* ¶ 76. At this time, however, Ms.

2    Hayhurst does not believe that this issue has affected class members whose loans are serviced by

3    other servicers. *Id.*

4         Moving forward, the Department is working to implement a "monthly compliance

5    monitoring process to mitigate forbearance and stopped collection lapses more proactively." *Id.*

6    ¶ 78. Should the Court deem it necessary, the Department is also willing to file periodic status

7    reports detailing these oversight and compliance activities. *Id.* ¶ 79.

8    **II.     THE COURT SHOULD LEAVE THE STAY IN PLACE**

9         In ordering the current stay of proceedings, the Court determined that the stay would

10   promote judicial economy and would not impose any significant harms on Plaintiffs because the

11   preliminary injunction is in effect. That remains the case today and, if anything, developments on

12   appeal have made a stay of further proceedings even more fitting than it was at the time the stay

13   was initially entered. The Ninth Circuit is now considering not only the Privacy Act claim that

14   formed the basis for this Court's preliminary injunction, but also Plaintiffs' claim that the

15   Department's so-called "Average Earnings Rule" is arbitrary and capricious, a topic on which the

16   Ninth Circuit ordered supplemental briefing. *See Manriquez v. DeVos*, No. 18-16375 (9th Cir.

17   Feb. 19, 2019), ECF No. 57. Nonetheless, Plaintiffs argue that three "intervening changes in

18   factual circumstances" warrant that the stay be lifted. Pls.' Mot. at 4. None is persuasive.

19        First, Plaintiffs argue that the Department's compliance with the injunction has been

20   "incomplete" and that, as a result, Plaintiffs are now subject to the type of collection activity that

21   "the Court found to constitute an irreparable injury." Pls.' Mot. at 4-5. But Plaintiffs do not

22   explain how moving forward with district court proceedings would alleviate that harm, particularly

23   where Plaintiffs have already conceded that "cross-motions for summary judgment should be

24   stayed pending the Ninth Circuit's decision," ECF No. 84 at 1, and, more importantly, this Court

25   has recognized that the appeal should be resolved before it can "decid[e] the final relief, if any,"

26   Stay Order at 6. As described above, the Department has endeavored to comply with the Court's

27   injunction, taken prompt action to remediate servicer-generated repayment status issues when they

28   have been brought to the Department's attention, and has pledged to engage in even more oversight

in the future.  *Cf. Am. Therapeutics, Inc. v. Sullivan*, 755 F. Supp. 1, 2 (D.D.C. 1990) (noting that an agency "must be given some leeway to remedy" the "good faith mistake[s]" that it promptly discovers and corrects).  And if the Court has concerns about compliance with the injunction moving forward, the Department is willing to submit future reports about the ongoing status of its compliance.  This increased monitoring is the proper, more targeted, response to any such concerns, not lifting the stay and moving forward with proceedings that will not provide Plaintiffs with any relief.

Second, Plaintiffs rely on the fact that the related *California v. DeVos*, No. 3:17-cv-7210, action is "moving forward." Pls.' Mot. at 5.  But as Plaintiffs themselves recognize, Plaintiffs and the State of California have "unique interests that each are pursuing in their respective litigation." *Id.* at 7.  Plaintiffs will have their chance to be heard on the "central issues" in this case, *id.*, regardless of the outcome of the *California* case.  And as the Court has already determined, the appropriate time for Plaintiffs to be heard is after the Ninth Circuit has resolved the pending appeal so that all of Plaintiffs' claims can be disposed of at once rather than in "piecemeal fashion." Stay Order at 6.  It is for this reason that Plaintiffs' alternative request for a "partial" lifting of the stay as to their "Corinthian Rule Counts" is just as inappropriate as their request that the stay be lifted in full.

Plaintiffs also reference the fact that this Court denied Defendants' request to stay proceedings in the *California* case pending the appeal in this action, but this point only underscores the Court's differing treatment of the two cases.  Whereas the Court necessarily accepted California's argument that Defendants should "answer California's complaint and submit an administrative record" while the appeal in this case is pending, Joint Case Management Statement at 3, *California v. DeVos*, 3:17-cv-7106, ECF No. 59, the Court *did not* credit Plaintiffs' nearly identical argument in opposing the stay of proceedings in 2018.  *Compare* Pls.' Mot. at 6-7 (arguing that the Ninth Circuit's decision "will not" and "cannot" impact "whether the Department agrees or disagrees with an alleged fact in this case" and "what documents explain or evidence the Department's [alleged] creation and abandonment of the Corinthian Rule"), *with* ECF No. 84 at 2 (arguing that it was "difficult to see how the Ninth Circuit could opine" on "issues related to the

Defendants' Response in Opposition to Plaintiffs' Motion to Lift Stay of Proceedings and to Enforce Preliminary Injunction
No. 3:17-cv-7210-SK

8

administrative record" or "whether the Department admits or denies the facts in the amended complaint"). That is presumably because the Ninth Circuit is addressing legal questions that are directly presented in this case, *i.e.*, whether the "Average Earnings Rule" violates the Privacy Act or is arbitrary and capricious, but were not presented in *California*. The Court did not find Plaintiffs' arguments on this point persuasive when it first entered the stay and there is no reason why it should find them any more persuasive now.

