JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS ADVOCATES
1814 Franklin Street, Suite 1040s
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tmerrill@law.harvard.edu
JOSHUA D. ROVENGER (*Pro Hac Vice*)
jrovenger@law.harvard.edu
LEGAL SERVICES CENTER OF HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, JAMAL CORNELIUS, RTHWAN DOBASHI, and JENNIFER CRAIG on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>And<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | Case Number: C 17-cv-07210-SK<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT STAY OF PROCEEDINGS AND TO ENFORCE PRELIMINARY INJUNCTION**<br><br>Date: August 19, 2019<br>Time: 9:30 a.m.<br>Ctrm: Courtroom C, 15th Floor<br>Judge: Sallie Kim<br><br>Date Filed: August 5, 2019 |

## I. INTRODUCTION

The Department's filing should leave this Court wary that the preliminary injunction will fully protect Students as to justify a continued stay in this case. After acknowledging that it violated the Court's preliminary injunction—purported "limited errors," ECF No. 104 (Defs' Opp.) at 5, that impacted 18,000 Students, or approximately a *quarter* of all class members—the Department of Education (Department) details the "sheer magnitude" of its operations, Defs' Opp. at 4, the complexity of overseeing the loan servicing system, and the resulting difficulty in complying with the injunction, *id.* at 2-7. But, as is now clear, the Department currently has *no compliance monitoring* system in place. It relies instead on class counsel to bring violations to their attention, *after* the violations have already occurred and impacted thousands of Students. Although the Department vaguely asserts that it is "exploring additional technology and operational enhancements" to implement "a monthly compliance monitoring process," ECF No. 104-1 (Hayhurst Decl.) at ¶ 78, it does not provide a specific date by which it will implement this monitoring, and it does not detail any specifics about the monitoring process or the level of confidence one can have in its accuracy.

The Department also ignores that Students' central claim in this litigation—whether the Department is impermissibly upending their settled expectations by applying a new rule to their loan cancellation applications—overlaps with the *California* case and could completely resolve this entire litigation independent of the interlocutory appeal. Instead, the Department asks the Court to address overlapping issues, including nearly identical questions on the administrative record, in subsequent and duplicative litigation. *Compare* ECF No. 80 at 1-2 (Motion for Declaration that Documents are Not Privileged) *with Cal. v. DeVos*, No. 17-cv-07106 ECF No. 66

at 7-8 (N.D. Cal. July 31,2019) (Motion to Complete the Administrative Record in Accordance with 5 U.S.C. § 706). And, although the Department notes that the Court should wait for the Ninth Circuit's decision before requiring dispositive briefing, Defs' Opp. at 2 & 7, it ignores that the Court could re-asses next steps if the interlocutory appeal is still pending at the time of summary judgment.

Ultimately, the *Landis* balance has shifted over the past year and the Court should lift the stay of proceedings. The stay poses a threat to Plaintiffs, does not prejudice the Department, and is no longer in the interest of judicial economy. Given the Department's violations of the injunction, which are *more* widespread than Plaintiffs were aware when they filed the instant motion, the Court should also accept the Department's invitation to file periodic status reports detailing its compliance with the preliminary injunction. Defs' Opp. at 9-10,

## II.  THE COURT SHOULD LIFT THE STAY OF PROCEEDINGS, REQUIRE THE DEPARTMENT TO LODGE THE ADMINSITRATIVE RECORD, AND THUS MITIGATE THE RISKS OF PROLONGED LITIGATION TO STUDENTS

The Department concedes that it violated the Court's preliminary injunction, but argues that lifting the stay would not provide any direct relief to Students. *See* Defs' Opp. at 7-8. However, the Department does not, and cannot, disagree that lifting the stay will lead to a quicker resolution of this litigation. Although Plaintiffs did not establish their likelihood of success on their Corinthian Rule claims at the time of the Preliminary Injunction, the Court's ruling emphasized the limited record before it, see ECF No. 60 at 25 & 30, and "the absence of key documentation," *id*. at 37. The administrative record is therefore crucial for Plaintiff to prove these colorable claims. Because the Department's filing confirms the risk to Students during the pendency of this case,

they need to be able to move forward to get the full record before the court and pursue these Corinthian Rule counts.

