**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, JAMAL CORNELIUS, RTHWAN DOBASHI, and JENNIFER CRAIG on behalf of themselves and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education,<br><br>And<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | Case No.  C 17-cv-07210-SK<br><br>FURTHER JOINT CASE MANAGEMENT STATEMENT |

1  The parties submit this joint case management statement in advance of the case management
2  conference scheduled for October 7, 2019.
3  On May 25, 2018, the Court granted in part and denied in part Plaintiffs' Motion for a
4  Preliminary Injunction. *See* ECF Nos. 60 & 70. The injunction prohibited the Department from
5  collecting on class members during the pendency of this case. *Id.* Defendants filed an interlocutory
6  appeal of that order, ECF No. 82, and on August 30, 2018, this Court stayed proceedings pending
7  the appeal, ECF No. 89. The Ninth Circuit held oral argument on February 8, 2019, and asked for
8  supplemental briefing that both parties filed on March 5, 2019. The appeal remains pending.
9  On July 15, 2019, Plaintiffs filed a Motion to Lift the Stay of Proceedings and to Enforce
10 the Preliminary Injunction. ECF No. 103. The Court heard argument on August 19, 2019, and
11 scheduled a further case management conference for October 7, 2019. The Court also denied,
12 without prejudice, Plaintiffs' Motion to Lift the Stay of Proceedings and ordered the Department
13 to file a report answering a number of specific questions regarding its compliance with the
14 preliminary injunction. ECF No. 110. The Department filed that report on September 18, 2019.
15 ECF No. 111.

16 **I.    PLAINTIFFS' POSITION**

17      *A.    The Court Should Lift the Stay of Proceedings*

18 Plaintiffs renew their request to lift the stay of proceedings and to prepare the case for
19 dispositive briefing. Judge Wallace recently reminded courts in this circuit "not to delay trial
20 preparation to await an interim ruling on a preliminary injunction." *HiQ Labs v. LinkedIN*, --F.3d-
21 -, 2019 WL 4251889 at *15-16 (9th Cir. Sept. 9, 2019) (Wallace, J., concurring) (citation omitted).
22 Judge Wallace's admonition is particularly appropriate in this case for the reasons provided in
23 Plaintiffs' Motion to Lift Stay of Proceedings, ECF No. 103. Namely, the Department's on-going
24 and striking disobedience of the Court Order undermines the premise that the injunction fully
25 protects Plaintiffs from irreparable harm during the stay. *See* ECF No. 111. Indeed, the Defendants'
26 compliance report establishes that their defiance of the Court's injunction is more severe than
27 previously understood.
28

Most egregiously, Defendants revealed that its Default Resolution Group seized tax refunds—for many, their Earned Income Tax Credit— and garnished wages from 1,808 Students. ECF No. 111 at 4. At the time they filed their compliance report, the Defendants *still* had not identified all of these class members, nor refunded them their money. *Id.* As of October 2, 2019, Defendants represented to Class Counsel that they had "requested refunds" for these 1,808 Students, that they only "requested that such refunds be completed by the end of this month," and that a mere *ten* refunds had been "processed."[1] Astonishingly, the Defendants attempt to avoid blame for unlawfully taking these Students' tax refunds and wages, by eliding the distinction between its loan servicers (private entities that the Department oversees) and the Default Resolution Group (of which it has complete control and merely contracts with Maximus to assist in that effort). *See, e.g.*, ECF No. 111-2 at 8-9 & 27. In reality, the Defendants are *solely* responsible for this ongoing violation; in addition to directing Maximus' actions, they have "employees that have direct access to enter data and direct work on a defaulted borrower's loan records" and, at the time the Court issued the injunction, the Defendants "made changes to defaulted borrower defense applicants' loan records directly in the [data management system]." *Id.* at 12 n. 15.[2]

Further, according to the Defendants' report, they still need to confirm whether 1,147 class members are in the correct repayment status, refund payments to approximately 2,298 class members who paid because of the Department's illegal demand, and correct adverse credit

---

[1] It is not at all clear that Defendants have decertified the appropriate Students for tax offset, making it likely that this problem will just repeat itself next year.

