JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tmerrill@law.harvard.edu
JOSHUA D. ROVENGER (*Pro Hac Vice*)
jrovenger@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, JAMAL CORNELIUS, RTHWAN DOBASHI, and JENNIFER CRAIG on behalf of themselves and all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> ELISABETH DEVOS, in her official capacity as Secretary of the United States Department of Education, <br><br> And <br><br> THE UNITED STATES DEPARTMENT OF EDUCATION, <br><br> *Defendants*. | Case Number: C 17-cv-07210-SK <br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF CONTEMPT AND SANCTIONS** <br><br> Date Filed: October 21, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF CONTENTS

TABLE OF AUTHORITIES

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND...............................................................................................................3

  A. Factual and Procedural History .......................................................................................3

  B. Defendants' Compliance Report .....................................................................................5

III. THE COURT SHOULD HOLD DEFENDANTS IN CIVIL CONTEMPT AND ISSUE CIVIL CONTEMPT SANCTIONS..................................................................................................8

  A. Civil Contempt is the "Consequence" for Defendants' 16,000 Violations of the Court's Order......................................................................................................................................9

  B. The Court Should Issue Civil Contempt Sanctions to Coerce Initial Compliance, "Help or Compensate" Students, and Ensure Continued Compliance......................................................12

     1. The Court should issue civil contempt sanctions to coerce compliance......................12

     2. The Court should allow Students to petition for compensatory contempt sanctions.....14

     3. The Court's order should also ensure continued compliance with the injunction.........16

IV. CONCLUSION   ..............................................................................................................18

1

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*,

   721 F.3d 1122 (9th Cir. 2013) ....................................................................... 12

*Al-Adahi v. Obama*,

   672 F. Supp. 2d 114 (D.D.C. 2009) ............................................................... 9

*Berger v. Heckler*,

   771 F.2d 1556 (2d Cir. 1985) ........................................................................ 9

*Cal. v. DeVos*,

   No. 17-cv-07106-SK, ECF No. 81 (N.D. Cal. Oct. 11, 2019) ...................... 2

*Campaign for Southern Equality v. Bryant*,

   197 F. Supp. 3d 905 (S.D. Miss. 2016) ........................................................ 17

*Cobell v. Norton*,

   334 F.3d 1128 (D.C. Cir. 2003) .................................................................... 11

*Crouche v. Shalala*,

   No. 98-3462, ECF No. 18 (E.D. Pa. 1999) ................................................... 12

*Falstaff Brewing Co. v. Miller Brewing Co.*,

   702 F.2d 770 (9th Cir. 1983) ........................................................................ 12

*Gharib v. Casey*,

   692 F. App'x 950 (9th Cir. 2017) ................................................................. 13

*Greene v. Babbitt*,

   943 F. Supp. 1278 (W.D. Wash. 1996) ........................................................ 12

*Hall v. Stone*,

   179 F.3d 1043 (7th Cir. 1999) ...................................................................... 9

*Harvey v. Shinseki*,

   24 Vet. App. 284 (2011) ............................................................................... 1

*Henderson v. Orr*,

    No. C-3-81-554, 1987 WL 19715 (S.D. Ohio, May 5, 1987)..................................... 12

*In re Dual-Deck Video Cassette Records Antitrust Litig.*,

    10 F.3d 693 (9th Cir. 1993). ...................................................................................... 9

*Int'l Union, United Mine Workers of Am. v. Bagwell*,

    512 U.S. 821 (1994)......................................................................................... 9, 12

*Kelly v. Wengler*,

    822 F.3d 1085 (9th Cir. 2016) ................................................................................ 11

*Knight First Am. Instit. v. Trump*,

    928 F.3d 226 (2d Cir. 2019)..................................................................................... 8

*McComb v. Jacksonville Paper Co.*,

    336 U.S. 187 (1994)................................................................................................ 11

*N.C. Fisheries Ass'n v. Daley*,

    27 F. Supp. 2d 650 (E.D. Va. 1998) ...................................................................... 12

*Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*,

    877 F.2d 787 (9th Cir. 1989) ................................................................................. 14

*Richmark Corp. v. Timber Falling Consulants*,

    959 F.2d 1468 (9th Cir. 1992). .............................................................................. 13

*San Luis & Delta-Mendota Water Auth. v. Jewell*,

    747 F.3d 581 (9th Cir. 2014) ................................................................................. 14

*Serquina v. United States*,

    No. 93-0129, ECF Nos. 89 & 102 (C.D. Cal. 1995)............................................... 13

