UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELISABETH DEVOS, et al., <br><br> Defendants. | Case No. 17-cv-07210-SK <br><br> **ORDER REGARDING SANCTIONS** <br><br> Regarding Docket Nos. 125, 126 |

On June 19, 2018, this Court issued a preliminary injunction. (Dkt. 70.) There is no dispute that Defendants have violated the preliminary injunction issued in this case. (Dkts. 125, 126.) Through counsel, Defendants express regret and argue that remedial measures are the most appropriate response to their conduct. (Dkt. 125.) In contrast, Plaintiffs argue that Defendants should be held in civil contempt and subject to monetary sanctions for their noncompliance. (Dkt. 126.) Having carefully considered the submissions of the parties, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court HEREBY FINDS Defendants in CIVIL CONTEMPT and ORDERS that Defendants pay SANCTIONS in the amount of $100,000, for the reasons set forth below.

## BACKGROUND

This matter arises out of the claims of approximately 110,000 students who attended schools operated and owned by Corinthian Colleges, Inc. ("Corinthian"), who sought or seek relief from their student loans from the Department of Education (the "Department"), and who challenge the method developed by Secretary DeVos (the "Secretary") for determining whether the students are eligible for relief (the Department of Education and Secretary DeVos, collectively "Defendants").

1    Plaintiffs allege that, before 2017, the Defendants used a process that Plaintiffs call the
2    "Corinthian Job Placement Rate Rule" or "Corinthian Rule" by which the Defendants provided
3    full relief from federal loans to students who attended certain Corinthian programs. (Dkts. 35, 47.)
4    Between 2010 to 2014, Corinthian made false and misleading statements regarding Corinthian's
5    job placement rates. (*Id*.) A summary of the relevant programs and related dates of enrollment
6    were posted on the Department's website in two documents referred to as the "Lists." (Dkt. 35-6.)
7    Students who attended the programs identified on the Lists could submit an attestation form
8    seeking relief from their federal loans. (Dkts. 35, 47.)

9    Starting on January 20, 2017, Defendants stopped processing claims under the Corinthian
10   Rule. (*Id*.) After abandoning the Corinthian Rule, Defendants implemented a new rule in which
11   they instead granted partial to full relief for borrowers who had attended the Corinthian schools.
12   (*Id*.) There is no dispute that Defendants created and used a new methodology, which Plaintiffs
13   named the "Average Earnings Rule," to determine which borrowers are entitled to relief from their
14   student loans and how much relief they should obtain. (Dkt. 60.) There is also no dispute that
15   Defendants used information obtained from the Social Security Administration in implementing
16   the Average Earnings Rule. (Dkt. 60.) Plaintiffs allege that Defendants' action in obtaining
17   information from the Social Security Administration violates the Privacy Act of 1974, 5 U.S.C. §
18   552a. (Dkt. 58, ¶¶ 279-302.)

19   Plaintiffs sought, among other forms of relief, full relief for all students who had attended
20   the Corinthian schools during the designated time period. (Dkt. 58, ¶ 257.) Plaintiffs posited
21   several other, independent reasons why the Defendants' abandonment of the Corinthian Rule is
22   illegal: (1) the action is arbitrary, capricious, and unlawful, (2) the action constitutes arbitrary,
23   unlawful retroactive lawmaking in violation of 5 U.S.C. §§ 706(2)(A) and (C), and (3) the action
24   is a violation of due process. (Dkt. 58, ¶¶ 279, 303-319.) In addition, Plaintiffs attacked the
25   Defendants' inaction during a long period of time when the Corinthian Rule was not in place but
26   Defendants provided no relief. (Dkt. 58, ¶¶ 280-296.) Plaintiffs challenged that inaction as the
27   unlawful withholding of agency action and unreasonably delayed agency action. (*Id.*)
28   On May 25, 2018, the Court granted in part and denied in part Plaintiffs' motion for

preliminary injunction.  (Dkt. 60.)  The Court granted Plaintiffs' request to enjoin Defendants from engaging in collection efforts of Plaintiffs' loans using the Average Earnings Rule and ordered Defendants to "cease all efforts to collect debts from Plaintiffs and any other borrower who has successfully completed an attestation form." (Dkt. 70.)  The Court also ordered the Defendants to halt any action to collect a loan from Plaintiffs and other students who fall into the previously-identified groups and to provide forbearance to that group of students.  (Dkt. 70.)

