JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

R. CHARLIE MERRITT
KEVIN P. HANCOCK
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (202) 616-8098
Fax: (804) 819-7417
robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION and BETSY DEVOS, in her official capacity as Secretary of Education,<br><br>Defendants. | No. 3:17-cv-7210-SK<br><br>**[PROPOSED] MOTION FOR PARTIAL RECONSIDERATION**<br><br>Hearing Date:<br>Hearing Time: |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on ________________,[1] before the Honorable Judge Sallie Kim, Defendants the U.S. Department of Education ("Department") and Betsy DeVos, in her official capacity as Secretary of Education ("Secretary") (collectively, "Defendants"), by and through undersigned counsel, will move the Court for partial reconsideration of the Court's October 24, 2019 Order Regarding Sanctions, ECF No. 130 ("Sanctions Order").

Defendants request that the Court reconsider and vacate the $100,000 "monetary sanction" that it ordered Defendants to pay without an adequate accounting of Defendants' remediation of Plaintiffs' losses. The reasons for this motion are more fully set forth in the following Memorandum of Points and Authorities. Defendants respectfully request that the Court decide this motion on the papers submitted, without oral argument, pursuant to Civil Local Rule 7-1(b).

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

On October 24, 2019, the Court entered an order finding Defendants in civil contempt and requiring them to pay a "monetary sanction . . . to a fund held by Plaintiffs' counsel" as "the best method to remedy Defendants' wrongful acts" in violation of the Court's preliminary injunction. Order Regarding Sanctions at 6, ECF No. 130 ("Sanctions Order"). The Court made that determination, however, without the benefit of critical information demonstrating that the Department had brought itself into compliance with the Court's preliminary injunction. At the time the Court issued the Sanctions Order, the Defendants were close to filing a declaration explaining the full extent of the affirmative steps Defendants had taken—most notably, ensuring that refunds were issued to all individuals who either made an erroneous payment on their federal student loan debt or were subject to involuntary collection as a result of the Department's noncompliance with the Court's preliminary injunction—to remedy the harm associated with their noncompliance and reduce greatly, if not entirely, the need for a compensatory sanction in this

[1] Under Local Civil Rule 7-9(d), a party cannot notice a motion for reconsideration until granted leave by the Court. If the Court grants Defendants leave to file this proposed motion, they will set a hearing date in accordance with the Court's calendar and the Local Rules.

case. Now that the Court has issued its order, Defendants instead respectfully move for reconsideration. In light of this new information, which Defendants detail in the declaration of General Mark A. Brown, the Chief Operating Officer of the Department's Federal Student Aid ("FSA") office ("Brown Declaration") (attached as Exhibit A to Defendants' motion for leave to file motion for partial reconsideration), the Court should reconsider and vacate the $100,000 compensatory fine as a civil contempt sanction in this case.

**BACKGROUND**

On May 25, 2018, the Court granted in part Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs were likely to succeed on their claim that the methodology the Department developed in December 2017 to evaluate certain types of borrower defense claims (the "Average Earnings Rule") violates the Privacy Act. Order at 18-22, ECF No. 60 ("PI Order"). The order enjoined the Secretary from using the Average Earnings Rule and ordered the Secretary to "cease all efforts to collect debts from Plaintiffs." *Id*. at 36-37. On June 19, 2018, the Court entered an "Amended Order Regarding Plaintiffs' Motion for Preliminary Injunction," ECF No. 70 ("Amended PI Order"), which modified the original PI Order to require Defendants to "cease all efforts to collect debts from Plaintiffs and any other borrower who has successfully completed an attestation form," *id*. at 1. The Court's preliminary injunction prevents the Department from collecting relevant federal student loan debts from the class that has been certified in this case. *Id*.; *see also* Order Granting Mot. for Class Cert., ECF No. 96.

