# U.S. Department of Education

# Office of Federal Student Aid

# First Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. DeVos*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California

**November 1, 2019**

## Introduction and Summary

On October 24, 2019, the U.S. District Court for the Northern District of California issued an order regarding sanctions, ECF No. 130 (the "Sanctions Order"), which required the U.S. Department of Education (the "Department") to submit monthly status reports regarding its attempt to comply with the preliminary injunction order issued by the Court on May 25, 2018, ECF No. 60 ("PI Order"), which was amended on June 19, 2018, ECF No. 70 ("Amended PI Order"), and clarified on August 30, 2018, ECF No. 89.  The first monthly compliance report must be filed on November 1, 2019, and include the following information:

1. Defendants' progress toward identifying which of the 74,781 potential class members are class members;

2. The repayment status of each potential and confirmed class member;

3. Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored;

4. Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued;

5. Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued;

6. Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected;

7. Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court;

8. Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers;

9. Any other information relevant to the Defendants' compliance with the preliminary injunction.

This report and its attachment describe the status of the Department's compliance with the preliminary injunction as of November 1, 2019.  The attachment to this report is a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein.  For each potential class member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction.[1]  Throughout the spreadsheet, "1" is used to answer "Yes," and "0" is used to answer "No."

The spreadsheet contains four sections.  The first section (pages 1 through 1933) lists each potential class member and then provides answers for the Court's first, second, and seventh questions.  The second section (pages 1934 through 2190) lists the subset of potential class members who were impacted by the Department's non-compliance.  For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions.  The third section (pages 2191 through 2207) lists the 991 potential class members who made payments as a result of errors made by FedLoan Servicing.  Finally, the fourth section (page 2208) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

---

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction.  *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

As the Court will note, the spreadsheet indicates that there are an estimated 88,809 potential class members, which exceeds the Department's previous estimate of 74,781 potential class members by approximately 14,000. The estimated size of the *potential* class has increased for a few reasons. First, the potential certified class continues to grow as Corinthian borrowers file new, potentially qualifying borrower defense to repayment applications. Second, as part of its efforts to ensure that it has identified all potential class members, the Department is, out of an abundance of caution, examining the records of certain borrowers whose applications most likely do not qualify them for class membership. This set includes Corinthian borrower defense applicants who are tagged in the Department's systems as either (1) having no Direct Loans after May 2010, (2) having filed an incomplete borrower-defense application, or (3) for whom 100% discharges, as a result of another federal loan discharge process, are in process for some of the borrowers' federal student loans, but are not yet complete. Although the Department's Office of Federal Student Aid ("FSA") is confirming its data, which indicates that these three groups of borrowers are likely excludable from the potential class, FSA has no knowledge that any of these additional, estimated 14,000 borrowers were impacted by the Department's non-compliance. *See* ECF No. 133-1.

Below, the Report provides the information required by the Court's order, incorporating by reference the information in the spreadsheet attachment (filed separately under seal) where necessary.

**1.    Defendants' progress toward identifying which of the 74,781 potential class members are class members**

The Department is actively reviewing the potential class, but has no further progress to report.

**2.      The repayment status of each potential and confirmed class member**

The first section of the spreadsheet attachment provides the repayment status of each potential class member. For each potential class member not in forbearance or stopped-collection status, the spreadsheet indicates the reason why, such as being in an alternative status that is similar to forbearance (*e.g.*, a $0/month income-driven repayment plan or in-school deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet are defined on page 2208 of that spreadsheet.

**3.      Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored**

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1934) indicates whether he or she was in an erroneous payment status and whether that status has been remediated. Borrowers that appear in the first section of the spreadsheet, but not the second section, are not included in the second section because the Department has no knowledge that they were erroneously taken out of forbearance or stopped collections status.

As indicated in the spreadsheet attachment, and also noted in the Department's brief of October 15, 2019, the Department has corrected the reported repayment status of all 16,034 borrowers who received incorrect notices that payments were due.

