JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tomerrill@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN CALVILLO MANRIQUEZ,
JASON SPENCER, RTHWAN DOBASHI,
and JENNIFER CRAIG on behalf of
themselves and all others similarly situated,

   *Plaintiffs*,

  v.

ELISABETH DEVOS, in her official
capacity as Secretary of the United States
Department of Education,

And

THE UNITED STATES DEPARTMENT OF
EDUCATION,

   *Defendants*.

Case Number: C 17-cv-07210-SK

**MOTION FOR LEAVE TO FILE
MOTION FOR PARTIAL
RECONSIDERATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiffs, by and through undersigned counsel, hereby move for leave to file the attached proposed motion for partial reconsideration of the Court's October 24, 2019 Order Regarding Sanctions, ECF No. 130 ("Sanctions Order"). This motion is made pursuant to Civil Local Rule 7-9. In support of this Motion, Plaintiffs rely on the following Memorandum of Points and Authorities, the attached declarations of Lindsey Withem (Withem Decl.), Toby Merrill (Merrill Decl.), Naquasha Johnson (Johnson Decl), Melissa Young (Young Decl.), and Julia Decker (Decker Decl.), the Proposed Motion for Partial Reconsideration, and other pleadings and filings in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Plaintiffs respectfully request leave, pursuant to Civil Local Rule 7-9, to file the attached proposed motion for partial reconsideration of the Court's Sanctions Order. Plaintiffs intend to argue that the emergence of three new material facts warrant a significant increase to the compensatory sanctions fund of $100,000.

*First*, the Court's Sanctions Order was entered on the basis of the record before it at the time, which was grossly inaccurate. The record at the time showed, based on Defendants' representations in the Initial Compliance Report, that they had violated the injunction 16,000 times by seeking to collect the loans of individuals covered by the injunction. *See* ECF No. 124 at 4:2-5. In fact, this representation was off by almost 300 percent, ECF No. 156 (December Compliance Report).  Likewise, the number of people suffering compensable harm in the form of deprivation of money (through "voluntary" payments in response to an unlawful demand for collection, or because Defendants seized their tax refunds and/or wages) or adverse credit reporting was grossly understated. *Compare* Initial Compliance Report (showing 3298 individuals made voluntary payments, 1808 subjected to involuntary collection, and 847 the subject of adverse credit reporting by Defendants) *with* December Compliance Report (restating numbers as 14,611 (involuntary collection), 2358 (involuntary collection), and 5901 (credit reporting).

*Second*, information provided by Defendants to the undersigned counsel on December 13, 2019, shows that Defendants have *never* been in compliance with the injunction. The first instances of involuntary collection occurred in May 2018.  The Department acknowledges collecting on individuals covered by the injunction as recently as December 6, 2019.  At least 20 people were subjected to collection in violation of the injunction *this month*. All this time, Defendants have collected more than $21 million from individuals who were supposed to be

protected by a lawful Court order.[1] There has never before been a dollar amount attached to their noncompliance. But more disturbingly, the new information shows that the defendants

*Finally*, Plaintiffs are now able to present to the Court information about the nature and extent of the injury that has been caused to members of the class by the Defendants' contumacious conduct, in the form of survey response data, statements, and sworn declarations. This information demonstrates the need for compensation above and beyond the return of money unlawfully taken—the bare minimum that Defendants have yet to deliver to all affected individuals—and substantially in excess of $100,000.

## BACKGROUND

Plaintiffs brought suit on behalf of themselves and all others who attended specified programs at a school operated by Corinthian Colleges, borrowed federal student loans to pay for that attendance, and have since applied to have their loans cancelled pursuant to borrower defense.[2] Whereas such applications were granted in full under the prior administration, beginning on January 20, 2017, the Department abandoned that framework and adopted a methodology that would require Students to repay, on the whole, more than seventy percent of their Corinthian-related loans.

