# U.S. Department of Education

# Office of Federal Student Aid

# Third Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. DeVos*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California

**January 8, 2020**

## Introduction and Summary

Pursuant to the Court's Order of October 24, 2019, ECF No. 130, the U.S. Department of Education (the "Department") through its Federal Student Aid office ("FSA") submits its third monthly status report regarding its attempts to comply with the preliminary injunction in this case, *see* ECF No. 60. That injunction, as amended on June 19, 2018, ECF No. 70, and clarified on August 30, 2018, ECF No. 89, prevents the Department from collecting relevant student loan debts from members of the class that has been certified in this case.[1] *See also* Order Granting Mot. for Class Cert., ECF No. 96.

On December 16, 2019, the Department completed the remediation of all known impacts to potential class members that had been identified in prior reports to this Court. Further, the Department is maintaining compliance with the preliminary injunction by immediately placing newly identified potential class members in the appropriate repayment status to stop debt collection and maintaining potential class members in appropriate repayment status on an ongoing basis (e.g., forbearance). The Department's December compliance report noted that fewer than 100 impacted potential class members had not yet been remediated for various reasons, such as a lack of a current address in the Department's systems. ECF 156-2 at 10-11. All of those impacted borrowers have been remediated as of December 16, 2019.

Plaintiffs' motion for leave to file a motion for reconsideration, filed on December 23, 2019, stated that Department had yet to return all of the money taken from impacted borrowers, and that the Department continued to collect money from class members into the month of December. *See, e.g.*, ECF 164 at 3-4. In fact, the Department had completed remediation with

---

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction. *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

respect to the borrowers it had identified in its compliance reports a week prior to that filing, and the collections cited by Plaintiffs were wage garnishment actions taken by employers *despite* receiving instructions from the Department to cease such collection activities.[2] The Department was already aware of this issue and had initiated refunds to those borrowers prior to the Plaintiffs' filing. As discussed further below, the Department has taken all reasonable measures within its power to address those situations, including reiterating its instructions to those employers and continuing to refund any money garnished by them, and will continue to do so; however, the erroneous actions taken by those employers do not change the fact that the Department has ceased its own debt collection activities in compliance with the preliminary injunction.

Following the completion of this remediation work last month, the Department has devoted additional resources to identifying which borrowers on the potential class member and impacted borrower lists do not actually belong on those lists. For example, as the Department noted previously, the Department is still in the process of validating data related to when borrowers submitted their applications in order to remove borrowers from the impacted list who experienced all of their identified impacts before they filed their borrower defense application and were put into forbearance on that basis. *See, e.g.*, ECF 163 at 1-2. The current list of potential class members may be overinclusive, and as discussed below, the Department continues its work to confirm which potential class members do not actually meet the requirements for class membership and will remove those borrowers on an ongoing basis.

---

[2] During the normal course of collection activities wage garnishment can continue in some cases after the Department has already transmitted its stop collection instruction due to reasons outside of the Department's control, such as because the employer's procedure for actually stopping collections in response to the instruction takes long enough that one or more additional garnishments occur after the instruction is transmitted.

In addition, beginning on December 11, 2019, the Department resumed sending borrower defense decision letters to certain borrowers, including (and consistent with the Court's preliminary injunction orders) borrowers previously identified as potential *Manriquez* class members in the Department's previous compliance reports.  This population of potential class members included three categories of relevant borrower defense applicants:  (a) approximately 6,000 Corinthian borrowers who had submitted borrower defense claims on the basis of the Department's findings that certain Corinthian schools had made job placement rate misrepresentations for certain programs during specific time periods ("JPR claims"), but who did not meet the criteria for approval of their borrower defense claims (e.g., they did not attend a specified program or they did not attend during a time period covered by the Department's findings) and were determined to be ineligible for loan relief on that basis;[3] (b) over 250 borrowers whose JPR claims were approved and who received one hundred percent relief based on the new methodology[4] for assessing applications announced by the Secretary of Education on December 10, 2019;[5] and (c) over 500 Corinthian borrowers included in the potential class members list who were granted partial relief for their non-JPR claims.[6]

---

[3] The court's June 19, 2018 amended preliminary injunction order, ECF No. 70, provides that the Department may determine whether a JPR claimant "is eligible for relief; i.e., whether the claimant actually borrowed a Direct Loan to finance the cost of enrollment in a program on the Lists and during the dates of enrollment covered by the attestation forms (Dkt. 35-6, Exs. 6, 7, 8, 9) and whether the claimant successfully completed the attestation forms." ECF No. 70 at ¶ C.

