# Exhibit A

# U.S. Department of Education

# Office of Federal Student Aid

# Fourth Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. DeVos*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California

**February 5, 2020**

## Introduction and Summary

Pursuant to the Court's Order of October 24, 2019, ECF No. 130, the U.S. Department of Education (the "Department") through its Federal Student Aid office ("FSA") submits its fourth monthly status report regarding its attempts to comply with the preliminary injunction in this case, *see* ECF No. 60. That injunction, as amended on June 19, 2018, ECF No. 70, and clarified on August 30, 2018, ECF No. 89, prevents the Department from collecting relevant student loan debts from members of the class that has been certified in this case.[1] *See also* Order Granting Mot. for Class Cert., ECF No. 96.

On December 16, 2019, the Department completed the remediation of all known impacts to potential class members that had been identified in prior reports to this Court. Further the Department is maintaining substantial compliance with the preliminary injunction by immediately placing newly identified potential class members in the appropriate repayment status to stop debt collection and maintaining potential class members in appropriate repayment status on an ongoing basis (e.g., forbearance).

As mentioned in the January Report, the Department has resumed sending borrower defense decision letters to certain borrowers, including (and consistent with the Court's preliminary injunction orders) borrowers previously identified as potential *Manriquez* class members in the Department's previous compliance reports. These decisions letters fall into three different categories: (a) Corinthian borrowers who had submitted borrower defense claims on the basis of the Department's findings that certain Corinthian schools had made job placement rate misrepresentations for certain programs during specific time periods ("JPR claims"), but who did

---

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction. *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

not meet the criteria for approval of their borrower defense claims (e.g., they did not attend a specified program or they did not attend during a time period covered by the Department's findings) and were determined to be ineligible for loan relief on that basis;[2] (b) whose JPR claims were approved and who received one hundred percent relief based on the new methodology[3] for assessing applications announced by the Secretary of Education on December 10, 2019;[4] and (c) Corinthian borrowers included in the potential class members list who were determined eligible based on a non-JPR claim (e.g., transfer of credits).[5]

In order to ensure that the former *Manriquez* class members who recently received decisions are kept in forbearance while federal loan servicers finish processing their adjudicated claims, the Department is continuing to monitor them. In particular, these borrowers will be tracked on the attached spreadsheet as potential class members until their borrower defense claims are fully closed out and the changes to their federal loans are processed.

As in prior reports, this report includes a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein. For each potential class member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction. Throughout the spreadsheet, "1" is used to

---

[2] The court's June 19, 2018 amended preliminary injunction order, ECF No. 70, provides that the Department may determine whether a JPR claimant "is eligible for relief; i.e., whether the claimant actually borrowed a Direct Loan to finance the cost of enrollment in a program on the Lists and during the dates of enrollment covered by the attestation forms (Dkt. 35-6, Exs. 6, 7, 8, 9) and whether the claimant successfully completed the attestation forms." ECF No. 70 at ¶ C.

[3] *See* U.S. Dept. of Educ., "Secretary DeVos Approves New Methodology for Providing Student Loan Relief to Borrower Defense Applicants" (Dec. 10, 2019) ("December 10, 2019 press release"), *available at* https://www.ed.gov/news/press-releases/secretary-devos-approves-new-methodology-providing-student-loan-relief-borrower-defense-applicants.

[4] The June 19, 2018 amended order also states that "[n]othing in this Order prohibits the Secretary from fully discharging the loans of any borrower who successfully completed or who successfully completes an attestation form." ECF No. 70 at 2.

[5] Letters were also sent to borrower defense applicants that have not asserted CCI-based borrower defense claims.

answer "Yes," and "0" is used to answer "No." The spreadsheet contains three sections. The first section (pages 1 through 1322) lists each potential class member and then provides answers for the Court's first, second, and seventh questions. The second section (pages 1323 through 1845) lists the subset of potential class members who were impacted by the Department's non-compliance. For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions. Finally, the third section (page 1846) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

The Department continues to take every reasonable effort to ensure compliance with the Court's injunction, including an ongoing process of monitoring and verifying borrower defense applications.