Moreover, contrary to Plaintiffs' contention, moving forward in this case would not avoid "potentially unnecessary proceedings." Pls.' Mot. at 6. Regardless of whether the *California* case will address some issues that overlap with this case, moving forward with *this case* risks the parties and the Court engaging in potentially unnecessary proceedings so long as the appeal remains pending, namely merits briefing or decisions on legal questions that the Ninth Circuit is currently considering. And if the case were instead to move forward only on the so-called "Corinthian Rule Counts," *see* Pls.' Mot. at 2, then the Court would have to do precisely what it has stated it wants to avoid: address Plaintiffs' claims in "piecemeal fashion" before it can decide "final relief, if any." Stay Order at 6.

Third, and finally, Plaintiffs argue that it is now clear that the appeal is "taking a substantial amount of time." Pls.' Mot. at 7. The Court's reasoning for entering the stay, however, was not dependent on the length of time the appeal would take, but rather on the efficiencies to be gained by waiting for the Ninth Circuit's guidance on key legal issues before embarking on wasteful and potentially duplicative proceedings. Regardless of when the Ninth Circuit rules, the efficient course remains to wait for that guidance, which, in any event, may come down at any moment as the appeal is fully briefed and ripe for a decision.

## III. THE DEPARTMENT DOES NOT OPPOSE FILING REASONABLE PERIODIC REPORTS DOCUMENTING THE STATUS OF ITS COMPLIANCE IF THE COURT DEEMS IT NECESSARY

In addition to their request that the Court lift the stay, Plaintiffs also request that the Court "enforce the preliminary injunction by requiring the Department to submit periodic compliance reports." Pls.' Mot. at 7. As noted above, the Department acknowledges certain limited instances of noncompliance with the injunction, largely due to the errors of its servicers. *See Howard Sober,*

*Inc. v. ICC*, 628 F.2d 36, 42 (D.C. Cir. 1980) (recognizing that "[t]o err is both human and inevitable in a large agency").  In recognition of that fact, as well as its commitment to rectify those errors and implement affirmative oversight mechanisms, the Department has submitted a declaration from a senior FSA advisor detailing its oversight and compliance efforts to this point, its specific efforts to respond to repayment status issues when they have arisen, and its plans to ensure that such issues do not arise in the future.  Further, the Department has committed to providing a high-level report of its efforts to confirm the class members' loan repayment status, using aggregate data, by the end of September.  Hayhurst Decl. ¶ 68.  And, if the Court deems it necessary going forward, Defendants can file periodic status reports detailing the Department's oversight and compliance activities.  As detailed in the Hayhurst Declaration, the Department would need some time to validate information and prepare these reports.  *See id.* ¶¶ 79-81.  The Department respectfully requests, however, that any report it files exclude borrower-level information, in order to protect the personally identifying information of the class members, but instead provide high-level statistical data detailing, at a more general level, whether class members are in correct repayment status.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to lift the stay of proceeds, including the alternative request to partially lift the stay as to certain of Plaintiffs' claims. The Court should deny Plaintiffs' motion to enforce the Court's preliminary injunction to the extent that its request that the Department "detail the loan repayment status of all class members" requires reporting publicly the personally identifying information of individual class members.

Dated:  July 29, 2019                              Respectfully submitted,

                                                                JOSEPH H. HUNT
                                                                Assistant Attorney General

                                                                MARCIA BERMAN
                                                                Assistant Branch Director

                                                                */s/ R. Charlie Merritt*
                                                                KAREN S. BLOOM
                                                                Senior Counsel
                                                                R. CHARLIE MERRITT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Trial Attorney (VA Bar No. 89400)
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 1900
(202) 616-8098 (phone)
(804) 819-7417 (fax)
robert.c.merritt@usdoj.gov

*Counsel for Defendants*

Defendants' Response in Opposition to Plaintiffs' Motion to Lift Stay of Proceedings and to Enforce Preliminary Injunction
No. 3:17-cv-7210-SK