More specifically, the Department emphasizes that complying with the Court's order is "complicated by the fact [that] the Department does not itself service federal student loans," that "it can take time for the Department to implement large-scale loan servicing changes," and that it "cannot access the servicers' system directly, but must instead rely on the servicers to comply with the Department's instructions and guidelines," ECF No. 104 at 3-4; *but see* Fed. R. Civ. P. 65(d)(2) (noting that every injunction binds, among others, the parties' "agents"); 34 C.F.R. § 682.203 (permitting delegation of loan servicing); *Stone v. City & Cnty. Of San Fran.*, 968 F.2d 850, 856 (9th Cir. 1992) (requiring parties subject to a court order to take "all reasonable steps within their power to insure compliance"). It then vaguely asserts that it is "working to implement a monthly compliance monitoring process to mitigate forbearance and stopped collection lapses more proactively," and that "FSA is also exploring additional technology and operational enhancements in order to implement what will initially be a monthly compliance monitoring process," Hayhurst Decl. at ¶ 78. Critically, the Department does not describe these purported "additional technolog[ies] or "operational enhancements," does not offer any assessment of the accuracy of this purported monitoring, does not provide any basis for Students and the Court to actually review and understand the proposal, and does not explain why the Court should have any confidence in this vague plan given the difficulties of compliance that the Department highlights, *see also* Defs' Opp. at 9-10, *citing Howard Sober, Inc v. ICC*, 628 F.2d 36, 42 (D.C. Cir. 1980 ("[t]o err is both human and inevitable in a large agency.").

Similarly, while the Department suggests it is taking a "proactive" approach, it seems (but again, is not clear) that its yet-to-be-implemented "monitoring process" may do nothing more than alert the Department to violations after they have already happened. This approach—and the limited information that the Department has provided about its future plans—is particularly troubling given the Department's hands-off attitude over the past 14 months. *See* Hayhurst Decl. at ¶ 48 (explaining that the first violation of the preliminary injunction came to the Department's attention through class counsel); *id.* at ¶¶ 69-72 (detailing that the Department only discovered the second violation as to 3,000 borrowers because Ms. Maupin's situation was brought to its attention, presumably through Students' filing); *see also id.* at ¶ 46 (stating that "at least eight of the non-defaulted loan servicers" provided confirmation in July 2018 that it put class members' loans in forbearance, but not detailing any follow-up that was done with the ninth servicer).

Nor is there a specific date by which the Department will have this "monitoring process" in place. Although the Department claims to be "working to stand up this new process by fall of 2019," Hayhurst Decl. at ¶ 78, it offers no assurance that this time frame is either realistic or probable. There is good reason to be skeptical. The Department informed class counsel on April 10, 2019 that it was "working on a notification to borrowers, which it intends to send out soon," ECF No. 103-9 at 5, and yet it now tells the Court that it needs until late August to do so, Hayhurst Decl. at ¶¶ 62, 67-68. Similarly, the Department informed class counsel that as of May 14, 2019, the Department had "completed" its confirmation work "vis a vis three of the larger servicers," ECF no. 103-9 at 1, but now says it needs until "late-August 2019" to "preliminarily re-confirm the *Manriquez* class members' loan repayment status," and that it needs until the "end of September" to finalize confirmation that it is not currently violating the injunction. Hayhurst Decl.

at ¶¶ 62, 67-68. Ensuring compliance with the Court's injunction has apparently taken second seat to "other demands on [the declarant's] time," *Id.* at ¶ 66; *see also id.* at ¶ 67 (detailing competing priorities), and the Department has not established that implementing a "monitoring process" will be any different.

The Department finally says that Students are "more efficiently" and quickly serviced if they contact the Department when an issue arises, and that it is taking steps to encourage Students to contact the Department if a violation occurs. Hayhurst Decl. at ¶¶ 63-63 & 82. That the Department even needs to encourage Students to do so manifests the existence of some risk of non-compliance. In any event, the injunction places no burden on individual Students to rectify the Department's mistakes.

The Department deserves credit for acknowledging its violations. But, its view of its violations (describing problems that impacted nearly 18,000 Students as "limited incidents," Defs' Opp. at 2 & 9, or "limited errors," *id.*at 5), its prior *laissez faire* approach to compliance, the difficulties in compliance that it emphasizes, and its failure to detail a sufficient plan to address these complexities, underscores the risk of further violations during the pendency of this case. The Court should now mitigate this harm by lifting the stay, requiring the filing of the administrative record that the Court lacked at the time it decided the preliminary injunction, and moving this case closer to resolution.

### III. DEVELOPMENTS IN *CALIFORNIA V. DEVOS* AND THE LENGTH OF THE APPEAL ALSO JUSTIFY LIFTING THE STAY

The Department next argues that the ongoing *California* litigation and the length of the appeal do not warrant lifting the stay because it would lead to "unnecessary proceedings." Defs' Opp. at 9. But, it is the Department's proposal that would require the Court to hold duplicative

proceedings. Because *California v. DeVos* is moving forward—the Department has filed its answer and lodged part of the administrative record—the Court is about to address the exact same issues in *California* as it needs to here.