[2] The Defendants' seizure of class members' tax refunds is particularly shocking given the Defendants' representations in a different case, *Williams v. DeVos*. In that case, the Court determined that the Department has an obligation to adjudicate the merits of a borrower defense *before* seizing a borrower's tax refund. *See Williams v. DeVos,* 16-11949-LTS, 2018 WL 5281741 at *13-15 (D. Mass. Oct. 24, 2018). In response to that order, the Department represented that as of December 10, 2018, "each account referred to TOP [tax offset] is checked weekly to verify whether a borrower defense application has been filed. If such application has been filed, the account will be removed from TOP and put into forbearance or stopped collection status." *Williams v. DeVos*, No. 16-cv-11949-LTS, ECF No. 101 at 2 (D. Mass. Dec. 20, 2018) (Defendants' Status Report).  Here, borrowers are class members—and protected by the injunction—because they have filed applications for borrower defense.

reporting for approximately 847 non-defaulted class members. Put simply, the Defendants continue to be in violation of the Court's order and their disobedience is likely causing the very irreparable harm that justified the injunction in the first place. *See* ECF No. 60 at 31-34 (finding that requiring payment of the loans would, among other things, "threaten[] these borrowers' ability to pay for basic life expenses like food and rent."). Moving the case forward is appropriate and necessary to mitigate this continued and ongoing threat.[3]

Lifting the stay is also appropriate because the related case, *California v. DeVos*, is moving forward; proceeding in tandem will avoid duplicative litigation, including on issues related to the administrative record. And, all pre-trial issues will remain the same irrespective of the details of the Ninth Circuit's opinion, and thus the Court could prepare the case for dispositive briefing to avoid unnecessarily "delay[ing] trial preparation to await an interim ruling on a preliminary injunction." *HiQ Labs*, 2019 WL 4251889 at *16.[4]

Plaintiffs therefore propose the following schedule to prepare the case for dispositive briefing:

- Defendants' Response to Plaintiffs' July 23, 2018 Motion for Declaration that Documents are Not Privileged: October 21, 2019.

- Plaintiffs' Reply to Administrative Record Motion: October 28, 2019.

- Defendants' Answer: October 28, 2019.

- Lodging of the Administrative Record: Within 7 days of Court's resolution of Plaintiffs' Administrative Record Motion.

- Case Management Conference to re-evaluate the status of the appeal and determine whether dispositive briefing should proceed: Within 14 days of

---

[3] Defendants imply that the Court can *either* move the case forward or the Defendants can comply with the Court's order. Defs' Position at 8 (saying that moving forward with litigation "will detract resources from [its] compliance efforts"). This is a false choice that the Court should summarily reject.

[4] In the alternative, the Court could lift the stay as to the counts that are not the subject of the interlocutory appeal (including Plaintiffs' unlawful retroactive rulemaking claim), require the Department to answer the complaint, and then set those claims for dispositive briefing by adopting the administrative record and briefing schedule from the *California* case.

Lodging of the Administrative Record.[5]

### B. Because Secretary DeVos and the Department are in Contempt of the Court's Injunction, Plaintiffs Request the Opportunity to be Heard on Appropriate Sanctions

In its order on August 19, 2019, the Court indicated that it would "address the [Defendants'] status report at [the] further case management conference on October 7, 2019." ECF No. 110 at 2. Plaintiffs respectfully request the opportunity to be heard on the appropriate sanctions that should flow from Defendants' "disobedience" of the Court's "specific and definite" preliminary injunction.

Defendants' report conclusively establishes that the Department and Secretary DeVos are in civil contempt. Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Once a violation is established by clear and convincing evidence, the burden "shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999). In ordering Defendants to file a compliance report, the Court provided Defendants with this broad "opportunity to explain [their] conduct." Defs' Position at 11, *citing Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir. 2001).[6] It is also well-settled that a Court has authority to declare that a government agency and the head of that agency are in contempt. *See, e.g.*, *Hall v. Stone*, 179 F.3d 1043 (7th Cir. 1999); *Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985); *Al-Adahi v. Obama*, 672 F. Supp. 2d 114 (D.D.C. 2009); *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892 (N.D. Cal 1984).

Defendants try to avoid contempt by suggesting that *some* amount of compliance is sufficient and that their "good faith" attempt to comply with the court order is enough. But, while a "a failure to comply" may be excused when a party reasonably misinterprets a court order, Defs'

---

[5] Once the stay is lifted, Plaintiffs also intend to file a motion to substitute Class Representative Cornelius. The Department previously indicated to class counsel that they anticipate agreeing to this motion.