*Shell Offshore, Inc. v. Greenpeace, Inc.*

    815 F.3d 623 (9th Cir. 2016) ................................................................................. 14

*Sierra Club v. Ruckelshaus*,

    602 F. Supp. 892 (N.D. Cal 1984) .......................................................................... 9

*Stone v. City of San Francisco*,

968 F.2d 850 (9th Cir. 1992) ..................................................................... 16

*Taggart v. Lorenzen*,

139 S.Ct. 1795 (2019). ............................................................................... 10

*Whittaker Corp. v. Execuair Corp.*,

953 F.2d 510 (9th Cir. 1992). .................................................................... 13

*Williams v. DeVos*,

No. 16-cv-11949-LTS, ECF No. 101 (D. Mass. Dec. 20, 2018) ............................................. 16

**Statutes**

31 U.S.C. § 3720A. ..................................................................................................... 16

**Other Authorities**

Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental Disobedience and the*

*Judicial Contempt Power,* 131 Harv. L. Rev. 685 (2018). ................................................. 10, 11

Secretary Elisabeth DeVos (@BetsyDeVosED), Twitter (Oct. 10, 2019) ...................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.      INTRODUCTION

Secretary Elisabeth DeVos and the Department of Education (Department) admit that they violated this Court's unambiguous preliminary injunction by demanding payment from over 16,000 Class Members (Students) and by seizing tax refunds and wages from 1,808 of them. The violations occurred because Defendants' compliance was, in the Court's words, "at best . . . gross negligence . . . almost gross negligence of the magnitude of 'we don't care about the order, we're going to do the minimal amount of effort we need, take the minimal amount of steps we need to take in order to comply with the order.'" ECF No. 124 at 6:15-21. And, "[a]t worst, it's intentional flouting of [the Court's] order." *Id.* at 15:15-16. Because a party is in civil contempt even when her "failure to fully comply with a Court rule or order is the result of gross negligence and a gross lack of diligence," *Harvey v. Shinseki*, 24 Vet. App. 284, 287 (2011) (citation and quotations omitted), the natural "consequence[] for [Defendants'] violation of [the Court's] order 16,000 times," ECF No. 124 at 4:2-5, is civil contempt.

Although a civil contempt finding is an essential first step, the Court should also impose "civil contempt sanctions" that coerce Defendants into compliance and "help or compensat[e] . . . the students who have been harmed because of the violation of the order." ECF No. 124 at 4:9-12. To coerce compliance, the Court should require Defendants to either pay an escalating fine to the Court or order Defendants to write-off impacted Students' loans in a specific amount each day Defendants remain in contempt. Alternatively, the Court should set a date by which Defendants must come into full compliance, or face a finding that the "presumption of regularity of the agency's action" is rebutted in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Then, to ensure that Students are appropriately compensated for the economic harm stemming from Defendants' "mischief," *Cal. v. DeVos*, No. 17-cv-07106-SK, ECF No. 81 at 3 (N.D. Cal. Oct. 11, 2019), the Court should provide Class Counsel with time to determine the full scope of Students' compensable harms and an opportunity to petition the Court or a special master for relief, including reasonable attorneys' fees and costs incurred as a result of Defendants' gross negligence.

Finally, because it is essential to "prevent these violations from occurring in the future," ECF No. 124 at 4:7-8, the Court should coerce Defendants' continued compliance by: (1) ordering Defendants to de-certify defaulted class members from tax offset; (2) appointing a special master or assigning oversight of the Department's compliance to an objectively independent body; (3) ordering Defendants to submit monthly reports; (4) compelling the Defendants to produce their loan servicing contracts; (5) requiring Defendants to submit any notice to Students to the Court for review; and (6) ordering Defendants to file the completed Quality Assurance Review (QAR) report with the Court. In their brief, Defendants acquiesce to several of these provisions, namely, the monthly reports, the notice to students, and the filing of the QAR report. *See* ECF No. 125.

Ultimately, the breadth of the Secretary's non-compliance is beyond disturbing. The Court's next steps will send a message to Secretary DeVos, to other federal agencies and officials, to other litigants, and to the general public. That message must be that nobody is above the law. Although Defendants adopt a conciliatory tone in their brief, their proposals—three "sanctions" that Plaintiffs previously recommended—fall far short of what is required. Instead, holding Secretary DeVos and the Department in contempt, and issuing civil contempt sanctions,

1

2

appropriately conveys the gravity of the situation and helps ensure appropriate respect for this
Court's authority.