In turn, Defendants appealed the Court's ruling to the Ninth Circuit Court of Appeal.  (Dkt. 81.)  With the exception of Plaintiffs' then-pending motion for class certification (Dkt. 47), the Court stayed the proceedings pending appeal before the Ninth Circuit. (Dkt. 88.)  The parties appeared for oral argument before the Ninth Circuit on February 8, 2019, and both parties filed supplemental briefing with the circuit court on March 5, 2019.  (Dkt. 126.)  The Ninth Circuit has yet to render an opinion on the appeal.  The Court certified a class of Plaintiffs on October 15, 2018.  (Dkt. 96.)  On July 15, 2019, Plaintiffs filed a motion to lift the stay and enforce the preliminary injunction, and Plaintiffs notified the Court that Defendants were in substantial noncompliance with the preliminary injunction.  (Dkt. 103.)  Defendants opposed the motion (Dkt. 104), and the Court heard oral argument on August 19, 2019.  The Court denied the motion to lift the stay without prejudice and ordered Defendants to file a report regarding the status of compliance with the preliminary injunction.

Defendants filed their compliance report on September 18, 2019 (the "Compliance Report").  (Dkt. 111.)  The Compliance Report indicated that the Department had erroneously sent 16,034 notices that payments were due to Corinthian borrowers.[1]  (*Id.* at 17.)  In response to those notices, 3,298 Corinthian borrowers made one or more payments.  (*Id.*)  As of the time of the

---

[1] Defendants must individually review each application for federal loan relief to determine whether the applicant falls within the class certified by the Court.  (Dkt. 111-2 n.2.)  Because Defendants have not yet completed the process of determining which applicants are class members, Defendants have construed the Court's preliminary injunction as applying to all applicants for federal loan relief who attended Corinthian schools until each applicant's class status has been determined.  The total potential class consists of 74,781 individuals who have either received partial relief under the Average Earnings Rule or who have a pending application for relief.  The Court agrees that the preliminary injunction applies to all potential Corinthian borrowers who may be members of the certified class and refers to those individuals herein as "Corinthian borrowers."

1  report, the Department had not fully identified the Corinthian borrowers affected by the incorrect
2  notices, had not yet sent them a notice describing the error, and had not yet issued any refunds for
3  the payments received in violation of the injunction.  (*Id.*)  The Department also mistakenly
4  notified at least 3,000 Corinthian borrowers that their loans were entering repayment, rather than
5  stopped collection or forbearance status.  (*Id.*)  After the preliminary injunction was issued,
6  Defendants provided adverse reports to credit reporting agencies for 847 Corinthian borrowers and
7  collected on the loans of 1,808 Corinthian borrowers through wage garnishment or offsets from
8  tax refund.  (*Id.*)

9  Before Plaintiffs' discovery of the noncompliance and the Court's intervention,
10  Defendants' efforts to comply with the preliminary injunction were limited to sending electronic
11  mail messages to their third-party companies that service the loans.  (*Id.*)  Defendants entered into
12  contracts with nine different federal loan servicers to manage non-defaulted loans and one
13  contractor to manage defaulted loans.  (Dkt. 111-2 at 12.)  After the Court entered the preliminary
14  injunction, Defendants sent what they call "guidance" regarding the injunction to their servicers.
15  (Dkt. 111-2.)  The "guidance" consists of a single email with three brief sentences of instruction
16  and an equally cursory three sentence notification to be sent to affected borrowers.  (Dkt. 111-5.)
17  Sent on May 29, 2018, the email was only sent to the service providers managing the accounts of
18  the named plaintiffs and declarants in this action.  (Dkt. 111-2 at 16.)  Only on July 5, 2018, did
19  Defendants email all service providers with that it styled a "Forbearance Request for Partially
20  Approved Claims" instructing them to place an attached list of borrowers in forbearance.  (Dkt.
21  111-6.)  The email does not even mention the existence of the preliminary injunction.  (*Id.*)
22  Defendants report that they received email confirmation from only eight of the nine servicers that
23  they had followed the instructions.  (Dkt. 111-2 at 17.)  Defendants sent no follow-up emails and
24  took no further action to ensure compliance with the preliminary injunction prior to Plaintiffs'
25  realization that Defendants had violated the preliminary injunction.  (Dkt. 111-2.)