On August 19, 2019, in response to Plaintiffs' motion to lift the stay of proceedings and enforce compliance with the preliminary injunction, ECF No. 103, the Court ordered Defendants to submit a full report detailing their compliance with the Court's preliminary injunction, ECF No. 110. Defendants acknowledge and regret that their report demonstrated that Defendants were not, as of September 18, 2019, in substantial compliance with the preliminary injunction. ECF No. 111-2 ("Compliance Report"). The Department reported that while the injunction was in place 16,034 Corinthian borrowers[2] had received incorrect notices that they owed payments on their

[2] *See* Sanctions Order at 3 n.1 (noting agreement with Defendants that preliminary injunction applies to "all potential Corinthian borrowers who may be members of the certified class").



loans, 3,289 borrowers made payments that they were not required to make, 1,808 defaulted borrowers were subject to involuntary collection, and 847 borrowers were subject to adverse credit reporting. Compliance Report at 2-4. The Court held a hearing on October 7, 2019 ("October 7 hearing") to discuss the Compliance Report and invited briefing from the parties "on the issues of contempt and sanctions." Order, ECF No. 118 ("October 8 Order").

The Department explained at the October 7 hearing and in its brief in response to the October 8 Order, ECF No. 125 ("Defs.' Brief"), that the Department has made substantial progress towards achieving compliance with the preliminary injunction since it submitted the Compliance Report. As of October 15, 2019, when the Department filed its brief, the Department had (1) confirmed that all of the 16,034 Corinthian borrowers who had received incorrect payment notices were in the proper repayment status; (2) requested refunds on behalf of all Corinthian borrowers who had either made an incorrect payment on their federal student loans or were subject to involuntary collection through administrative wage garnishment and tax refund offset; and (3) requested that its servicers restore adverse credit reporting for 718 of 847 affected Corinthian borrowers. Defs.' Brief at 3-4. While Defendants believed that these efforts demonstrated substantial compliance as of October 15, Defendants acknowledged that work remained to be done and that full compliance had not yet been achieved.

As detailed in the Brown Declaration, however, the Department had in fact achieved full compliance with the preliminary injunction by October 24, 2019, the day the Court issued its sanctions order. By that date, the Department, working with the Department of the Treasury ("Treasury"), had ensured that refunds had been issued to all Corinthian borrowers who had been identified as having been subject to involuntary collection efforts, and that the refunds would be exempt from offset against other federal debts. Brown Decl. ¶ 7. The Department had also ensured that refunds had been issued to each Corinthian borrower that the Department could confirm made an erroneous payment. *Id.* ¶¶ 8-10. As explained in the declaration, this did not include a small set of borrowers that either do not appear to have actually made a payment or are believed to have deliberately chosen to make an erroneous payment notwithstanding the fact that they were not required to. *Id.* ¶¶ 9-10. The Department is following up with this latter set of borrowers and will

process refunds for any such borrower who requests one after being informed of the potential harm that could result from such refund. *Id.* ¶ 10. Finally, the Department and its servicers had corrected the credit reports of all 847 Corinthian borrowers who had been identified as having been subject to adverse credit reporting. *Id.* ¶ 11. The Department had prepared a declaration, which it planned to file on October 24, to apprise the Court of these updates to its compliance with the injunction, and was in the final stages of finalizing that declaration for filing at the time the Court entered its Sanctions Order. *Id.* ¶ 14.

Shortly before Defendants could file their declaration, however, the Court issued its Sanctions Order. Finding that Defendants had "violated the preliminary injunction," "harmed individual borrowers," and "not provided evidence that they were unable to comply with the preliminary injunction," the Court found Defendants in civil contempt. Sanctions Order at 6. As to the appropriate "relief," the Court determined that a $100,000 "monetary sanction," to be paid to a "fund held by Plaintiffs' counsel," was appropriate to "remedy" the Department's noncompliance. *Id.* The Court found the amount "reasonable" because over 16,000 borrowers "suffered damages from Defendants' violation of the preliminary injunction" and "there may be some administrative expenses to remedy the harm." *Id.* The Court also ordered Defendants to provide monthly status reports "regarding their attempts to comply with the preliminary injunction," *id.*, and to submit for the Court's approval a notice "to be sent to the entire potential class regarding Defendants' noncompliance with the preliminary injunction and their forthcoming efforts to comply," *id.* at 7.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 54(b) provides, in relevant part: "[a]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Pursuant to this authority, "a district court can modify an interlocutory order 'at any time' before entry of a final judgment." *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005).