**4.      Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1934) indicates whether he or she made a payment or payments and whether refunds have been issued. Borrowers that appear in

the first section of the spreadsheet, but not the second section, are not included in the second section because the Department has no knowledge that they made any such payments.

As indicated in the spreadsheet attachment, as of October 24, 2019, the U.S. Department of the Treasury ("Treasury") had processed refunds (so that all payments were disbursed as of October 25, 2019), by either sending a check or processing an electronic funds transfer, to 2,841 of the 3,289 Corinthian borrowers who were initially identified as having made an erroneous payment on their loans.

The Department did not request that Treasury process refunds to the remaining 448 borrowers. Although FSA initially directed the servicers to refund payments to all 3,289 borrowers, it has now learned, through this process, that 178 of these borrowers do not appear to have actually made a payment. FSA has also determined that the rest of these borrowers (270) may have made unrequired, or voluntary, payments for reasons unrelated to the incorrect payment due notices they were sent. These borrowers fall into three categories: (a) 76 borrowers who chose to opt-out of forbearance; (b) 102 borrowers who paid in full their remaining loan balances; and (c) 92 borrowers who made unrequired payments to rehabilitate a defaulted loan or to make a defaulted loan eligible for consolidation, which has the effect of bringing that loan out of default.

FSA believes that proactively refunding payments to the 270 borrowers listed in groups (a)-(c) above may lead to unintended consequences and potential financial harm. For example, refunding those payments would restore a debt the borrower apparently intended to fully repay, return a loan to a defaulted status, or reverse the rehabilitation or consolidation of a defaulted loan. FSA will notify these 270 borrowers that they are eligible for a refund and explain why we did not automatically process refunds for them in the first place (*e.g*., because the borrower's

credit file would no longer reflect that their loans are paid in full or the rehabilitation of their defaulted loans would be delayed).  FSA will process a refund for any of these borrowers who request it.  FSA is continuing to review the information we have regarding borrowers identified in our September 18, 2019 Compliance Report to ensure that our determinations regarding their eligibility for a refund are correct.

As the Department explained in its brief in response to October 8, 2019 Order, ECF 125 ("Sanctions Brief"), the 3,289 borrowers identified in the Department's September 18, 2019 Compliance Report did not include the 991 borrowers who made payments as a result of specific errors made by one servicer, FedLoan Servicing.  *See* Sanctions Brief 4, n.3.  As indicated in the third section of the spreadsheet attachment (starting on page 2191), the Department has confirmed that all appropriate refunds for these borrowers have been processed by Treasury.

Since the filing of the Sanctions Brief, the Department has determined that 8 of the 991 borrowers serviced by FedLoan Servicing did not take out Federal student loans to attend Corinthian schools, and thus are not members of the class.  Further, the Department has determined that 7 of the 3,289 originally identified in the September 18, 2019 Compliance Report were part of the 991 borrowers serviced by FedLoan Servicing.  As a result, the total updated number of borrowers who have made unrequired payments is 4,265 (3,289 + (991 FedLoan Servicing – 8 non-CCI borrowers – 7 borrowers already covered within the 3,289 group)).

Regardless, the Department has confirmed that all refunds for 991 borrowers (including the 8 non-CCI borrowers) serviced by FedLoan Servicing have been issued by Treasury, as indicated in the third section of the spreadsheet attachment.[2]

**5.   Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1934) indicates whether he or she was erroneously subject to involuntary collection and whether refunds have been issued. Borrowers that appear in the first section of the spreadsheet, but not the second section, are not included in the second section because the Department has no knowledge that they were erroneously subject to involuntary collection.

As indicated in the spreadsheet attachment, as of October 24, 2019, refunds have been issued to 1,799 of those 1,808 Corinthian borrowers who the Department initially identified as being subject to involuntary collection efforts. As of that date, for each of the 1,799 borrowers, Treasury had either issued a check (with payment dates listed as October 25, 2019) or processed an electronic funds transfer. The Department has requested, and Treasury has agreed to exempt these payments from centralized administrative offset under 31 U.S.C. § 3716. For the remaining nine borrowers, the Department has found, via ongoing data verification reviews, that these nine borrowers were not subject to erroneous wage garnishment or tax offset after May 25, 2018, and thus are not entitled to a refund.