On May 25, 2018, the Court partially granted Plaintiffs' motion for a preliminary injunction of the Department's new Corinthian borrower defense methodology.  ECF No. 60. The Court ordered the Department to "cease all efforts to collect debts from Plaintiffs and any other borrower who successfully completed an attestation form." ECF No. 70. Defendants were directed to halt any action to collect a loan from the Plaintiffs and other students who attended Corinthian programs at specified times, as identified on published lists. ECF No. 70. The Defendants appealed the preliminary injunction ruling, and the Ninth Circuit Court of Appeals has yet to render an opinion on the appeal, which was fully submitted on March 5, 2019.

---

[1] This is the first time Defendants have provided information about the amount of money it has unlawfully seized. For reasons explained in the Merrill Declaration, ¶¶ 5(e), this figure is an underestimation. Defendants reported refunding over $21 million, but acknowledge that some refunds have yet to occur, and will, in some instances, never occur.
[2] The Court entered a class certification order on October 15, 2018. ECF No. 96.

MOTION FOR LEAVE TO FILE MOTION                    Case No. 17-cv-07210-SK
FOR PARTIAL RECONSIDERATION

On July 15, 2019, Plaintiffs notified the Court that Defendants were in substantial noncompliance with the preliminary injunction. ECF No. 103. The Court ordered Defendants to file a report regarding the status of their compliance with the preliminary injunction, which they filed on September 18, 2019. ECF No. 111 (Initial Compliance Report). The Initial Compliance Report revealed that the Department had erroneously sent 16,034 demands for payment to Students. ECF No. 111 at 17. As a result, 3,298 Students made one or more payments. *Id.* The Department provided adverse reports to credit reporting agencies regarding 847 Students, and had subjected 1,808 Students to involuntary collection in the form of wage garnishment or tax refund offset. *Id.* At the time of the Initial Compliance Report, the Department had not fully identified the borrowers affected by the incorrect notices, had not sent them a notice describing the error, and had not yet issued refunds. *Id.*

On October 24, 2019, after considering briefing and arguments from both parties, the Court entered an Order finding Defendants in civil contempt and requiring them to pay compensatory sanctions in the amount of $100,000. ECF No. 130.  The Order details the limited steps Defendants took to ensure the injunction against collection was obeyed, and the absence of "the normal actions one would expect from an entity facing a binding court order," ECF No. 130 at 4.[3] After reviewing the guiding legal principles concerning civil contempt, the Court found:

> [T]here is no question that Defendants' violations harmed individual borrowers who were forced to repay loans either through voluntary actions or involuntary methods (offset from tax refunds and wage garnishment) and who suffered from the adverse credit reporting. Defendants have not provided evidence that they were unable to comply with the preliminary injunction, and the evidence shows only minimal efforts to comply with the preliminary injunction.

ECF 130 at 6. Finally, the Court did "not foreclose the possibility that, if Defendants fail to comply with the preliminary injunction in a timely manner, the Court will impose additional sanctions[.]" ECF No. 130 at 8.

---

[3] During a hearing on the issue, the Court characterized the Defendants' conduct as "at best…gross negligence…almost gross negligence of the magnitude of 'we don't care about the order, we're going to do the minimal amount of effort we need, take the minimal amount of steps we need to take in order to comply with the order.'" ECF No. 124 at 6:15-21. "At worst," Defendants' conduct was "intentional flouting of [the Court's] order." *Id.* at 15:15-16.

On November 1, 2019, Defendants filed a monthly compliance report (November Compliance Report), ECF No. 136.  Concurrent with this filing, Defendants moved for leave to file a motion for partial reconsideration of the Court's Sanction Order. ECF No. 133.  Defendants asserted that because they "ha[ve] already remedied the harm suffered by class members," the Court should reconsider its imposition of a compensatory sanction. ECF No. 133 at 7.  The claim of total remediation was based on "the most accurate, up-to-date information as possible," ECF No. 133 at 7 (citing Declaration of General Mark A. Brown, Chief Operating Officer of Federal Student Aid at ¶¶ 13-14).