[4] *See* U.S. Dept. of Educ., "Secretary DeVos Approves New Methodology for Providing Student Loan Relief to Borrower Defense Applicants" (Dec. 10, 2019) ("December 10, 2019 press release"), *available at* https://www.ed.gov/news/press-releases/secretary-devos-approves-new-methodology-providing-student-loan-relief-borrower-defense-applicants.

[5] The June 19, 2018 amended order also states that "[n]othing in this Order prohibits the Secretary from fully discharging the loans of any borrower who successfully completed or who successfully completes an attestation form."  ECF No. 70 at 2.

[6] Adjudication letters were also sent to borrower defense applicants that have not asserted CCI-based borrower defense claims.

For the borrower defense decisions issued in December 2019, although some borrowers' claims were deemed ineligible for borrower defense relief, the Secretary, using her discretion under the Higher Education Act of 1965, has decided to waive all interest that accrued on those borrower defense applicants' federally-held loans for the entirety of the time that their now decided borrower defense applications were in a pending status.[7] In order to ensure that the former *Manriquez* class members who received decisions in December 2019 are kept in forbearance while federal loan servicers finish processing their adjudicated claims (e.g., by waiving interest for ineligible claims and/or discharging loan balances), the Department is continuing to monitor them.  In particular, these borrowers will be tracked on the attached spreadsheet until their borrower defense claims are fully closed out and the changes to their federal loans are processed.

As part of the Department's ongoing verification and validation efforts, the Department has identified several additional potential class members. These include borrowers whose pending applications were originally deemed not complete (three applicants) or did not correctly identify the borrower as having submitted a claim about a Corinthian College school on their application (two applicants). Additionally, a number of borrowers (19) were approved for partial relief prior to the Court's injunction, but later requested reconsideration of those partial approvals.  As a result of their request for reconsideration, they were assigned a different code from those previously being monitored for the purposes of FSA's work to ensure its compliance with the preliminary injunction in FSA's database, which inadvertently excluded them from the potential class list reported in December 2019. The Department immediately took action to place each of these 24 recently identified potential class members into the appropriate status in

---

[7] *See* December 10, 2019 press release.  This treatment applies to all decisions issued in December 2019, regardless of whether they involved JPR claims, as opposed to borrower defense claims asserted on different bases.

compliance with the preliminary injunction as soon as they were identified, so all of these borrowers are now in forbearance, stopped collections or a similar repayment status. In addition, the Department has taken steps to remediate any debt collection impacts to those borrowers from the period before they were identified as potential class members, and those are accounted for in this report alongside those borrowers impacted by prior noncompliance with the injunction and described in the responses to the questions below.

As in prior reports, this report includes a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein.  For each potential class member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction.  Throughout the spreadsheet, "1" is used to answer "Yes," and "0" is used to answer "No."  The spreadsheet contains three sections.  The first section (consisting of 1,278 pages with the footer "Class_M_Dec") lists each potential class member and then provides answers for the Court's first, second, and seventh questions.  The second section (consisting of the next 512 pages with the footer "Impacted_Dec") lists the subset of potential class members who were impacted by the Department's non-compliance.  For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions.  Finally, the third section (the final page) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

The Department continues to take every reasonable effort to ensure compliance with the Court's injunction, including an ongoing process of monitoring and verifying borrower defense applications.

1. **Defendants' progress toward identifying which of the 74,781 potential class members are class members**

   As discussed above, Defendants have made progress toward identifying which of the potential class members are actual class members by identifying approximately 6,000 potential class members whose borrower defense applications did not meet the criteria for loan relief. However, because the Department is continuing to monitor these borrowers as part of the *Manriquez* class to ensure that they are kept in forbearance while federal loan servicers process their adjudicated claims, column D in the first section of the spreadsheet continues to reflect these now-former class members.

   In addition, the potential class has increased slightly to 79,099 borrowers, a net growth of 362 borrowers. Contributing factors for the growth included new borrower defense claims received by FSA, newly opened cases that were previously incomplete (e.g., claims initiated by borrowers, but not fully documented with supporting information or evidence) and FSA's ongoing data validation and verification efforts. As expected, the number of potential class members will continue to be dynamic as new borrowers apply, validation and verification continues, and notification of claims adjudications are processed and released.

2. **The repayment status of each potential and confirmed class member**

   As stated in prior reports, the Department continues to maintain all identified potential class members in forbearance, stopped collections or a similar repayment status, unless a particular borrower has proactively opted out of that status.

   The first section of the spreadsheet attachment provides the repayment status of each potential class member. For each potential class member not in forbearance or stopped collection status, the spreadsheet indicates the reason why, such as being in an alternative status that is similar to forbearance (e.g., a $0/month income-driven repayment plan or in-school

7

deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet are defined in the third section of that spreadsheet.