1. **Defendants' progress toward identifying which of the 74,781 potential class members are class members**

The potential class has increased slightly to 79,262 borrowers, a net growth of 163 borrowers. This net growth includes 182 borrowers who have been added to the class and 19 borrowers who were removed from the class. Contributing factors for the growth included new borrower defense claims received by FSA, newly opened cases that were previously incomplete (e.g., claims initiated by borrowers, but not fully documented with supporting information or evidence), borrowers with only FFEL loans who recently consolidated into Direct Loans and FSA's ongoing data validation and verification efforts. Contributing factors for the decrease include incomplete borrower defense applications, borrowers with no federal loans left to discharge and duplicate applications. As expected, the number of potential class members will continue to be dynamic as new borrowers apply, validation and verification continues, and notification of claims adjudications are processed and released.

Of the 79,262 potential class members listed in the attachment, FSA has confirmed that approximately 30,000 of those borrowers have asserted a JPR claim in their borrower defense application and are confirmed members of the class. Additionally, approximately 15,000 Corinthian JPR claimants were awarded partial relief under the borrower defense relief methodology announced in 2017 and therefore are also confirmed members of the class. FSA continues to review the remaining borrowers to confirm their class status. In FSA's next monthly compliance report FSA will include a column in the spreadsheet attachment that will flag confirmed class members.

**2. The repayment status of each potential and confirmed class member**

As stated in prior reports, the Department continues to maintain all identified potential class members in forbearance, stopped collections or a similar repayment status, unless a particular borrower has proactively opted out of that status.

The first section of the spreadsheet attachment provides the repayment status of each potential class member. For each potential class member not in forbearance or stopped collection status, the spreadsheet indicates the reason why, such as being in an alternative status that is similar to forbearance (e.g., a $0/month income-driven repayment plan or in-school deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet are defined in the third section of that spreadsheet.

**3. Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored**

All 45,073 borrowers whom FSA has identified at some point as having been erroneously out of forbearance or stopped collections status are currently in the correct repayment status.

This total number of impacted borrowers represents a net decrease of 32 borrowers since the January Report.[6]

Contributing factors for the change include the removal of borrowers who were flagged in the January report as no longer being potential class members (46) and FSA ongoing data validation and verification efforts. As part of those efforts, FSA has identified a small handful of newly affected borrowers, including those who recently became potential class members because they consolidated their FFEL loans into Direct Loans (12) and borrowers who were inadvertently classified as not having a pending borrower defense application (2). All of these borrowers are now in the correct repayment status.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1323) indicates whether the borrower was in an erroneous payment status and whether the status has been corrected.

**4.  Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

FSA has issued refunds to all identified borrowers who made one or more voluntary payments and who would not potentially be harmed by a refund. FSA has identified 14,809 borrowers who made one or more voluntary payments, a net decrease of 7 borrowers since the January Report.

Contributing factors for the change include the removal of borrowers who were flagged in the January report as no longer being potential class members (16) and FSA ongoing data validation and verification efforts. As part of those efforts, FSA has identified a small handful of new borrowers who made payments, including those who recently became potential class

---

[6] As detailed in the attachment accompanying the January Report, FSA identified 45,105 borrowers who were erroneously taken out of forbearance or stopped collections status.

members because they consolidated their FFEL loans into Direct Loans (7) and borrowers who were inadvertently classified as not having a pending borrower defense application (2). Refunds have been issued to these newly identified borrowers.

As discussed in prior compliance Reports, the Department did not request that the U.S. Department of the Treasury process refunds for some of the potential class members identified at that time as having made voluntary payments because these borrowers appear to have made payments for reasons unrelated to the incorrect payment due notices they were sent, and so refunding these borrowers would lead to unintended consequences and potential financial harm. (*See* Nov. Report at 6-7 and Dec. Report at 10.)