For example, on July 31, 2019, *California* filed a Motion to Complete the Administrative Record in Accordance with 5 U.S.C. § 706. *Cal v. DeVos*, No. 17-cv-07106, ECF No. 66 (N.D. Cal. July 31, 2019). In that motion, *California* highlights a number of specific, identifiable documents that should have been included in the administrative record. *Id.* at 7-8. These include the exact documents—including the May 2015 Office of General Counsel Corinthian Job Placement Rate memo, and October 2016 and January 2017 Borrower Defense Unit Memos that are relevant to the question of relief under the Corinthian Rule—that are the subject of Students' pending Motion for Declaration that Documents Are Not Privileged. ECF No. 80 at 1-2. Under the Department's approach, the Court would address these identical questions about the administrative record (along with other issues) sequentially and multiply, rather than saving resources and deciding these key questions at a single point.[1]

Nor does the Department explain how filing an answer and administrative record would constitute "unnecessary proceedings." As previously noted, the Department must eventually file an answer and administrative record, and both of those filings—by their very nature—should not be impacted by the Ninth Circuit's opinion. In response, the Department invokes this Court's prior decision staying the case, but does not attempt to explain how the Ninth Circuit's decision on the

---

[1] Students filed their motion relating to the administrative record over a year ago on July 23, 2018. *California* noticed a hearing date on its motion for September 16, 2019. If the Court lifts the stay here, Students respectfully request that the court set a reduced schedule for the remaining briefing on Students' motion and schedule argument for September 16, 2019.

Average Earnings Rule will impact the central and independent issue in this case: whether the Department has impermissibly infringed on Plaintiffs' settled expectations in violation of the APA. And, while the Department states that the Court should wait to decide summary judgment until the Ninth Circuit issues its opinion, Defs' Opp. at 2 & 7, it ignores that the Court could always re-asses the trajectory of the case before dispositive briefing.

Finally, the Department notes that Plaintiffs will have a voice in this litigation "regardless of the outcome of the *California* case." Defs' Opp. at 8. As the Department has elsewhere acknowledged though, the central issues between the two cases are substantially the same. *See Cal. v. DeVos*, No. 17-cv-07106, ECF No. 59 at 5-7 (N.D. Cal. Apr. 29, 2019) (unsuccessfully seeking a stay in *California* pending the appeal in this case). Because of this, and because Students have their own "unique interests," Defs' Opp. at 8 (citations omitted), the Court should hear from Students the first time that it considers the same significant questions that arise in both cases.

Ultimately, the change in the status of the *California* case, coupled with the length of the appeal, has shifted the calculus and warrants lifting the stay.

### IV. THE COURT SHOULD ACCEPT THE DEPARTMENT'S INVITATION AND ORDER IT TO FILE COMPLIANCE REPORTS

Consistent with Plaintiffs' request, the Department is willing to file periodic reports detailing its compliance with the preliminary injunction. *See* Defs' Opp. at 2 & 10. For the reasons above, Students believe that moving the case forward *and* increasing the court's oversight is appropriate; the Court should accordingly order the Department to file such reports.

To avoid releasing personally-identifying information, Students would consent to having the Department file such reports under a protective order. Students would also consent to reports containing only aggregate data, so long as the data is sufficient to show whether the Department

is complying with the injunction. This would include detailing, at a minimum: (1) the number of students who incorrectly re-entered repayment or collections in a given month; (2) the number of students notified that their forbearances lapsed in a given month (even if the Department subsequently corrects the issue before any payment is made); and (3) the number of Students that are in default but who have received notice of collections (including notices of wage garnishment or tax offset).

## V.  CONCLUSION

At bottom, the Department's compliance with the injunction is more troubling than Plaintiffs previously understood and the risk of further violations is significant. The Department's detailed description of its difficulty overseeing its loan servicers underscores this risk. The Court should now mitigate this harm, and should follow the path it took in *California*, by lifting the stay of proceedings.

Dated: August 5, 2019                                              Respectfully submitted,


/s *Joshua D. Rovenger*


Joseph Jaramillo
Natalie Lyons
HOUSING & ECONOMIC RIGHTS
ADVOCATES
PO Box 29435
Oakland, CA 94604
Tel.: (510) 271-8443
Fax: (510) 280-2448

Eileen M. Connor
Toby R. Merrill

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joshua D. Rovenger
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*