[6] Indeed, although Defendants argue that it is "premature" to impose sanctions, it is not clear what more Defendants could plausibly say in defense of their misconduct.

Position at 11 (citation omitted), good faith does "not relieve" a party from civil contempt when they simply do not take all reasonable steps to comply with an order. Indeed, the "absence of willfulness does not relieve" a party "from civil contempt," even if good faith "may help to determine an appropriate sanction." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019). Defendants' "commitment to ensuring even more substantial compliance in the future," Defs' position at 11, is nothing more than an admission of ongoing non-compliance. And, until Defendants are *completely* abiding by and respecting this Court's order and authority, a contempt finding is both appropriate and necessary.

Given this, appropriate sanctions should "coerce[] compliance with [the] court order" and act as a "remedial sanction meant to compensate the complainant for actual losses." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013). To that end, Plaintiffs believe the following sanctions are appropriate:

- The Court should order the Defendants to provide Class Counsel with the names and contact information for all Students impacted by the Defendants' violations (including the 16,034 Students who received a payment demand and the 1,808 Students whose taxes were seized or wages garnished). This information is critical for Class Counsel to ensure that the Defendants are complying with the Order. It will also allow Class Counsel to determine whether class members suffered consequential harms on account of the Defendants' contemptuous conduct and thus whether any additional compensatory sanctions are needed. Defendants represented to Class Counsel that they would agree to this request, subject to a court order and a potential protective order. They further represented that they could provide information on these Students by the end of next week.

- To monitor the Defendants' efforts to comply, the Court should also order the Defendants to file additional compliance reports every week detailing:

    o The repayment status of the 1,147 Class Members whose proper repayment status Defendants have failed to confirm;

    o The status of refunds for the 991 Class Members serviced by FedLoan Servicing;

    o The status of refunds for the 2,298 class members who incorrectly made payments on their loans following the unlawful payment demand;

- o   The status of the requisite credit reporting corrections for the 847 non-defaulted class members who were subject to adverse credit reporting;

- o   The status of refunds for the 1,808 class members who were subject to wage garnishment and tax refund offset;

- o   The status of email notifications to class members who received incorrect notices;

- o   The status of notices to all class members regarding this non-compliance; and,

- o   The status of the Defendants' implementation of a process for tracking communications with borrowers about repayment status and for implementing monthly compliance reports.

- To further monitor the Defendants' efforts, Class Counsel should be permitted to participate as one of the stakeholders in the Department's forthcoming Quality Assurance Review (QAR), ECF 111-10 at 4 (seeking the "involvement, opinions, and knowledge of parties touched by the issue under review"). The Court should also require the Defendants to file the completed QAR Report, and require the Defendants to file any responses they receive from loan servicers to any "Letters of Concern" (including the one recently sent to FedLoan Servicing, ECF No. 111-11).

- To coerce compliance with the injunction, the Court should order Secretary DeVos to pay fines to the Court, starting 2 weeks from the date of the order, until she demonstrates that the Defendants have refunded all illegally seized money and are in full compliance with the Court order. *See, e.g.*, *Henderson v. Orr*, No. 3-81-554, 1987 WL 19715 at *2 (S.D. Ohio May 5, 1987); *cf. Hutto v. Finney*, 437 U.S. 678, 690-91 (1978);[7] and,

- To ensure that any sanction fully "compensates [Students] for actual losses," the Court should provide Plaintiffs an opportunity, after they receive Students' contact information, to file a motion for any appropriate, additional sanctions (including attorneys' fees and costs for litigating these issues).[8]

---

[7] The Court also has the authority to imprison Secretary DeVos and other agents until the Department is in compliance with the Court order, *see Land v. Dollar,* 190 F.2d 623 (D.C. Cir. 1951), Plaintiffs do not believe that such a harsh sanction is warranted at this time given that Defendants are finally taking steps to rectify their contemptuous behavior. Plaintiffs are, however, very concerned that Defendants' arguments against a contempt finding undermine their statements that they grasp the gravity of their misconduct.

[8] In their meet and confer, Plaintiffs asked the Defendants to show that they were acting in good faith and that they understood the magnitude of their violations by discharging the debts of the Students impacted by the Department's contemptuous conduct. In particular, Plaintiffs requested that Defendants discharge the loans for the 1,808 Students subject to unlawful involuntary collections. Defendants rejected this proposal.