3

## II.    BACKGROUND

4

### A.  Factual and Procedural History

5

6

Students borrowed federal student loans to finance career training programs at schools

7

operated by Corinthian Colleges, Inc. (Corinthian). After the Department identified, reached out

8

to, and solicited personal information from Students in an effort to fully discharge their federal

9

student loans upon the submission of a simple form (the Corinthian Rule), the Department changed

10

course, opting instead to use illegally co-opted data and an irrational formula to force class

11

members to pay a portion of their invalid loans (Average Earnings Rule).

12

13

Students swiftly filed suit and moved for a preliminary injunction. ECF No. 35. The Court

14

granted that motion, in part, and: (1) blocked Defendants from collecting on class members during

15

the pendency of the case, and (2) prohibited Defendants from utilizing the Average Earnings Rule.

16

ECF No. 60. Because the Defendants only stopped collecting on the loans of Named Plaintiffs, the

17

Court subsequently clarified that its order applied to the entire class. ECF No. 70.

18

19

In July 2018, Defendants filed an interlocutory appeal of the injunction. ECF No. 82. Then,

20

on August 30, 2018, this Court stayed proceedings pending the appeal, except as to Plaintiffs'

21

Motion for Class Certification. ECF No. 89. On October 15, 2018 the Court certified the Student

22

class. ECF No. 96.[1] The Ninth Circuit held oral argument on Defendants' appeal on February 8,

23

24

25

26

27

---

[1] The Class is defined as "All persons who borrowed a Direct Loan to finance the cost of enrollment at a program covered by the Department's job placement rate findings (i.e., attended a program on the Lists, see ECF No. 35- 6, Exs. 6 & 7), and who have not received a full discharge of associated student loan debt and a return of any money the Department collected on the loan, once they submit an attestation form or analogous application verifying that they are covered by the Department's

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2019, and asked for supplemental briefing that both parties filed on March 5, 2019. The appeal remains pending.

Later in March 2019, the Defendants, through their loan servicers, notified some Students (including a Named Plaintiff), that their loans were entering repayment. Plaintiffs' counsel brought this non-compliance to the Defendants' attention and the Defendants represented that they were "investigating this," "working on confirming that all of the servicers have completed their review of their lists and [making] any necessary updates," and "working on a notification to borrowers, which it intends to send out soon." ECF No. 103-9. (emails from Defendants' counsel). Four months later though, the Department, through FedLoan Servicing, again informed a Student that her loans were entering repayment. ECF No. 103-1 (Maupin Declaration).

Plaintiffs therefore filed a Motion to Lift the Stay of Proceedings and to Enforce the Preliminary Injunction. ECF No. 103. On August 19, 2019, the Court denied without prejudice Plaintiffs' motion, but ordered Defendants to file a detailed compliance report. ECF No. 110. The Defendants filed their report on September 18, 2019. ECF No. 111.

As a result of Defendants' extensive non-compliance, and uncertainty regarding the Ninth Circuit's timing, the Court lifted the stay of proceeding on October 7, 2019. ECF No. 118. It also ordered the parties to file briefs discussing the "legal authority justifying or limiting a finding of contempt or an order of sanctions," and "the types of remedy available and how each one would

---

job placement rate findings (i.e., attended a program on the Lists and first enrolled in that program during a time period covered by the Lists, see ECF No. 35-6, Exs. 6 & 7) and that they relied, in substantial part, on Corinthian's misleading job placement rates in deciding to enroll." ECF No. 96 at 9.

or would not further the goal of aiding the Plaintiffs and strongly deterring future violations of the Court's orders." *Id.*

**B.    Defendants' Compliance Report**

The Defendants' compliance report paints a disturbing picture. Notably, it reveals that the Defendants did virtually nothing to comply with the order as to defaulted borrowers. At the time of the injunction, the Defendants were responsible for making "changes to defaulted borrower defense applicants' loan records directly in the [data management system]." ECF No. 111 at 12, n. 15. Yet, Defendants inexplicably failed to place all defaulted class members' loans into indefinite stopped collection status, and they did not de-certify these Students for tax offset.[2] Instead, they seized their tax refunds—for many, the essential anti-poverty benefit of the Earned Income Tax Credit—and garnished their wages. ECF No. 111 at 4 (stating that "1,808 class members were subject to Administrative Wage Garnishment ("AWG") and tax refund offset"). As a result, Students are likely suffering significant "emotional distress," and struggling with "their ability to pay for basic life expenses like food and rent." ECF No. 60 at 32-33 (discussing irreparable harms that justified the preliminary injunction). This aspect of noncompliance may never have come to light had the Court not ordered a detailed compliance report.