26  Defendants' Compliance Report is silent as to the normal actions one would expect from
27  an entity facing a binding court order: multiple in-person meetings or telephone calls to explain
28  the preliminary injunction and to confirm that the contractors were complying with the

4

preliminary injunction. Defendants' attempt to comply with the preliminary injunction consisted of a single email to each service provider and partial confirmation of receipt of those emails.

## ANALYSIS

A Court may hold a party in civil contempt when the party has displayed "disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A party's behavior "need not be willful" to justify a finding of civil contempt. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987). "[T]here is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695; *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("it matters not with what intent the [contemnor] did the prohibited act"). "Substantial compliance" is a defense to civil contempt that exists where there are a few minor violations despite the fact that "every reasonable effort has been made to comply." *Id.* (citing *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1378-79 (9th Cir. 1986). Like private parties, government agencies and officials may be subject to civil contempt. *See Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 903 (N.D. Cal. 1984).

Civil contempt is coercive. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (noting that "[t]he paradigmatic coercive, civil contempt sanction […] involves confining a contemnor indefinitely until he [or she] complies with an affirmative command"). Thus, "the contemnor is able to purge the contempt […] by committing an affirmative," remedial act. *Id.* Sanctions for civil contempt are also appropriate "to (1) compel or coerce obedience to a court order, and/or (2) compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance." *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013). In considering what sanctions are justified, "[t]he private or public rights that the decree sought to protect are an important measure of the remedy." *McComb*, 336 U.S. at 191. When civil contempt is at issue, the party moving for a contempt finding bears the burden of showing by clear and convincing evidence that contemnors violated a specific and definite order of the court. *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*,

5

968 F.2d 850, 856 n.9 (9th Cir. 1992)).  "The burden then shifts to the contemnors to demonstrate why they were unable to comply."  *Id.*  Good faith – or the absence thereof – "may help to determine an appropriate sanction."  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (discussing *McComb*, where "persistent contumacy" justified sanctioning the contemnor).

Here, there is no question that Defendants violated the preliminary injunction.  There is also no question that Defendants' violations harmed individual borrowers who were forced to repay loans either through voluntary actions or involuntary methods (offset from tax refunds and wage garnishment) and who suffered from the adverse credit reporting.  Defendants have not provided evidence that they were unable to comply with the preliminary injunction, and the evidence shows only minimal efforts to comply with the preliminary injunction.  The Court therefore finds Defendants in civil contempt.

The only question is the type of relief that is appropriate in this situation.  The Court finds that a monetary sanction of $100,000, paid by Defendants, to a fund held by Plaintiffs' counsel, is the best method to remedy Defendants' wrongful acts.  Given that there are over 16,000 borrowers who have suffered damages from Defendants' violation of the preliminary injunction and given that there may be some administrative expenses to remedy the harm, the Court finds the amount reasonable.

The Court ORDERS the parties to meet and confer regarding the method by which Plaintiffs will set up the fund and administer the fund.  As noted above, the Court contemplates that some portion of the fund will be used for administrative expenses.  The parties must submit their proposed plan for administering the fund no later than November 15, 2019.

In addition, the Court ORDERS that Defendants provide a status report regarding their attempts to comply with the preliminary injunction on a monthly basis beginning November 1, 2019, to be filed no later than the first of each successive month.  Each report must include the following information:

1. Defendants' progress toward identifying which of the 74,781 potential class members are class members;
2. The repayment status of each potential and confirmed class member;

3. Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored;

4. Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued;

5. Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued;

6. Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected;

7. Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court;

8. Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers;

9. Any other information relevant to the Defendants' compliance with the preliminary injunction.

The Court further ORDERS that Defendants submit a revised notice to be sent to the entire potential class regarding Defendants' noncompliance with the preliminary injunction and their forthcoming efforts to fully comply. Defendants shall meet and confer with Plaintiffs and submit a proposed notice to the Court for approval no later than November 15, 2019.

///
///
///
///
///
///
///

1  The Court does not foreclose the possibility that, if Defendants fail to comply with
2  preliminary injunction in a timely manner, the Court will impose additional sanctions, including
3  the appointment of a Special Master to ensure compliance with the preliminary injunction.  At this
4  time, the Court will provide Defendants an opportunity to correct the previous mistakes and work
5  with Plaintiffs to compensate the injured individuals.

6  **IT IS SO ORDERED**.

7  Dated: October 24, 2019



SALLIE KIM
United States Magistrate Judge