Civil Local Rule 7-9 governs motions for reconsideration. As detailed in Defendants' motion for leave to file this motion, the rule authorizes a party to seek reconsideration where, as relevant here, "a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought" and the moving party shows that "in the exercise of reasonable diligence [it] did not know such fact or law at the time of the interlocutory order." Civil L.R. 7-9(b)(1). Once this showing is established, and leave to file a motion for reconsideration is granted, the decision whether to grant reconsideration "is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). "[A] district court may reconsider and revise a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." *Wilkins-Jones v. Cty. of Alameda*, No. 08-cv-1485-EMC, 2012 WL 3116025, at *4 (N.D. Cal. July 31, 2012) (citation omitted); *see also Tsyn v. Wells Fargo Advisors, LLC*, No. 14-cv-02552-LB, 2016 WL 7635883, at *1 (N.D. Cal. June 27, 2016) (noting that while Civil Local Rule 7-9 "sets demands that *litigants* must meet to seek reconsideration of interlocutory decisions," that rule "does not restrict the *court's* ability to revisit its previous orders").

## ARGUMENT

### THE COURT SHOULD RECONSIDER AND VACATE THE "MONETARY SANCTION"

As described above, the Court found Defendants in civil contempt because of the noncompliance described in the Compliance Report and because Defendants did not show that they were "unable to comply with the preliminary injunction." Sanctions Order at 6. It then imposed a "monetary sanction of $100,000" as the "best method to remedy Defendants' wrongful acts." *Id*. But the Court issued the order without the benefit of new information demonstrating that Defendants had achieved full compliance with the preliminary injunction. In light of the record before the Court and the updated evidence of compliance and remediation set forth in the Brown Declaration, the Court should reconsider and vacate this monetary sanction.

## I. Civil Contempt Sanctions Must Either Coerce Compliance or Compensate the Complaining Party for Actual Losses Sustained

In contrast to criminal contempt sanctions, which are imposed to "punish past defiance and to vindicate the court's judicial authority," civil contempt sanctions "are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). As this Court recognized, to the extent a civil contempt sanction serves the coercive function, the contemnor can "'purge the contempt by committing an affirmative,' remedial act." Sanctions Order at 5 (quoting *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 828 (1994)). Indeed, a coercive fine is "civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829; *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("[T]he ability to purge is perhaps the most definitive characteristic of coercive civil contempt."). Where an unconditional fine is made payable to the court, and the contemnor has "no subsequent opportunity to reduce or avoid the fine through compliance," the fine constitutes a criminal sanction, even if it totals "as little as $50." *Bagwell*, 512 U.S. at 829.

A compensatory civil sanction, on the other hand, is designed to "compensate the complainant for losses sustained." *United States v. UMWA*, 330 U.S. 258, 303-04 (1947). It is well established that any compensatory fine must "be based upon evidence of [a] complainant's actual loss." *Id*. at 304; *see also Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (compensatory sanction limited to "actual losses *sustained as a result of the contumacy*" (citation omitted)). A fine that "b[ears] no relation to the injury suffered [is] unauthorized" and "arbitrary"; rather, any compensatory sanction must be "based upon evidence showing the amount of the loss and expenses." *United States v. Montgomery*, 155 F. Supp. 633, 637 (D. Mont. 1957). "Absent findings regarding . . . actual losses, [a] fine cannot be sustained as a compensatory remedy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983).

## II. Defendants' Updated Evidence of Compliance Demonstrates That Harm to Borrowers Has Been Remediated

As an initial matter, the Court's monetary sanction does not explicitly offer Defendants the opportunity to "purge the contempt." *Bagwell*, 512 U.S. at 828. If the Court intended the monetary

sanction to remain in place even after Defendants cured the violation, then the sanction cannot be justified as a coercive civil contempt sanction. *See Sankary v. Ringgold-Lockhart*, 611 F. App'x 893, 895 (9th Cir. 2015) (unconditional fine punitive, and thus "not available in civil contempt proceedings," where it did not afford "an opportunity to purge contempt"). And even if the Court intended to give Defendants the opportunity to purge the contempt, they have now done so by coming into full compliance with the preliminary injunction.