---

[2] As to the 8 borrowers that are not CCI borrowers and thus are not part of the class in this case, the Department has included their information in the third section of the spreadsheet attachment for the Court's awareness, as persons originally identified for the September 18, 2019 Compliance Report. However, these 8 borrowers are not included in the full listing of 88,908 potential and confirmed class members in the spreadsheet's first section.

6.  **Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1934) indicates whether he or she was subject to adverse credit reporting and whether each false credit report has been corrected. Borrowers that appear in the first section of the spreadsheet, but not the second section, are not included in the second section because the Department has no knowledge that they were subject to adverse credit reporting due to the Department's noncompliance.

As indicated in the spreadsheet attachment, as of October 24, 2019, the Department's loan servicers had corrected the credit reports of all 847 identified non-defaulted class members who were subject to adverse credit reporting as a result of becoming delinquent on their payments.

7.  **Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court**

As indicated in the first section of the spreadsheet, no members of the potential class have yet to receive a revised, Court-approved notice of Defendants' noncompliance. The Court has ordered the Department to "meet and confer with Plaintiffs and submit a proposed notice to the Court for approval no later than November 15, 2019." Sanctions Order 7. The Department is currently working on a revised notice, and it plans on meeting and conferring with Plaintiffs regarding that notice shortly.

8.  **Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the studentaid.gov website to include prominently placed links to information on the *Manriquez* case on the website's front

9

page in its "Announcement" and "Popular Topic" sections.[3]  Additionally, highlighted and simplified language has been included on linked webpage[4] within the website.  These improvements were made on October 21, 2019.  The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing Borrower Defense telephone hotline service, at (855) 279-6207, to include a targeted greeting and a dedicated menu option regarding the *Manriquez* case to connect callers with prepared customer service representatives able to provide information and address general questions regarding this litigation.  The hotline improvement became operational on October 23, 2019.

**9.     Any other information relevant to the Defendants' compliance with the preliminary injunction**

*Oversight and compliance tracking*

The Department initiated an internal audit, also known as a quality assurance review ("QAR") of the borrower defense process that will focus on FSA's application of the forbearance and stopped collections policies in place as a result of the preliminary injunction.  The QAR is reviewing current processes and procedures and will make recommendations for longer-term solutions for ensuring compliance with the preliminary injunction and any additional borrower defense-related repayment status policies with requisite controls and reporting.  The Department staff performing the QAR is also conducting an independent quality assurance check on FSA's work to confirm that all class members are in the correct repayment status.

In addition to any forthcoming QAR process and procedure recommendations, the Department will process a change request to the servicers and impacted systems (*e.g.*, servicer

---

[3] https://studentaid.ed.gov/sa/
[4] https://studentaid.ed.gov/sa/about/announcements/corinthian#preliminary-injunction

systems, NSLDS) in order to create new suspension codes (*e.g.*, forbearance and stopped collection activity codes) that can be used exclusively for borrower defense and will accommodate an indefinite suspension period for forbearances, and suppress the sending of forbearance end notices and payment notices unless the borrower voluntarily requests a payment notice.  By adding new suspension codes, the Department will be able to remediate through a technology solution the issues in the Department's ability to track and quickly implement solutions to problems.  It will also allow for the Department to further automate the compliance monitoring processes to reduce the amount of labor and time to review the exceptions and establish a further foundation for future integrated systems enhancements.   The Department expects its eventual implementation of a single loan servicing platform, the Next Generation Processing and Servicing Environment ("NextGen"), will improve the Department's ability to quickly update borrowers' loan repayment statuses and validate account accuracy.

      The Department recognizes the severity of impact to affected borrowers and takes its compliance with the Court's order seriously.  The Department will continue the described verification, validation, and monthly reporting to ensure ongoing compliance with the terms of the Court's order and strive to reestablish the trust and confidence of our borrowers.