Just four days later, on November 5, 2019, Defendants withdrew their motion for partial reconsideration. ECF No. 140. The Department acknowledged that the November Compliance Report identified 14,000 additional potential class members, ECF No. 136 at 4, and that the Defendants "cannot fairly represent that they are in 'full compliance' with the Court's preliminary injunction and have remediated the harm to all affected borrowers." ECF No. 140 at 2 (quoting ECF No. 133 at 2).

Defendants next filed a compliance report on December 3, 2019. ECF No. 156 (December Compliance Report).[4] It showed that the Department demanded payment from 45,034 Students, as opposed to the 16,034 it initially reported to the Court (in the Initial Compliance Report)—the basis for the Court's Sanction Order. The Department collected voluntary payments from 14,804 Students, as opposed to 3298; the Department subjected 2369 Students to involuntary collection, as opposed to 1808; and the Department made adverse credit reports against 5981, as opposed to 847, Students.  The Department had yet to return all money taken in violation of the injunction.

On December 13, 2019, the counsel for Defendants provided to undersigned counsel additional information about the collections against Students since the injunction was issued. *See*

---

[4] Defendants filed a Notice of Errata with respect to the December Compliance Report on December 20, 2019. ECF No. 161.

Declaration of Toby Merrill ("Merrill Declaration").[5] The information demonstrated, among other things, that the Department has refunded over $21 million to Students in connection with its violation of the injunction. Merrill Decl. ¶ 9. The single largest refund to an individual who made voluntary payments is $53,801. *Id.* The single largest refund to an individual who experienced involuntary collection is $25,881.25. *Id.* The unlawful collection began in May 2018, and continued until at least December 6, 2019. *Id.* The Department subjected at least 22 individuals to involuntary collection in violation of the injunction in December 2019. *Id.*

On December 20, 2019, the parties submitted a joint plan for the administration of the sanctions fund. ECF No. 163. Both parties reserved their rights to contest or challenge the Sanctions Order. *Id.* at 2. The plan calls for ten percent of the available sanctions fund to be distributed, on a pro-rata basis, to individuals who had negative credit reporting because the injunction was violated. *Id.* at 5. The plan calls for the remaining ninety percent of the available sanctions fund to be distributed to individuals who experienced involuntary and voluntary collection, with instances of involuntary collection weighted relative to voluntary collection by a factor of three. *Id.* Assuming zero administrative costs, a sanctions fund of $100,000, and based on the numbers most recently reported by Defendants, this plan would award compensation of $1.69 to every individual who experienced negative credit reporting; $12.45 to every individual who experienced involuntary collection; and $4.15 to every individual who made voluntary payments. *Id.* at 6. In order to keep administrative costs at zero, the plan calls for compensation to be applied as a credit against the loan balances of each harmed class member. *Id.*

**ARGUMENT**

Plaintiffs satisfy the requirements for leave to file for partial reconsideration for the reasons set forth below and in the attached proposed motion. Under Civil Local Rule 7-9(a), the Court is authorized to reconsider any interlocutory order prior to entry of final judgment. *See*

---

[5] This information was provided pursuant to an agreement between counsel, as indicated in the Plaintiffs' Unopposed Motion for Second Extension of Time to File a Sanctions Plan, ECF No. 153.

1    *also* Fed. R. Civ. P. 54(b) ("any order or other decision, however designated, that adjudicates

2    fewer than all the claims or the rights and liabilities of fewer than all the parties...may be

3    revisited at any time before the entry of a judgment adjudicating all the claims").

4    Plaintiffs have been "reasonably diligent" in bringing this motion, Civ. L.R. 7-9(b),

5    which is based on the "emergence of new material facts...occurring after the time of such order,"

6    Civ. L.R. 7-9(b)(2).  Specifically, Plaintiffs point to three new material facts, all of which

7    emerged in December, some as recently as the past week.