**3.   Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored**

All 45,825 borrowers whom FSA has identified at some point as having been erroneously out of forbearance or stopped collections status are currently in the correct repayment status. This total number of impacted borrowers represents an increase of 24 borrowers (three borrowers whose applications were originally deemed incomplete, two borrowers who did not list a CCI school on their applications, and 19 partial relief recipients subject to the reconsideration coding issue) since the December Report.  As explained above, these individuals were discovered in the course of our ongoing data verification efforts and FSA immediately took steps to place them into the appropriate status as soon as FSA identified them as potential class members.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was in an erroneous payment status and whether the status has been corrected.

**4.   Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

FSA has issued refunds to all identified borrowers who made one or more voluntary payments and who would not potentially be harmed by a refund.  FSA has identified 14,816 borrowers who made one or more voluntary payments, an increase of 12 borrowers since the December Report.  These 12 borrowers are from the 24 borrowers described above that were not originally counted because their applications were either originally deemed incomplete, did not list a CCI school on their applications, and who whose applications were subject to the reconsideration coding issue. FSA has issued refunds for these borrowers.

As discussed in the November and December Reports, the Department did not request that the U.S. Department of the Treasury process refunds for some of the potential class members identified at that time as having made voluntary payments, because these borrowers appear to have made payments for reasons unrelated to the incorrect payment due notices they were sent, and so refunding these borrowers would lead to unintended consequences and potential financial harm.  (*See* Nov. Report at 6-7 and Dec. Report at 10.)

Additionally, FSA has identified 820 borrowers who were issued refunds for payments they made prior to the December Report, but who are still voluntarily making payments on their student loans. In light of these borrowers' decision to continue making payments, FSA has recategorized those borrowers on the spreadsheet from "Payment has been refunded" to "Borrower has submitted additional payments."

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower made one or more payments and refunds have been issued.

**5.     Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

FSA has issued refunds for all involuntary payments made by the 2,369 borrowers it has identified as having been subjected to wage garnishment or tax offsets.  This number remains the same as reported in the December Report.

Through FSA's ongoing verification and validation efforts, in early December the Department identified 51 borrowers whose employers had, to that point, ignored the stop collection order from the Department and continued to garnish the borrowers' wages. FSA has

9

verified these borrowers were in the proper repayment status at the time the involuntary payments were received and FSA has issued refunds for all of those payments.

Since the employer is the one that actually garnishes wages, and the Department does not have the direct power to prevent employers from continuing to garnish wages following a stopped collection order, these actions are beyond the Department's control. However, FSA has taken additional steps to continue to reiterate the Department's stopped collection order to these borrowers' employers and will initiate enhanced contact protocols to continue informing these employers into the future.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was erroneously subject to wage garnishment or tax offset and refunds have been issued.

**6.     Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

FSA has corrected the credit reports for all 5,982 borrowers who FSA has identified as having been subject to adverse credit reporting.  That number has increased by one borrower since the December Report. This borrower was previously miscoded as not having attended a CCI school. FSA has corrected the credit report of this borrower as of December 31, 2019.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was subject to adverse credit reporting and each false credit report has been corrected.

7. **Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court**

FSA completed distribution of the court-approved notice to the members of the class as of December 31, 2019. In order to prevent any borrower confusion, FSA did not send class notifications to those borrowers who received separate notice of claim adjudication on December 11, 2019, and therefore did not have pending borrower defense applications at the time the revised notices were sent.

For each potential class member, the first section of the spreadsheet attachment indicates whether the borrower was sent the revised notice.

8. **Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the StudentAid.gov website to include prominently placed links to information on the *Manriquez* case on the website's home page in its "Announcement" and "Popular Topic" sections.[8] Additionally, highlighted and simplified language has been included on the linked webpage[9] within the website. As previously reported, these improvements were made on October 21, 2019. The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing borrower defense telephone hotline at 1-855-279-6207, to include a targeted greeting, a dedicated menu option regarding the *Manriquez* case, and current targeted information for customer service representatives to answer general questions regarding this litigation, as well as the adjudication and litigation class member notifications disseminated in December.

---

[8] https://studentaid.gov/

[9] https://studentaid.gov/announcements-events/corinthian#preliminary-injunction

**9.      Any other information relevant to the Defendants' compliance with the preliminary injunction**

As mentioned in the December report, FSA's Chief Operating Officer is now requiring monthly certifications from the federal loan servicers at the vice president level or above for all data being sent from the servicers to facilitate the Department's ongoing borrower defense data validation and remediation efforts.

The Department remains not only focused on remediating any harm to any and all borrowers that have been affected, but also on making strategic improvements to our operational program management and loan servicing oversight, control, and communication frameworks. The Department will continue its exhaustive efforts to verify, validate, and report on progress to ensure compliance with the terms of the Court's order and reestablish the trust and confidence of our borrowers and the public.