Additionally, FSA has identified 2,287 borrowers who may have been issued refunds for payments they made prior to the December Report, but who are still voluntarily making payments on their student loans. In light of these borrowers' decision to continue making payments, FSA has categorized those borrowers on the spreadsheet as "Borrower has submitted additional payments."

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1323) indicates whether the borrower made one or more payments and refunds have been issued.

**5.    Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

FSA has issued refunds for all involuntary payments made by the 2,366 borrowers it has identified as having been subjected to wage garnishment or tax offsets, a net decrease of 3 borrowers since the January Report.

Contributing factors for the change include the removal of borrowers who were flagged in the January report as no longer being potential class members (4) and FSA ongoing data validation and verification efforts. As part of those efforts, FSA has identified one (1) borrower who was subject to wage garnishment and recently became a potential class member because they consolidated their FFEL loans into Direct Loans. To be clear, FSA is identifying this borrower out of an abundance of caution even though their last wage garnishment occurred four months prior to becoming a potential class member. A refund has been issued for this borrower.

As mentioned in the January Report, through FSA's ongoing verification and validation efforts, the Department identified 47 additional borrowers whose employers had ignored stop collection orders from the Department and continued to garnish the borrowers' wages. FSA has verified these borrowers were in the proper repayment status at the time the involuntary payments were received and FSA has issued refunds for all of those payments.

Since the employer is actually the one that garnishes wages, the Department does not have the capability to prevent employers from continuing to garnish wages following a stopped collection order. FSA has taken additional steps to continue to reiterate the Department's stopped collection order to these borrowers' employers and have initiated enhanced contact protocols to continue informing these employers into the future (e.g., multiple attempts to contact the employers).

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1323) indicates whether the borrower was erroneously subject to wage garnishment or tax offset and refunds have been issued.

6. **Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

FSA has corrected the credit reports for all 5,968 borrowers who FSA has identified as having been subject to adverse credit reporting.  That number is a net decrease of 14 borrowers since the January Report. Contributing factors for the change include FSA's ongoing data validation and verification efforts and the removal of borrowers who were flagged in the January report as no longer being potential class members (14).

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment (starting on page 1323) indicates whether the borrower was subject to adverse credit reporting and each false credit report has been corrected.

7. **Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court**

FSA completed distribution of the court-approved notice to the members of the class as of December 31, 2019.  In order to prevent any borrower confusion, FSA did not send class notifications to those borrowers who received separate notice of claim adjudication on December 11, 2019, and therefore did not have pending borrower defense applications at the time the revised notices were sent.

For each potential class member, the first section of the spreadsheet attachment (starting on page 1) indicates whether the borrower was sent the revised notice.

8. **Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the StudentAid.gov website to include prominently placed links regarding the *Manriquez* case on the website's home page

(specifically in its "Announcement" and "Popular Topic" sections.)[7]  Additionally, highlighted and simplified language has been included on the linked webpage[8] within the website.  As previously reported, these improvements were made on October 21, 2019. The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing borrower defense telephone hotline at 1-855-279-6207, to include a targeted greeting, a dedicated menu option regarding the *Manriquez* case, and current targeted information for customer service representatives to answer general questions regarding this litigation, as well as the adjudication and litigation class member notifications disseminated in December.

**9.     Any other information relevant to the Defendants' compliance with the preliminary injunction**

As mentioned in the December report, FSA's Chief Operating Officer is now requiring monthly certifications from the federal loan servicers at the vice president level or above for all data being sent from the servicers to facilitate the Department's ongoing borrower defense data validation and remediation efforts.

The Department remains not only focused on remediating any harm to any and all borrowers that have been affected, but also on making strategic improvements to our operational program management and loan servicing oversight, control, and communication frameworks. The Department will continue its exhaustive efforts to verify, validate, and report on progress to ensure compliance with the terms of the Court's order and reestablish the trust and confidence of our borrowers and the public.

---

[7] https://studentaid.gov/

[8] https://studentaid.gov/announcements-events/corinthian#preliminary-injunction