At bottom, federal agencies and their leaders are not above the law. The Defendants' own report establishes their contemptuous conduct. The Court should not only declare what is obvious—that Defendants are in contempt—but it should impose sanctions that both coerce the Defendants into compliance and fully compensates class members for their harm.[9]

## II.     DEFENDANTS' POSITION

As an initial matter, Defendants note that they did not receive a draft of Plaintiffs' portion of this filing, which includes arguments in response to the compliance report beyond the issues about which the parties had previously met and conferred, until 3:53 pm ET on October 2, 2019, which limits Defendants' ability to provide a fulsome response here.

### *A.     The Court Should Leave the Stay in Place*

As Plaintiffs note, this Court has already denied, without prejudice, Plaintiffs' motion to lift the current stay of proceedings pending resolution of Defendants' appeal of the Court's preliminary injunction. *See* ECF No. 110. Defendants oppose Plaintiffs' renewed request to lift the stay for the same reasons set forth in their opposition to Plaintiffs' motion. *See* ECF No. 104. As Defendants explained in that filing, the Ninth Circuit's ruling on the pending appeal will provide significant, if not dispositive guidance on central legal questions—such as whether the methodology the Department developed in December 2017 to evaluate certain types of borrower defense claims violates the Privacy Act or is arbitrary and capricious—and substantially shape the litigation moving forward. And as this Court indicated, that ruling from the Ninth Circuit could occur "soon" and will likely be "crucial to resolution of the issues implicated" in this case. ECF

---

[9] Defendants also argue that sanctions are not appropriate, in part, because of the "manner in which the joint case management statement was prepared" and the time at which they received Plaintiffs' submission. However, Defendants do not tell the court: (1) that Plaintiffs told Defendants on September 27, 2019, that they were intending to request sanctions and that those sanctions could include the range of available civil contempt remedies including fines and imprisonment, and (2) that Defendants did not inform Plaintiffs of their positions on Plaintiffs' specific requests (and thus prevented Plaintiffs from finishing their section of the case management statement) until October 2, 2019, at 3:05 pm. EST.

No. 110. This Court has also already determined that a stay prevents the Court from having to "address the summary judgment claims in piecemeal fashion." ECF No. 88 at 6. That remains the case today. Indeed, under Plaintiffs' proposed schedule, Defendants would respond to Plaintiffs' complaint by the end of this month. That response would certainly be influenced by a Ninth Circuit ruling on the likely merits of certain of the claims asserted in Plaintiffs' complaint, and it would be potentially wasteful and duplicative if filed before the Ninth Circuit can provide its guidance.

Plaintiffs argue that the stay should be lifted, taking the opportunity in this joint case management statement to respond substantively to the compliance report that the Department filed on September 18 in response to this Court's order. According to Plaintiffs, that report, which details the Department's efforts to comply with the Court's preliminary injunction and remedy certain errors that had caused the loans of Plaintiff class members to enter into an incorrect repayment status, "undermines the premise that the injunction fully protects Plaintiffs from irreparable harm during the stay." But as Defendants have explained in opposing Plaintiffs' request to lift the stay and in their September 18 compliance report, the Department is working diligently to rectify the compliance issues that have been brought to its attention and to ensure better compliance with the Court's preliminary injunction moving forward. Defendants continue to believe that these efforts will do more to ensure that Plaintiff class members are not harmed during the remaining pendency of the Court's stay than moving forward with proceedings (*e.g.*, responding to Plaintiffs' motion for a declaration that certain documents are not privileged, responding to Plaintiffs' complaint) that will not themselves provide Plaintiffs any relief and that will detract resources from those compliance efforts. *See* ECF No. 104 at 7-8.