Defendants' actions were equally meager as to non-defaulted borrowers. Instead of creating a process to monitor servicers' compliance with the injunction (an obvious step that they recently agreed to take, ECF No. 111-2 at 7-8), they sent a handful of emails to their loan servicers

---

[2] In their compliance report, Defendants try to shift blame to their contractor, Maximus. But, Defendants maintain complete and direct control over Maximus and provide the contractor with explicit step-by-step detail when they want it to take specific actions. *See, e.g.*, Dep't of Educ., *Memorandum re: Selection Criteria for 2016 TOP Certification Processing*, (Nov. 19, 2015), Decl. of Joshua D. Rovenger (Rovenger Decl.), Exhibit 1.

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

and hoped for compliance. *See* ECF No. 111-2 at 11-14. This was not an anomaly. As the Department's Office of Inspector General warned in March 2019, the Department has routinely failed to "analyze the records relevant to identified instances of noncompliance to identify trends and recurring noncompliance for each loan servicer and across all servicers," and it "rarely used available contract accountability provisions to hold servicers accountable for instances of noncompliance." *See* Office of Inspector General, U.S. Dep't of Educ., Final Audit Report, *Federal Student Aid: Additional Actions Needed to Mitigate the Risk of Servicer Noncompliance with Requirements for Servicing Federally Held Loans*, Control No. ED-OIG/A05Q0008 at p. 9 (March 5, 2019), Rovenger Decl., Exhibit 2 (OIG Report). Under Secretary Manning responded to the OIG Report on behalf of Federal Student Aid, saying he was "concerned that the wording of [the OIG's] findings implies a much broader level of risk than is indicated," and that "the scope and scale of issues identified in [the OIG's] report, does not support the broad negative characterization of FSA's overall oversight efforts." *Id*. at 42-43. Defendants were convinced of their "current oversight and monitoring environment," *Id*. at 45, despite the fact that they, at that very moment, were in broad violation of this Court's order.

Given this *laissez faire* attitude, is it no surprise that Defendants only learned of their violations through Plaintiffs' counsel. *See* ECF No. 111-2 at 15. Nor is it shocking that, in preparing their compliance report, they were "surprised" at "the extent of the non-compliance" and the "need to have better oversight of its servicers going forward." ECF No. 124 at 7:2-14 (Mr. Merritt).

The report finally revealed that Defendants have made limited progress since Plaintiffs notified them of the non-compliance in early 2019. In April, the Defendants informed Class

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Counsel that they would "soon" be notifying Students about the non-compliance; they also promised to confirm that Students were in the proper repayment status, and that they would refund Students any illegally-obtained money. *See, e.g.,* ECF No. 103-9 (saying in April 2019 that they were "working on a notification to borrowers, which it intends to send out soon"). Yet, as of Defendants' September 2019 report, they *still* needed to complete all of these actions. ECF No. 111-2 at 2-5.

"Substantial" progress remains illusory. *See* ECF No. 125 (Defendants' Brief). As of October 15, 2019, Students have not received their money back and the Department now implies that some Students may never get their refunds. *See* ECF No. 125 at 4 (stating that the "Department is currently working with Treasury to determine whether refunds may be issued to borrowers without being offset against other federal debts owed by the borrower"). Similarly, the Defendants are relying entirely on their loan servicers to fix problems related to adverse credit reporting, but have not created a system to monitor this or even make the request for all impacted Students. ECF No. 125 at 4. And, although the Defendants claim to be "exploring all available contractual remedies" to oversee their loan servicers moving forward, they have still failed to take meaningful steps, such as refusing billing "from the initial point of non-compliance," or "reallocating new loan volume or transferring existing loan volume to other loan servicers." Ex. 2, OIG Report at 15.

Ultimately, the Court summarized the report and Defendants' conduct best, saying: "I'm really, really disturbed that from my reading of what the government did in terms of trying to comply with the order, there wasn't a lot of action. Sending a couple of emails seems really minor in terms of making sure there's compliance with an order of this magnitude." ECF No. 124 at 5:24-6:3. The Court added that it was "astounded, really, just really astounded," *id.* at 6:4-5, that it was

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"extremely disturbed to say – put it lightly," *id.* at 3:24-25, and that there "have to be some consequences for the violation of my order 16,000 times," *id.* at 4-2-5.