The monetary sanction, then, is only proper to the extent it provides compensation for the actual losses suffered by the borrowers harmed by Defendants' noncompliance. *See, e.g.*, *Ahearn ex rel. NLRB v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013). The Court found that a $100,000 "monetary sanction" was "reasonable" because "there are over 16,000 borrowers who have suffered damages from Defendants' violation of the preliminary injunction" and because "there may be some administrative expenses to remedy the harm." Sanctions Order at 6. However, the Court provided no further explanation or support for how it derived $100,000 as the appropriate measure of compensation. Nor did it offer any accounting or description of either the "damages" or the "administrative expenses" that led the Court to determine that number to be "reasonable." Because there is "no evidence in the record demonstrating any actual losses caused by" Defendants' noncompliance in this case, the Court's unconditional $100,000 monetary sanction "cannot [be] uph[e]ld." *Shuffler*, 720 F.2d at 1148; *see also Gen. Signal Corp.*, 787 F.2d at 1379-80 (vacating $400,000 sanction because, *inter alia*, there was "nothing in the record to indicate that [the complaining party] lost $400,000 as a result of the violation of the [court's] order").

In any event, as the Brown Declaration explains, Defendants have now compensated affected borrowers for harms suffered as the result of Defendants' noncompliance. To the extent the Sanctions Order addresses losses suffered by Corinthian borrowers, it describes that harm in terms of "borrowers who were forced to repay loans either through voluntary actions or involuntary methods (offset from tax refunds and wage garnishment) and who suffered from the adverse credit reporting." Sanctions Order at 6. At the time the Court entered its Sanctions Order, the record demonstrated that the Department had not yet remediated that harm. As described in

the Brown Declaration, however, that is no longer—and was no longer at the time of the Order—the case.

The declaration explains that the Department has issued refunds to all "borrowers who were forced to repay loans either through voluntary actions or involuntary methods." Sanctions Order at 6; *see* Brown Decl. ¶¶ 7-10. The Department has also, through its loan servicers, corrected the credit reports of all borrowers who "suffered from the adverse credit reporting." Sanctions Order at 6; *see* Brown Decl. ¶ 11. Thus, the harms identified in the Sanctions Order have been remediated, and the Court's $100,000 fine cannot be justified on the basis that it is necessary to compensate borrowers for losses in the form of either payments made on their loans, involuntary collections, or adverse credit reporting. Moreover, these errors should not recur because, as Defendants have previously reported, all borrowers that the Department reported as having received incorrect notices of repayment are currently in the correct repayment status. *See also id.* ¶ 12. As the declaration states, the Department has "remediated all identified compliance problems and is now compliant with the Court's injunction." *Id.* ¶ 15.

The Brown Declaration further establishes that the Department is putting in place the oversight measures necessary to prevent the type of errors that hampered its ability to comply with the injunction in the past. In particular, it states that General Brown, the Chief Operating Officer of FSA has expressed his displeasure with the CEOs of each servicer and requested that each attend an in-person "loan servicer performance meeting" during the month of November in Washington, D.C, which will be the first in a series of quarterly meetings. Brown Decl. ¶ 18. The November meeting will focus on FSA's expectations for servicers, as well as a plan for ensuring full compliance with the preliminary injunction going forward. *Id.* Moreover, the Department remains committed to complying with the other aspects of the Sanctions Order of which it does not seek reconsideration in this motion—namely, the requirement that the Department provide monthly compliance reports that would reveal any issues, as well as any potential harm to covered borrowers, as they occur. To the extent the Court is concerned about the Department's ability to maintain its current state of compliance going forward, this monthly compliance reporting will

allow the Court to monitor the Department's progress and, if additional violations of the injunction are reported, impose additional sanctions, including compensation, based on an appropriate record.

**CONCLUSION**

For the foregoing reasons, Defendants request that the Court reconsider and vacate the $100,000 monetary sanction in this case.

Dated: November 1, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
Telephone: (202) 616-8098
Fax: (804) 819-7417
robert.c.merritt@usdoj.gov

*Counsel for Defendants*