8    ***First***, the December Compliance Report, filed on December 2, 2019, reveals a significant

9    increase in the number of Students who have been impacted by the Defendants' noncompliance

10   with the Court's injunction.[6] The Court's Sanction Order was founded on the finding that the

11   Defendants had "violat[ed] my order 16,000 times." ECF. No. 124 at 4:2-3. In fact, Defendants

12   demanded payment in violation of the injunction from over 45,000 individuals. The new figures

13   show substantial upward adjustments to the three categories of collection beyond dunning as

14   well. The instances of voluntary collection increased in estimation by nearly 450 percent (to

15   14,611); instances of involuntary collection were one and a half times greater (2358 individuals)

16   than initially reported; and the Department corrected its statement of adverse credit reporting

17   upwards by nearly 700 percent (to 5901 individuals). A commensurate upward increase in the

18   amount of money available to compensate affected individuals is warranted.

19   ***Second***, the Plaintiffs learned of information from counsel for Defendants on December

20   13, 2019 that reveals more about the scope of the Defendants' noncompliance—and thus the

21   need for compensatory sanctions—including the fact that Defendants continued to violate the

22   injunction *this very month*. This speaks to the ongoing and urgent need for a contempt sanction

23

24   [6] The Defendants refer to "potential class members" throughout their Compliance Reports, *see,
     e.g.,* December Compliance Report, ECF 156-2 at 6-7 (discussing efforts to verify membership
25   in class of individuals subjected to collection). If this is an attempt to downplay the scope of their
     noncompliance, it is unsuccessful. It accentuates the Department's "collect first, ask questions
26   later" approach to compliance. Every individual identified by the Department as a "potential
     class member" attended Corinthian and filed a borrower defense application. They all should be
27   afforded the benefit of the injunction if, at the time of collection, the Department was unable to
     say with conviction that they are *not* members of the class.
28

to coerce Defendants to meet their obligation with more urgency and diligence. *See United States v. United Mine Workers*, 330 U.S. 258, 303–04, (1947) (sanctions for civil contempt appropriately directed to coerce obedience to a court order or to compensate for injuries resulting from contemptuous behavior, or both).  The Court contemplated that a revision of sanctions would be warranted in the face of continued noncompliance, ECF No. 130 at 8.  And in spite of the shocking information that the scope of Defendant's noncompliance was grossly understated, and that they continue to violate the injunction, Defendants do not exhibit contrition. Rather, they continue to downplay and shift blame for the seriousness of their mistakes.[7] *See* December Compliance Report (attributing significant increase in number of affected individuals to "isolated issues, based largely on a miscommunication with servicers and [other] limited issues"). Secretary DeVos has publicly characterized this Court's Sanctions Order—rather than the Department's own behavior—as "not appropriate."[8] She had also previously characterized the noncompliance as "an error on a small # of loans."[9] Secretary DeVos has publicly characterized this Court's Sanctions Order—rather than the Department's own behavior—as "not appropriate."[10]  Defendants' ongoing noncompliance is unfortunate, disturbing, and harmful. It warrants a reconsideration of the appropriate sanction.

   ***Third***, as a result of outreach activities to members of the class, Plaintiffs are in a position to provide the Court additional information about the nature and severity of the harm that needs compensating, in the form of survey responses, *see* Withem Decl. Exs. C, D, statements, *see* Withem Decl. ¶ 8, and sworn declarations, *see* Decker Decl.; Johnson Decl.; Young Decl.

---

[7] In this context, it is truly confounding that in their Answer, ECF No. 152 (Ans.), filed November 26, 2019, Defendants claim to "lack knowledge or information sufficient to form a belief" as to the allegation that the Department has taken action to collect loans from members of the class, including by seizing their tax refunds and wages, *see* Ans. ¶ 197; *see also* Fed. R. Civ. Proc. 8 (such statement has same effect of a denial).

[8] Video of Test. of Sec'y DeVos before House Comm. on Educ. And Labor, 1:25:45  (Dec. 12, 2019) https://www.c-span.org/video/?467233-1/house-hearing-student-loan-debt-forgiveness.

[9] *See* Secretary Elizabeth DeVos (@BetsyDeVosED), Twitter (Oct. 10, 2019).