The Department's compliance report bolsters, rather than undermines, this conclusion. As it details, the Department conducted a thorough review of its process for making sure that class members, as well as borrower defense applicants more generally, are placed into forbearance and stopped collections status, and, as documented in that report, determined that it had failed in many instances to ensure that borrowers were kept in the correct repayment status. But that report also reflects that the Department appreciates the gravity of this situation and has undertaken significant

efforts to remedy its errors and implement a more robust compliance monitoring system going forward. These efforts include working to verify that each class member is in the appropriate repayment status; notifying class members of the errors with respect to their repayment status; issuing refunds to borrowers who made payments on their loans, whether voluntarily or involuntarily, when they should have been in forbearance or stopped collections status; establishing a new monthly compliance monitoring process; initiating an internal audit of its borrower defense process, to focus on the Department's application of forbearance and stopped collections status in response to the Court's preliminary injunction order; and increasing its monitoring of servicers' compliance with the Department's directives and the Court's orders. *See* ECF No. 111-2 at 1-6; *see also id.* at 21-31.

The Department recognizes the seriousness of the issues regarding the involuntary collection that has taken place against defaulted borrowers covered by the Court's preliminary injunction, but submits that it is taking affirmative steps to rectify the problem. In particular, the Department has worked to identify each of the 1,808 borrowers referenced in its initial compliance report and affirmatively requested that refunds for these borrowers be processed by October 22, 2019. In order to demonstrate to Plaintiffs that the Department had already begun this process, undersigned counsel for Defendants informed counsel for Plaintiffs that the Department had processed ten such refund requests as of the date of this filing. The Department remains committed to processing all refunds in an expeditious manner. Again, the Department believes that its continued effort to complete this process and ensure that all affected students are refunded any amounts involuntarily collected will do more to remediate the harm suffered by those students than moving forward with additional preliminary proceedings in this action.[10]

---

[10] Defendants dispute Plaintiffs' contention that the Department is "*solely*" responsible for the "ongoing" efforts of its loan servicers to involuntary collect debts from students subject to the Court's order. As the Department explained in its compliance report, while the Department once had the ability to access servicers' systems directly, it has, since "the fall of 2018," facilitated changes to defaulted borrowers' loan repayment statuses via requests through the CEMS platform, "in the same way such requests are made to other loan servicers for non-default borrowers." ECF No. 111-2 at 10 n.16.

For all of these reasons, and those set forth in its opposition to Plaintiffs' initial motion to lift the stay, ECF No. 104, the Department continues to believe that the Court should leave the stay in place. It thus opposes Plaintiffs' request to lift the stay or otherwise impose a schedule for further proceedings prior to a Ninth Circuit decision on the pending appeal. As stated in prior filings, the Department remains committed to reporting back to the Court, on an interim basis, regarding its oversight and compliance activities, including high-level reports of its ongoing efforts to ensure that all class members are in the correct loan repayment status. *See* ECF No. 104 at 9-10.

### B.     *The Court Should Decline Plaintiffs' Premature Request for Sanctions*

Defendants do not dispute the Court's authority to "impose sanctions sua sponte." *Foster v. Wilson*, 504 F.3d 1046, 1053 (9th Cir. 2007). Defendants note, however, that when a court does impose such sanctions, "the general rule is that it must first issue an order to show cause why sanctions should not be imposed to give the lawyer or party an opportunity to explain his or her conduct." *Navellier v. Sletten*, 262 F.3d 923, 943 (9th Cir. 2001). While the Court raised the specter of sanctions at the August 19, 2019 hearing, it specifically declined to issue a show cause order, determining instead to require that the Department file a report detailing its compliance with the Court's preliminary injunction order, which the Department timely did. Under these circumstances, Defendants respectfully submit that Plaintiffs' request, in a joint case management statement, "to be heard on . . . appropriate sanctions" at this stage is premature. Consistent with the Court's prior Order, Defendants are prepared to discuss the contents of the Department's September 18 compliance report, and discuss any questions the Court has, at the October 7 hearing. *See* ECF No. 110 (stating that the Court "will address the status report at a further case management conference on October 7, 2019"). Defendants respectfully contend, however, that the current case management statement, and the October 7 hearing, are not the appropriate vehicles in which to entertain Plaintiffs' request for sanctions. *See Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1029 (N.D. Cal. 2012) (noting that "substantial legal argument" is "more appropriate for a brief than a Case Management Statement"), *aff'd in part, rev'd in part on other grounds,* 555 F. App'x 733 (9th Cir. 2014); *cf.* Civ. L-R 7-1 (requiring that "[a]ny written request to the Court for an order

must be presented" through particular means, such as motions or stipulations, as defined by the Local Rules); *Banga v. First USA, NA*, No. C 10-0975 SBA, 2013 WL 12324701, at *6 (N.D. Cal. Mar. 29, 2013) ("Generally, any written request to the Court for an order must be presented by a duly noticed motion . . . [, which] must contain, among other things, 'notice of the motion, including date and time of hearing' in the first paragraph" (quoting Civ. L-R 7-2(b))).