Three days later, Secretary DeVos disagreed, tweeting "Loan Servicers made an error on a small # of loans. We know & we're fixing it." *See* Secretary Elisabeth DeVos (@BetsyDeVosED), Twitter (Oct. 10, 2019).[3]



## III.   THE COURT SHOULD HOLD DEFENDANTS IN CIVIL CONTEMPT AND ISSUE CIVIL CONTEMPT SANCTIONS

At the hearing on October 7, the Court enumerated three goals for any order on contempt and sanctions:

> First of all, I feel like there have to be some consequences for the violation of my order 16,000 times…The second concern I have is, as a practical matter, of making sure we have systems in place to prevent these violations from occurring in the future. . . . And the third concern I have is help or compensation for the students who have been harmed because of the violation of the order…. I'm most concerned with helping the people who were harmed by this — this problem that the government created

---

[3] Neither Plaintiffs, the Court, nor the public should expect a meaningful commitment to compliance when the head of the agency adopts such a dismissive tone. And, although the Defendants have repeatedly claimed to understand the gravity of their misconduct, *see, e.g.*, ECF No. 104 at 2 (opposition to motion to stay); ECF No. 111 at 30 (compliance report); ECF No. 115 at 9 (joint case management statement) ECF No. 125 (contempt brief), the Secretary's statement makes it difficult to take their litigation representations seriously. *Cf.  Knight First Am. Instit. v. Trump*, 928 F.3d 226 (2d Cir. 2019) (discussing the interplay between presidential tweets and official statements). Defendants' description of their compliance as "substantial," also undermines their claim. ECF No. 125 at 1.

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

ECF No. 124.

Here, the natural "consequence[] for the" 16,000 violations is a finding of civil contempt. A contempt finding is warranted as a matter of law and it will have powerful coercive and expressive effects. After holding Defendants in civil contempt, the Court should issue "civil contempt sanctions" to coerce expedient compliance with the injunction; it should also ensure "compensation for the students who have been harmed" by allowing Plaintiffs to later petition for compensatory contempt sanctions. Finally, to coerce continued compliance into the future, the Court should issue an order with a number of specific provisions—several that Defendants endorse—aimed at increasing oversight of Defendants and decreasing the probability of further violations.[4]

A.      **Civil Contempt is the "Consequence" for Defendants' 16,000 Violations of the Court's Order**

Contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Records Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Civil contempt is appropriate where the goal is to "compel future compliance with a court order" and is "coercive" in nature. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).[5] A court can hold government agencies and officials in contempt of court, *see, e.g.*, *Sierra Club v. Ruckelshaus*, 602 F. Supp. 892 (N.D. Cal 1984); *Hall v. Stone*, 179 F.3d 1043 (7th Cir. 1999); *Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985); *Al-Adahi v. Obama*, 672 F. Supp. 2d 114 (D.D.C. 2009), and a

---

[4]  For the convenience of the Court, Plaintiffs append a proposed order embodying their proposed finding of contempt and sanctions.
[5]  Conversely, criminal contempt is "punitive" and aimed at "vindicat[ing] the authority of the Court." *Bagwell* 512 U.S. at 827-28.

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

1

2

finding of contempt is often "in and of itself . . . a severe sanction" when issued against high

government officials. Nicholas R. Parrillo, *The Endgame of Administrative Law: Governmental*

*Disobedience and the Judicial Contempt Power,* 131 Harv. L. Rev. 685, 775 (2018).

There is no dispute that the Court's order was specific and definite. Nor is there a dispute

that Defendants are violating the Court's Order. *See* ECF No. 125 at 12 (conceding that Defendants

are not yet in "full compliance"). And, Defendants' repeated claim that they are acting in "good

faith" is irrelevant because, as the Supreme Court just reiterated, the "absence of willfulness does

not relieve" a party "from civil contempt;" instead, a party's good faith efforts to comply are *only*

relevant insofar as they "may help to determine an appropriate sanction" flowing from the

contempt. *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1802 (2019). So, whether the Court should hold

Defendants in contempt turns on a single question: Did Defendants take all reasonable steps to

comply with the injunction?  Based on their own statements—and as they tacitly concede in their

brief—they did not.

As the Court summarized, Defendants' conduct was "at best, grossly negligent," "there

wasn't a lot of action," and "[s]ending a couple of emails seems really minor in terms of making

sure that there's compliance with an order of this magnitude," ECF No. 124 at 5:22-6:3. These

statements are well supported. As previously highlighted, Defendants could have placed defaulted

Students in indefinite stopped collection status and de-certified them for involuntary collections;

but, they did not. Similarly, they could have actively monitored their loan servicers for compliance;

again, they did not.[6] And Defendants could have worked to get into compliance over the last six

---

[6] Plaintiffs agree with Defendants that the loan servicers are already under the Court's jurisdiction
because "pursuant to Federal Rule of Civil Procedure 65, the servicers are, as agents of the
Department, subject to this Court's injunction." ECF NO. 125 at 11. Plaintiffs are also amenable

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

months; astonishingly, they did not. Simply put, because there were "other reasonable steps Defendants could have taken," they, by definition, did not take *all* reasonable steps to comply. *See Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (concluding that a party does not take *all* reasonable steps if there are "other reasonable steps it could have taken," including hiring appropriate staffing to ensure compliance or implementing plans to "discover" ongoing violations).