[10] Video of Test. of Sec'y DeVos before House Comm. on Educ. And Labor, 1:25:45  (Dec. 12, 2019) https://www.c-span.org/video/?467233-1/house-hearing-student-loan-debt-forgiveness.

At the outset, Plaintiffs dispute Defendants' position, articulated in their motion for partial reconsideration of the Contempt Order, ECF No. 133, that the Court's initial fine of $100,000 was unfounded or an abuse of discretion.[11] At the time of the Sanctions Order, only the Defendants had access to the information about the identity and contact information of individuals affected by their contemptuous behavior. *See* ECF No. 118 (Oct. 8, 2019) (ordering Defendants to provide undersigned counsel with contact and other information for impacted individuals by November 1, 2019). Under these circumstances, the absence of record information about the nature and extent of compensable injury should "not be charged against either the [opposing party] or result in a holding that the district court abused its discretion in imposing the sanction." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992) (quoting *In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir. 1987)).

In any event, Plaintiffs wish to present the Court with evidence demonstrating that the injury actually incurred as a result of Defendants' noncompliance far exceeds $100,000, as detailed in their proposed Motion. The unexpected loss of their money caused Students financial injury beyond the sums that were taken.  More than half (55.74%) of those who made voluntary payments in response to illegal collection demands, Withem Decl. Ex. C at 35, and more than three out of four (77.68%) of those who were subjected to involuntary collection, Ex. D at 27, had to borrow money to replace the missing funds.  They missed payments (54.06 % of those who made voluntary payments, Ex. C at 68, and 81.78% of those whose tax refunds or wages were seized, Ex. D at 57), causing them to incur late fees, see Ex. C at 86, Ex. D at 66, and cancellation of services, see Ex. C at 78, Ex. D at 73. The kinds of fees incurred because of unexpected shortage of funds include balance transfer fees, Ex. C at 87, bank overdraft fees, Ex.

---

[11] Defendants stated intention is to renew their motion if and when they achieve full compliance with the Court's order. ECF No. 140. That time has not yet arrived. Moreover, as Plaintiffs seek to demonstrate in their proposed motion, the suggestion that simply returning all money unlawfully taken will itself "remediat[e] the harm to affected borrowers," ECF No. 133 at 2, is wrong. *See also* December Compliance Report, ECF No. 156-2 at 4 (stating that by returning money, "the Department has already remedied the harm incurred by the vast majority of newly identified impacted borrowers"). Returning money is an element of compliance with the preliminary injunction. But it does not fully compensate individuals who, "there is no question," suffered actual damages as a result of the unlawful taking. Sanctions Order, ECF No. 130 at 6.

C at 88, vehicle towing fees, Ex. C at 97, and court fines related to eviction proceedings, Ex. D at 84.  Others put living expenses on credit cards with high interest rates. *See, e.g.,* Ex. C at 27 ("I have had to use credit cards more often than I would like to cover the times that I needed to pay the student loan payments instead. I have accrued a lot of unnecessary credit card debt and interest due to this."). A significant number of Students (22% of those making voluntary payments, Ex. C at 95, and 57.07% of those who made involuntary payments, Ex. D at 80), missed a rent or mortgage payment. Plaintiffs wish to further present sworn declarations, as attached, to illustrate the need for greater compensatory sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them leave to file the attached proposed motion for partial reconsideration of the Sanctions Order.

Dated: December 23, 2019                    Respectfully submitted,


                                        /s Eileen M. Connor

                                        Joseph Jaramillo
                                        Natalie Lyons
                                        HOUSING & ECONOMIC RIGHTS
                                        ADVOCATES
                                        1814 Franklin Street, Suite 1040
                                        Oakland, CA 94604
                                        Tel.: (510) 271-8443
                                        Fax: (510) 280-2448

                                        Eileen M. Connor
                                        Toby R. Merrill
                                        LEGAL SERVICES CENTER OF
                                        HARVARD LAW SCHOOL
                                        122 Boylston Street
                                        Jamaica Plain, MA 02130
                                        Tel.: (617) 390-3003
                                        Fax: (617) 522-0715

                                        *Attorneys for Plaintiffs*