At the very least, Defendants request the opportunity to provide briefing on the appropriateness of the sanctions Plaintiffs request. Defendants believe that this request is supported by the manner in which this joint case management statement was prepared. As noted above, Defendants did not receive a draft setting forth Plaintiffs' position until 3:53 p.m. ET. As this Court is aware, the parties previously requested a two-day extension of their deadline to file this joint case management statement, which the Court granted. *See* ECF Nos. 113 and 114. That request was necessitated because Plaintiffs raised significant issues, relating to its sanctions request, when the parties met and conferred on September 27. In particular, Plaintiffs requested that the Department provide to counsel for the Plaintiffs names and contact information for all borrowers impacted by the non-compliance with the Court's preliminary injunction order detailed in the Department's compliance report. As indicated above, the Department is not opposed to providing this information, so long as precautions are taken to ensure compliance with the Privacy Act. The parties anticipate meeting and conferring and proposing an order for the Court's consideration that will allow the Department to provide Plaintiffs' counsel with the requested information. Plaintiffs further requested, as they note above and as a show of "good faith," that the Department discharge, in full, the federal student loan debt of the 1,808 borrowers who had been subject to involuntary collection efforts. The Department likewise considered this request, but ultimately concluded that such action would go beyond remediating the harm suffered by these students, and that its efforts were best focused on refunding to those students any amounts wrongfully collected as soon as possible.

The remainder of Plaintiffs' requests, however, were not raised during the meet and confer process, either on September 27 or at any time before 3:53 pm ET on the date of this filing. In the

*Calvillo Manriquez v. DeVos*
Case Number: C 17-cv-07210-SK                                      JOINT CASE MANAGEMENT STATEMENT   11

1  time between being notified of these requested sanctions and the time at which this document was
2  required to be filed, the Department was not able to give its measured consideration to these
3  proposals. Defendants believe that this circumstance provides another reason in favor of deferring
4  Plaintiffs' request for sanctions until Plaintiffs actually file a motion for such sanctions, and the
5  Department has an opportunity to fully respond in briefing.

6  In any event, Defendants oppose Plaintiffs' request to hold the Department in civil contempt
7  (and to impose other sanctions). "[H]olding a party in contempt is not warranted where failure to
8  comply was based on a good faith and reasonable interpretation of the court's order" or where the
9  party against which sanctions are sought "has substantially complied with the court's order." *S.
10 Cal. Darts Ass'n v. S. Cal. Darts Ass'n, Inc.*, No. CV 12-01899-RGK (JCGx), 2012 WL 12882764,
11 at *1 (C.D. Cal. June 22, 2012) (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
12 10 F.3d 693, 695 (9th Cir. 1993)). Defendants respectfully submit that the Department's
13 compliance report establishes the Department's good faith in attempting to comply with the Court's
14 preliminary injunction order, as well as its commitment to ensuring even more substantial
15 compliance in the future.

17 DATED: October 2, 2019                              Respectfully submitted,

19                                                     */s/ Joshua D. Rovenger*

20                                                     Joseph Jaramillo
                                                       Natalie Lyons
21                                                     HOUSING & ECONOMIC RIGHTS
                                                       ADVOCATES
22                                                     PO Box 29435
                                                       Oakland, CA 94604
23                                                     Tel.: (510) 271-8443
                                                       Fax: (510) 280-2448
24

25                                                     Eileen M. Connor
                                                       Toby R. Merrill
26                                                     Joshua D. Rovenger
                                                       LEGAL SERVICES CENTER OF
27                                                     HARVARD LAW SCHOOL

|   |   |
|---|---|
| 1 | 122 Boylston Street |
|   | Jamaica Plain, MA 02130 |
| 2 | Tel.: (617) 390-3003 |
|   | Fax: (617) 522-0715 |
| 3 | *Counsel for Plaintiffs* |

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 1900
(202) 616-8098 (phone)
(804) 819-7417 (fax)
robert.c.merritt@usdoj.gov

*Counsel for Defendants*