The obvious factual and legal conclusion—that Defendants concede—is that Defendants are in civil contempt. While that alone warrants a contempt finding, an explicit contempt holding also has inherent independent value that renders it particularly appropriate in this case. As noted, a contempt finding against a government official is itself a serious sanction because it can have a shaming effect that coerces government officials into compliance. Parillo, *Endgame* at 777; *see also Cobell v. Norton*, 334 F.3d 1128, 1146 (D.C Cir. 2003) ("We see no reason a district court may not impose a reprimand as the sole sanction for an adjudication of contempt, particularly when the contemnor is a public official acting in her official capacity."). A contempt finding also tells the specific Students who have been irreparably harmed by Defendants' conduct that, having issued a preliminary injunction to protect them, the Court will continue to protect their rights. *See generally McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1994). And, this contempt finding further broadcasts the message that executive branch defendants, like everyone else, are not above the law.

---

to Defendants' suggestion that the Court "modify its preliminary injunction order to name specifically the Department's servicers." *Id.*

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

Defendants are plainly in contempt of this Court's order. As an initial step, the Court should simply say so.

**B.     The Court Should Issue Civil Contempt Sanctions to Coerce Initial Compliance, "Help or Compensate" Students, and Ensure Continued Compliance**

Once a Court finds that a party is in civil contempt, civil contempt sanctions are appropriate to "coerce[] compliance with [the] court order" and to act as a "remedial sanction meant to compensate the complainant for actual losses." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1129 (9th Cir. 2013). Both types of civil contempt sanctions are appropriate here. And, of course, the Court's order should ensure continued compliance into the future.

**1.     The Court should issue civil contempt sanctions to coerce compliance**

The main goal of a civil contempt sanction is to coerce "the contemnor to comply with the court's coercive order." *Falstaff Brewing Co. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983). "Coercive civil sanctions, intended to deter, generally take the form of conditional fines," *Bagwell*, 512 U.S. at 827, which stay in effect until the contempt is purged. *See, e.g.*, *Crouche v. Shalala*, No. 98-3462, ECF No. 18 (E.D. Pa. 1999) (ordering government entity to pay $100 per day fine starting three weeks from the date of the order); *Henderson v. Orr*, No. C-3-81-554, 1987 WL 19715 at *2 (S.D. Ohio, May 5, 1987) (ordering government defendant to pay fine of $500 per day until order complied with). As an alternative to fines, some Courts employ more creative sanctions to coerce government officials into compliance, including through adverse litigation action. *See, e.g.*, *N.C. Fisheries Ass'n v. Daley*, 27 F. Supp. 2d 650, 666-69 (E.D. Va. 1998) (setting agency "fishing quota" in Plaintiff-friendly manner when the government failed to conduct a new

economic analysis as required by the court); *Greene v. Babbitt*, 943 F. Supp. 1278, 1281-82 (W.D. Wash. 1996) (when agency failed to follow certain procedures required by Court, it, among other things, banned the individual responsible and ordered defendants to decide petitioners claim favorably); *Serquina v. United* States, No. 93-0129, ECF Nos. 89 & 102 (C.D. Cal. 1995) (when government agency was held in contempt for failing to complete adjudications, the Court sanctioned the entity by adjudicating the applications itself).

Here, a coercive sanction is necessary. As explained, Defendants have made promises to rectify their violations for over half a year, but as of their most recent filing they are still violating the Court's order. Although Defendants have recently stepped up their efforts, Students have not received their refunds and, astonishingly, Defendants now imply that some Students may not receive them at all. *See, e.g.*, ECF No. 125 at 4. Moreover, Defendants have not set a firm deadline for notifying all impacted Students of the violations. *Id.* The Court should therefore impose a coercive sanction that remains until: (1) *all* impacted Students have received their refund; (2) the Defendants have independently confirmed that all adverse credit reporting has been corrected; (3) the Defendants have provided written notification to all impacted Students detailing the Department's violation, its remediation efforts, and a mechanism for Students to obtain assistance; and (4) Defendants establish that they have a viable plan to prevent future non-compliance.

In fashioning the sanction, the Court could choose the traditional route and impose fines against Secretary DeVos in the amount of $500 per day.[7] Or, the Court could adopt an alternative

---

[7] To determine the appropriate amount of any coercive sanction, the Court "must consider the character and magnitude of the harm threated by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992). The Court should also take into account the contemnor's "financial position." *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d

coercive sanction, such as ordering the Department to write-off impacted Students' loans by $500 per day during the continued non-compliance. As a third alternative, the Court could set a date (such as 30 days from the date of the order), by which Defendants must come into compliance or face a finding that the "presumption of regularity" is definitively rebutted in this case. *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (explaining that the standard of review of agency action is generally highly deferential because it is entitled to a presumption of regularity"). Either way, Students cannot afford to trust Defendants' promises and a coercive sanction is needed to ensure that they follow through.

> **2.**    ***The court should allow Students to petition for compensatory contempt sanctions***

In addition to coercive fines, a court can issue compensatory contempt sanctions that "are remedial" and that "typically take the form of unconditional monetary sanctions." *Greenpeace, Inc.*, 815 F.3d at 629. The goal is to make the aggrieved party whole and the sanction generally includes attorneys' fees and costs, *see Portland Feminist Women's Health Ctr. v. Advocates for Life, Inc.*, 877 F.2d 787, 790 (9th Cir. 1989) (noting that costs and attorney's fees were appropriately part of a "remedial sanction").

---

1468, 1471 (9th Cir. 1992). Here, a fine of $500 per day is reasonable in light of the harm that continued non-compliance brings and in light of Defendants' financial position. It is also well below the amount that the Ninth Circuit has routinely upheld as appropriate as a civil contempt sanction. *See, e.g.*, *Gharib v. Casey*, 692 F. App'x 950, 953 (9th Cir. 2017) (upholding daily $1,000 fine against contemnor for failure to comply with bankruptcy turnover obligations); *Shell Offshore, Inc. v. Greenpeace, Inc.* 815 F.3d 623, 630 (9th Cir. 2016) (upholding coercive fines against activists for "$2,500 per hour for the first 24-hour period," which then increased "until it reached a cap of $10,000 per hour"); *Whittaker Corp.*, 954 F.3d at 514 (upholding $10,000 daily fine); *Richmark Corp.*, 959 F.2d at 1471 (upholding $10,000 per diem fine).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Although Defendants' conduct has likely created the very irreparable harm that necessitated the injunction in the first place, it has also likely caused some compensable injury. For instance, Class Counsel suspects that some impacted Students borrowed money at high interest to secure basic necessities to cover their seized wages or tax refunds. *See* ECF No. 60 (finding that class members showed "they are living in dire circumstances" and that "any additional dollar they are required to repay takes away from basic need for food and shelter"). Compensatory contempt relief is the precise type of "remedial" sanction that is appropriate to address such economic harm.

However, Class Counsel cannot yet adequately petition the Court for the appropriate compensatory relief—which may entail, instead of monetary damages, a write-down of the outstanding loan balances of the affected borrowers—until they have an opportunity to speak with impacted Students. *See* ECF No. 118 (ordering the Defendants to provide Class Counsel with the names and contact information of class members). Similarly, because Class Counsel anticipates needing to hire temporary staff to help handle communications with the over 16,000 impacted Students, Plaintiffs cannot yet petition the Court for all of their reasonable attorneys' fees and costs related to Defendants' non-compliance.[8] As such, Plaintiffs respectfully ask that the Court set a date by which Plaintiffs will petition the Court (or, if appropriate, a special master), for additional compensatory sanctions.

---

[8] Defendants note that awarding "attorneys' fees, would 'divert more' of the Department's resources away from 'solving the problem.'" ECF No. 125 at 12. They do not explain why or how paying attorneys' fees and costs could possibly do so. Nor do they provide a basis for imposing a burden on Class Counsel to remedy, without recompense, the Department's harm to Students.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 3.     *The Court's order should also ensure continued compliance with the injunction*

To ensure continued compliance, the Court should issue an order with the following provisions (several of which Defendants consent to):

**First**, the Court should order Defendants to de-certify defaulted Students from tax offset. For at least some Students in default, the Department certified their debt as "past-due, legally enforceable" to the Treasury Department. *See* 31 U.S.C. § 3720A(a). Such certification triggers reduction by the Treasury Department of the Students' tax refund by an amount equal to their debt (that can continue each following tax year until the debt is paid). *Id.* at 3720A(c). Notwithstanding the Court's injunction, Defendants' violations reveal that there are a substantial number of Students still certified. To avoid additional violations, the Court should explicitly order Defendants to de-certify the applicable Students.[9]

**Second**, the Court stated that it was considering appointing a special master; Plaintiffs believe that the Court should do so. *See Stone v. City of San Francisco*, 968 F.2d 850 (9th Cir. 1992) ("Federal courts repeatedly have approved the use of special masters to monitor compliance with court orders and consent decrees"). Given the Defendants' continually changing representations as to their compliance, and their general "mischief," a special master (or other independent entity) would guarantee accurate updates on Defendants' compliance efforts. Further, although Defendants point to their internal Quality Assurance Review as eliminating the need for

---

[9] Plaintiffs reiterate their concern that Defendants' failure to previously de-certify Students is inconsistent with their representations in *Williams v. DeVos*¸ where they said that "as of December 10, 2018, "each account referred to TOP [tax offset] is checked weekly to verify whether a borrower defense application has been filed. If such application has been filed, the account will be removed from TOP and put into forbearance or stopped collection status." *Williams v. DeVos*, No. 16-cv-11949-LTS, ECF No. 101 at 2 (D. Mass. Dec. 20, 2018) (Defendants' Status Report).

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a special master, ECF No. 125 at 10, the special master would provide a truly independent view of whether additional Department action is required.[10] Finally, because Plaintiffs anticipate petitioning the Court for compensatory relief at a later date, a special master could assist the Court with determining and distributing any such relief.

**Third,** all parties agree that Defendants should submit monthly reports updating the Court on compliance. *See* ECF No. 125 at 8-9. Plaintiffs agree with Defendants' proposed topics for the report, and would also suggest that, in their first monthly report, Defendants detail how they intend to modify staffing, processes, and procedures to ensure future compliance, including the future compliance of loan servicers.

**Fourth,** Plaintiffs share the Court's concerns that the Defendants are not doing nearly enough to oversee their loan servicers. Although Plaintiffs have some insight into Defendants' oversight capabilities, they do not have full visibility into Defendants' toolbox. Absent the loan servicing contracts, it is impossible to determine whether the Court should order the Department to take additional steps vis-a-vis their loan servicers. The Court should require the Defendants to produce all currently operative contracts with loan servicers, and its contract with Maximus. *See, e.g., Campaign for Southern Equality v. Bryant*, 197 F. Supp. 3d 905, 914 (S.D. Miss. 2016) ("Under Federal Rules of Civil Procedure 65 and 69, plaintiffs are entitled to reasonable discovery to enforce an injunction against the parties bound by that injunction.").

---

[10] The need for independent, third-party review of Defendants' efforts is not merely necessitated by their historical failure to adhere to the injunction, but also by Defendants own description of their internal Quality Assurance Review. The Defendants vaguely describe this "review [of] current processes and procedures and [ ] recommendations for longer-term solutions" without providing any detail to assure the Court that the review and recommendations will meaningfully address Defendants' systemic failings. ECF No. 125, at 10.

PLAINTIFFS' BRIEF RE: CONTEMPT AND SANCTIONS
Case No. 17-cv-07210-SK

**Fifth**, all parties agree that Defendants need to provide Students with a notice that informs them of their rights and that contains Class Counsels' contact information. The Defendants have asked Class Counsel to review a new draft notice once it is available, and Class Counsel are eager to cooperate. The Court should also accept Defendants' invitation to "submit its proposed outreach communications to the Court for further review," since there is nothing requiring Defendants to accept any of Plaintiffs' suggestions. ECF No. 125 at 9. The Court should also set a swift deadline by which Defendants must submit the notice for judicial review.

**Finally**, in its September 2019 report, Defendants stated that they were planning to undertake a "Quality Assurance Review" (QAR) to review its noncompliance. They note that they are, subject to "appropriate redactions . . . willing to file the completed QAR report with the Court." ECF No. 125 at 10. Because there is a question as to whether the QAR process is sufficient, the Court should order them to do so.

## IV.    CONCLUSION

At bottom, Secretary DeVos and the Department have engaged in widespread non-compliance with the Court's order and have failed to take swift and meaningful steps to correct the problems. As a result, they are still violating the Court's order, all at the expense of Students. The only appropriate outcome is for the Court to hold Secretary DeVos and the Department in civil contempt and to sanction their conduct.

Dated: October 21, 2019                              Respectfully submitted,


                                                     */s Joshua D. Rovenger*

Joseph Jaramillo
Natalie Lyons
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94604
Tel.: (510) 271-8443
Fax: (510) 280-2448

Eileen M. Connor
Toby R. Merrill
Joshua D. Rovenger
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiffs*