JOSEPH JARAMILLO (SBN 178566)
jjaramillo@heraca.org
NATALIE LYONS (SBN 293026)
nlyons@heraca.org
HOUSING & ECONOMIC RIGHTS
ADVOCATES
1814 Franklin Street, Suite 1040
Oakland, CA 94612
Tel.: (510) 271-8443
Fax: (510) 868-4521

EILEEN M. CONNOR (SBN 248856)
econnor@law.harvard.edu
TOBY R. MERRILL (*Pro Hac Vice*)
tomerrill@law.harvard.edu
MARGARET E. O'GRADY (*Pro Hac Vice*)
mogrady@law.harvard.edu
LEGAL SERVICES CENTER OF
HARVARD LAW SCHOOL
122 Boylston Street
Jamaica Plain, MA 02130
Tel.: (617) 390-3003
Fax: (617) 522-0715

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVILLO MANRIQUEZ, ET AL., <br><br> *Plaintiffs*, <br><br> v. <br><br> BETSY DEVOS, ET AL., <br><br> *Defendants.* | Case Number: 17-cv-7210-SK <br><br> **PLAINTIFFS' BRIEF IN RESPONSE TO THE COURT'S ORDER REQUIRING BRIEFING AND SETTING HEARING REGARDING MONETARY CONTEMPT SANCTIONS AND SOVEREIGN IMMUNITY** <br><br> **TELEPHONIC HEARING: 3 PM, MON. APRIL 6, 2020** |

# TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………...1

STATEMENT OF FACTS……………………………………………………………………..1

ARGUMENT

I.     Congress Waived Sovereign Immunity for Monetary Contempt Sanctions Under the Administrative Procedure Act, 5 U.S.C. § 702……………………..…………………3

     A.  Monetary Contempt Sanctions Are Not a Separate "Action." ………..………4

     B.  Monetary Contempt Sanctions Are Not "Money Damages."…………………4

     C.  In the Context of the Federal Rules of Civil Procedure, Courts Have Repeatedly Held that Monetary Contempt Sanctions are not "Money Damages." …………………………………………...…………6

     D.  Defendants' Sovereign Immunity "Concerns" Rely on the False Dichotomy of "Compensatory" and "Coercive" Sanctions………………………………………………………………7

II.    The Court's Authority to Impose Monetary Contempt Sanctions Against the Defendants Is Not Only Granted by the APA but Demanded by the Constitution….…………………………………….…………………9

III.   Defendants Raised Sovereign Immunity "Concerns" to Divert Attention From Their Ongoing Noncompliance.…………………………………10

IV.   The Court May Award Additional Sanctions If It Grants Plaintiffs' Motion for Reconsideration.……………………………………………………………12

CONCLUSION…..……………………………………………………………………13

**TABLE OF AUTHORITIES**

**Cases**

*Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4,*
   721 F.3d 1122, 1131 (9th Cir. 2013)…………………………………... ……...13

*Ashwander v. TVA*
   297 U.S. 288 (1936)…… ……………………………………………………………..9

*Barry v. Bowen,*
   884 F.2d 442 (9th Cir. 1993)…………………………………………. ………..8

*Blalock v. United States,*
   844 F.2d 1546 (11th Cir. 1988) …………………………………………………4

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ………………………………………………………3, 5

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) ………………………………………..………………..10

*Coleman v. Espy,*
   986 F.2d 1184 (8th Cir. 1993) …………………………………………………7

*Connell v. United States,*
   69 F. Appx. 867 (9th Cir. 2003) …………………………………………………..5

*FDIC v. Meyer,*
   510 U.S. 471 (1994) …………………………...……………………………..3

*FHA v. Burr,*
   309 U.S. 242 (1940) ………………………...…………………………………..3

*Gompers v. Buck Stove & Range Co.,*
   221 U.S. 418 (1911) ………………………..…………………………4, 6, 7, 10

*In re Matter of Grand Jury Proceedings Empanelled May 1988,*
   894 F.2d 881 (7th Cir. 1989) …………………………………………………4

*INS v. Chadha,*
   462 U.S. 919 (1982) …………………………………………………………10

*Int'l Union, United Mine Workers of Am. V. Bagwell,*
   512 U.S. 821 (1994) ………………………………………………..9-10, 13

*Leman v. Krentler-Arnold Hinge Last Co.*,
        284 U.S. 448 (1932) ………………………………………………………………4

*M.A. Mortenson Co. v. United States*,
        996 F.2d 1177 (Fed. Cir. 1993) ……………………………………………………6

*Marbury v. Madison*,
        5 U.S. (1 Cranch), 137 (1803) ……………………………………………………10

*Mattingly v. United States*,
        939 F. 2d 816 (9th Cir 1991) ………………………………………………………6

*McBride v. Coleman*,
        955 F.2d 571 (8th Cir. 1992) …………………………………...………………8-9

*McComb v. Jacksonville Paper Co.*,
        336 U.S. 187 (1949) ……………………………....…………………………4

*Mittelstadt v. Perdue*,
        913 F.3d 626 (7th Cir. 2019) ………………………………………………………5

*United States v. Gavilan Joint Cmty Coll. Dist.*,
        849 F.2d 1246 (9th Cir.1988) ……………………………………………………6

*United States v. Smimoto Marine & Fire Ins. Co.*,
        617 F.2d 1365 (9th Cir. 1980) ……………………………………………………6

*United States v. Nixon*,
        418 U.S. 683 (1974) ………………………………………………...……………10

*Young v. United States ex rel. Vuitton Et. Fils. S.A.*,
        481 U.S. 787 (1987) ………………………………………………………5, 9-10

**Statute**

Administrative Procedure Act, 5 U.S.C. § 702………………………………………………..*ibid.*

## INTRODUCTION

The Court has asked the parties to address the following question: May the Court impose monetary contempt sanctions of a compensatory nature against the Government?  In other words: Do federal courts have the authority to prevent the government from violating court orders with impunity?  The answer to both questions—according to the Administrative Procedure Act, the United States Constitution, the Supreme Court, and several other Courts that have considered the issue—is a resounding "yes."  Here, Defendants unquestionably and egregiously violated the preliminary injunction ordered by the Court.  As a result, the Court held Defendants in civil contempt, ordered them to comply with monthly reporting requirements, and imposed monetary contempt sanctions.  Under the Administrative Procedure Act, the Government waives sovereign immunity for all actions other than "money damages."  Monetary contempt sanctions—whether characterized as "compensatory" or "coercive"—are not damages.  Sanctions are integral to the Court's contempt power, and a crucial part of its ability to hold the Government accountable.  As such, the Court's imposition of monetary contempt sanctions against Defendants was both necessary and permissible.

## STATEMENT OF FACTS

Plaintiffs are a class of students who borrowed federal student loans to pay for career training programs at schools owned and operated by Corinthian Colleges, Inc. ("Corinthian").  Defendants initially had a policy of discharging completely the loans of defrauded students who attended Corinthian schools for certain programs within certain windows of time, but in December 2017, Defendants abruptly changed course to impose a different formula, using co-opted personal data to determine arbitrary "tiers" of borrower relief to force class members to pay a portion of their wholly invalid loans (the "Average Earnings Rule").  Upon the imposition of this new rule, Plaintiffs filed suit, and moved for a preliminary injunction. ECF No. 35 (March 17, 2018). The Court granted in part the motion for a preliminary injunction and enjoined Defendants from utilizing the Average Earnings Rule and collecting on class members during the pendency of the case. Order, ECF No. 60 at 18-22 (May 25, 2018).

In March 2019, Defendants, through loan servicers, notified some students that their loans were entering repayment. Upon learning of this, and other actions taken against students, Plaintiffs filed a motion to Lift the Stay of Proceedings and Enforce the Preliminary Injunction. ECF No. 103 (July 15, 2019). The Court subsequently ordered Defendants to file a detailed compliance report, which Defendants did on September 8, 2019. ECF No. 110 (Aug. 19, 2019); ECF No. 111-3 ("September Compliance Report"). The compliance report revealed that Defendants had done virtually nothing to comply with the preliminary injunction. *Id.; see also* Plaintiffs' Brief in Support of Contempt Sanctions, ECF No. 126 at 5-8 (Oct. 21, 2019). Defendants failed to keep all defaulted class members' loans in stopped collection status, garnished wages, seized tax refunds, and did little to monitor servicers' compliance with the Injunction, merely sending a handful of emails in hopes that collections would cease. September Compliance Report, ECF 111-3. Students who had been subject to the collections and garnishments in violation of the preliminary injunction suffered irreparable harm. On October 24, 2019, this Court found Defendants in civil contempt and ordered them to pay $100,000 in monetary sanctions. Order Regarding Sanctions, ECF No. 130 ("Sanctions Order").

Defendants are still not in compliance with the preliminary injunction. When the Court held Defendants in contempt, Defendants represented that they had violated the preliminary injunction approximately 16,000 times. September Compliance Report, ECF No. 111-3 at 2-4; Sanctions Order, ECF No. 130 at 5; *see also* Plaintiffs' Brief in Support of Contempt Sanctions, ECF No. 126 at 5-8 (Oct. 21, 2019). However, this was untrue. Defendants had in fact violated the preliminary injunction over 45,000 times. ECF No. 156-3 at 10 (Dec. 2, 2019) ("December Compliance Report"). Given these new facts, which Defendants should have disclosed earlier, Plaintiffs moved for Partial Reconsideration of the Sanctions Order. ECF No. 164 (Dec. 23, 2019) ("Plaintiffs' Sanctions Reconsideration Motion"). Now, *twenty months* after the Court first ordered the preliminary injunction, Defendants still have not fully complied. According to the February Compliance Report filed just last week, forty-nine borrowers are currently subject to wage garnishments in violation of the preliminary injunction. ECF No. 194-3 at 9-10 (Mar. 2, 2020).

In their Opposition to Plaintiffs' Sanctions Reconsideration Motion, Defendants erroneously state that Plaintiffs put forth a "consequential damages theory." ECF No. 174 at 12 (Jan. 22, 2020) ("Defendants' Sanctions Reconsideration Opposition"); *see also id*. at 2, 11. Plaintiffs have put forth no such theory, but Defendants nonetheless claim that this non-existent "theory" would "raise serious concerns about sovereign immunity." *Id.* at 12. The Court ordered briefing on the question Defendants first brought up in their Sanctions Reconsideration Opposition: "whether the Court is able to impose sanctions of a compensatory nature against the government." ECF No. 188 at 2 (Feb. 11, 2020) ("Sovereign Immunity Briefing Order").

## ARGUMENT

### I.    Congress Waived Sovereign Immunity for Monetary Contempt Sanctions Under the Administrative Procedure Act, 5 U.S.C. § 702.

This Court is able to impose sanctions of a compensatory nature against the Government. The Administrative Procedure Act ("APA") expressly waives sovereign immunity to allow the imposition of monetary contempt sanctions against the Government. 5 U.S.C. § 702. The APA states that **"action[s] in a court of the United States seeking relief other than money damages . . .** shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." *Id*. (emphasis added). Where a waiver of immunity contains a single exception, that waiver should be construed broadly. *See FDIC v. Meyer*, 510 U.S. 471, 480 (1994) (concluding that broadly stated waivers of immunity should be "'liberally construed' . . . notwithstanding the general rule that waivers of sovereign immunity are to be read narrowly in favor of the sovereign") (quoting *FHA v. Burr*, 309 U.S. 242, 245 (1940)). The Supreme Court has explained that a "restrictive interpretation" of the APA would counteract its purpose: to provide broad avenues for judicial relief. *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988). Thus, under the plain language of the APA, while actions for money damages are barred based on sovereign immunity principles, courts remain empowered to require payment in other contexts—including monetary contempt sanctions.

### A.    Monetary Contempt Sanctions Are Not a Separate "Action."

As an initial matter, the award of monetary contempt sanctions cannot credibly be characterized as an "action" for "money damages" because "**there is no such thing as an independent cause of action for civil contempt**." *Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988) (emphasis added) ("[C]ivil contempt is a device used to coerce compliance with an . . . order of the court.") (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). Although "money damages" can be imposed on any person through an independent cause of action, contempt sanctions can be imposed only on the litigants before the court, and only for a violation of a court's prospective injunction. The Supreme Court has described civil sanctions as "instituted and tried as part of the main cause." *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 445 (1911); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 452–53 (1932) (describing "a proceeding in equity for civil contempt where the only remedial relief possible was a fine, payable to the complainant," and explaining that it "was not to be regarded as an independent [suit], but as a part of the original cause"). Sanctions for civil contempt are themselves equitable, and not by definition money damages, having "originated . . . in equity, as a device for enforcing compliance with equitable decrees." *In re Matter of Grand Jury Proceedings Empanelled May 1988*, 894 F.2d 881, 884 (7th Cir. 1989).

The Court imposed sanctions in response to the Defendants' blatant violation of the preliminary injunction, not as a separate "action" for "money damages." The Court noted that the amount of monetary contempt sanctions would be used to "remedy Defendants' wrongful acts." Order, ECF No. 130 at 5-6. The "wrongful acts" clearly refer to the violation of the preliminary injunction, not the actions underlying the suit, and the "harm" is the illegal collections, not the equitable relief sought in the underlying suit.

### B.    Monetary Contempt Sanctions Are Not "Money Damages."

When civil contempt sanctions involve the payment of money, this fact alone does not make such payments "money damages," regardless of whether they are considered "compensatory" or "coercive." The Supreme Court has confirmed this, holding that courts may impose monetary contempt sanctions if the underlying suit is one for equitable relief. *Bowen*, 487

U.S. at 904 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages' under the APA"). In *Bowen*, the Court held that federal courts can order the federal government to reimburse a state for Medicare program expenditures, even though it would require payment from the United States Treasury. The *Bowen* Court considered the legislative history of the APA to conclude that the sovereign immunity waiver, as is stated plainly in the statute, prohibits action[s]" for "money damages" only: "No one suggested that the term ["money damages"] was the functional equivalent of a broader concept such as 'monetary relief' and no one proposed that the broader term be substituted for the familiar one." *Id*. at 897.

Following *Bowen*, courts have continued to distinguish traditional "money damages" from other kinds of monetary relief, repeatedly holding that the latter does not violate sovereign immunity. For example, in *Connell v. United States*, the Ninth Circuit held that sovereign immunity did not bar a claim of improper garnishment because the plaintiff sought "only restitution of the garnished monies, rather than damages." 69 F. Appx. 867, 868 (9th Cir. 2003). Likewise, in *Mittelstadt v. Perdue*, the Seventh Circuit held that sovereign immunity did not bar a request that the government "pay all amounts due" under an environmental regulation. 913 F.3d 626, 633 n.20 (7th Cir. 2019). The court explained that the requested payment was not "money damages" under the APA because the plaintiff had not requested compensation, but rather requested the "very thing to which he was entitled" under the law. *Id*. (quoting *Bowen*, 487 U.S. at 895).

The purpose of all civil contempt sanctions is to punish "disobedience to the orders of the Judiciary." *Young v. United States ex rel. Vuitton Et. Fils. S.A.*, 481 U.S. 787, 798 (1987). As the Court stated in its Sanctions Order, "[c]ivil contempt is coercive." Sanctions Order, ECF No. 130 at 5. As such, the APA's waiver of sovereign immunity for monetary contempt sanctions does *not* rest on whether the sanctions are a lump sum (characterized as "compensatory"), or imposed as a per-day payment, because sovereign immunity is waived for both types under the APA. Once a court determines that monetary contempt sanctions are appropriate, the *only* question is how they will be measured and levied. Here, the Court chose to impose a lump sum of $100,000, and it was

well within its power to do so.  Sanctions Order, ECF No. 130 at 5.  Unlike "money damages," even "remedial" civil contempt sanctions are a "vindication of the court's authority."  *Gompers v. Buck Stove & Range Co.*, 221 U.S. 418, 443 (1911).

### C. In the Context of the Federal Rules of Civil Procedure, Courts Have Repeatedly Held that Monetary Contempt Sanctions are not "Money Damages."

Courts have consistently held that sanctions for misconduct in litigation are permitted notwithstanding sovereign immunity principles.  The Rules Enabling Act, 28 U.S.C. §§ 2071, 2072, binds the federal government to the Federal Rules of Civil Procedure, and as such, also waives sovereign immunity for sanctions imposed for violations of the Rules.  As the Ninth Circuit held, "[t]he Rules of Civil Procedure…apply by their own force to all litigants before the court…Since Congress authorized the promulgation of these rules[,] applying them to the government with full force cannot be said to violate the principles of sovereign immunity." *Mattingly v. United States*, 939 F. 2d 816, 818 (9th Cir 1991).  The Federal Circuit has also recognized that there is "no justification for exempting the United States" from sanctions under Rule 37 of the Federal Rules of Civil Procedure "for failure to make discovery." *M.A. Mortenson Co. v. United States*, 996 F.2d 1177, 1181 (Fed. Cir. 1993) (quoting S. Rep. No. 253, 96th Cong., 1st Sess. 4) ("At a minimum, the United States should be held to the same standards in litigating as private parties"); *see also United States v. Gavilan Joint Cmty Coll. Dist.*, 849 F.2d 1246, 1251 (9th Cir.1988) (sovereign immunity does not prohibit sanctions under Fed. R. Civ. P. 11); *United States v. Nat'l Med. Enter.*, 792 F. 2d 906, 911 (9th Cir. 1986) (Upholding the district court's award of a "compensatory sanction" against the government for violations of discovery orders); *United States v. Smimoto Marine & Fire Ins. Co.,* 617 F.2d 1365, 1371 (9th Cir. 1980) (same). Although these cases are outside the context of the APA, they underscore that federal courts can and should impose monetary sanctions against the government for misconduct, just as the Court did here.

**D. Defendants' Sovereign Immunity "Concerns" Rely on the False Dichotomy of "Compensatory" and "Coercive" Sanctions.**

As explained above, monetary contempt sanctions are not "money damages" under the APA. *See Gompers*, 221 U.S. at 443; Sanctions Order, ECF No. 130 at 5. Nonetheless, Defendants have previewed their position that "compensatory sanctions" should be treated differently than so-called "coercive" sanctions. However, there is no reason to give any weight to this distinction when deciding if sovereign immunity is waived for monetary contempt sanctions under the APA.

None of the cases in which a court has accepted the Government's assertion of sovereign immunity in the face of contempt sanctions has relied on the distinction between lump-sum "compensatory" sanctions and per-day fines. First, in *Coleman v. Espy*, the Eighth Circuit found that sovereign immunity barred sanctions for a violation of an injunction that had been vacated several years before. 986 F.2d 1184, 1192 (8th Cir. 1993); *see* Defendants' Sanctions Reconsideration Opposition, ECF No. 174 at 12. The Defendants cite this case to assert that "compensatory sanctions" are unavailable, but the *Coleman* holding is quite narrow. The purpose of the sanctions at issue in *Coleman* could only be compensation and not compliance with an ongoing court order, because the injunction had been vacated. *Coleman,* 986 at 1192 (noting that the appellants argued they were "consequently damaged by the officials' failure to adhere to the appropriate standard of care" and denied the sanctions award because the case was not a contempt proceeding, but instead was "essentially a tort action, recovery for which must be sought through the FTCA."). The *Coleman* court did not address the APA's waiver of immunity at all. *Id*. Meanwhile, in the instant case, the contempt sanctions imposed for violations of ongoing injunctions are inherently coercive and as such, sovereign immunity has been waved. To the extent the Court's monetary contempt sanctions are meant to "compensate" plaintiffs, that compensation is squarely related to Defendants' violation of a preliminary injunction, *not* the underlying action. Sanctions Order, ECF No. 130 at 5-6 ("Given that there are over 16,000 borrowers who have suffered damages from Defendants' violation of the preliminary injunction and given that there may be some administrative expenses to remedy the harm, the Court finds the amount reasonable.").

Plaintiffs' Brief re: Sanctions and Sovereign Immunity                Case No. 17-cv-7210-SK

7

In *Barry v. Bowen*, another case cited by the Defendants, the Court considered whether sovereign immunity had been waived under the Equal Access to Justice Act (EAJA)– not the APA. 884 F.2d 442 (9th Cir. 1993); *see* Defendants' Sanctions Reconsideration Opposition, ECF No. 174 at 12. The Ninth Circuit stated explicitly that "[w]e have no desire to call into question the decisions of this court that imposed sanctions on the United States under Fed. R. Civ. P. 11, 37(b), and 60." *Barry,* 884 F.2d at 444. Defendants make much of the court's professed "doubt" about its own power to impose sanctions, but that "doubt" is squarely about the scope of the EAJA waiver, not the APA or myriad other contexts in which waiver of sovereign immunity is clearly delineated. *Barry*, 884 F.2d. at 444 (acknowledging the "multitude of other instances in which sovereign immunity expressly has been waived for purposes not including sanctions."). Additionally, the Ninth Circuit conceded that its doubts might be "ill founded," and ultimately reversed the sanctions because the amount awarded lacked a connection to the violation. *Id.* In the instant case, sovereign immunity has been waived under the APA and there is more than an ample basis for the sanctions: "[T]here is no question that Defendants violated the preliminary injunction. There is also no question that Defendants' violations harmed individual borrowers." Sanctions Order, ECF No. 130 at 6.

Another case Defendants cite in their Opposition, *McBride v. Coleman*, is irrelevant to the question before the Court. 955 F.2d 571 (8th Cir. 1992); Defendants' Sanctions Reconsideration Opposition, ECF No. 174 at 13. In *McBride*, the court reversed a sanctions award because the plaintiffs exhibited "a total failure to show a causal connection" between Defendants' violation of the injunction and the harm that violation caused. 955 F.2d at 577 (finding the sanctions inappropriate because "the damages the court awarded flow from conduct that antedated the . . . injunction or that otherwise is not encompassed by that injunction."). The Court made clear the limitations of its holding, noting that unlike actions brought under the Tucker Act or the Federal Tort Claims Act, "[t]here does not appear to be any express waiver of sovereign immunity applicable to this case." *Id*. at 576. This is easily distinguishable from the instant case, where the APA waives sovereign immunity, and there is a clear causal connection between the improper collections and garnishment that were in violation of the preliminary injunction and the sanctions

Plaintiffs' Brief re: Sanctions and Sovereign Immunity                    Case No. 17-cv-7210-SK

8

award.  Sanctions Order, ECF No. 130 at 5.

## II.    The Court's Authority to Impose Monetary Contempt Sanctions Against the Defendants Is Not Only Granted by the APA but Demanded by the Constitution.

The Court need not become mired in constitutional principles, because the meaning of the APA is plain:  sovereign immunity is waived for purposes of monetary contempt sanctions. 5 U.S.C. § 702; *see Ashwander v. TVA*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring) (emphasizing the need to interpret statutes, where possible, to avoid constitutional rulings).  That said, the principles of separation of powers and the rule of law also support the Court's ability to impose of monetary sanctions against the government for violation of a court order.  This is because (1) Monetary contempt sanctions are an essential function of the federal judiciary; and (2) Interference with this essential function would violate Article III of the Constitution.

**First**, the power to impose monetary contempt sanctions is essential to the Court's contempt power.  The Supreme Court has long described contempt power as "a necessary and integral part of the independence of the judiciary" and as "absolutely essential to the performance of the duties imposed on them by law." *Gompers*, 221 U.S. at 450; *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("The traditional justification for the relative breadth of contempt power has been necessity. . . . Courts . . . have embraced an inherent contempt authority as a power necessary to the exercise of all others.").  Federal courts have "inherent authority to initiate contempt proceedings for disobedience to their orders." *Young*, 481 U.S. at 793 (1987) (noting that Congress cannot render contempt power "practically inoperative" (*id*. at 799)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[I]t is firmly established that the power to punish for contempt is inherent in all courts") (internal quotations omitted).

**Second**, sovereign immunity cannot impinge the judiciary's ability to carry out its essential duties.  Without contempt fines, agencies would effectively have the power to disregard or review federal court decisions, violating the Constitution.  *See INS v. Chadha*, 462 U.S. 919, 963 (1982) (Separation of powers is violated when one branch "interfere[s] impermissibly with the other's performance of its constitutionally assigned function" or "assumes a function that more properly

is entrusted to another."). The Supreme Court has affirmed this principle in many contexts. *See, e.g.*, *Young*, 481 U.S. at 787 (holding that federal courts have the inherent power to appoint special prosecutors to prosecute contempt of court; noting that "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicating its own authority without complete dependence on other Branches"); *see also United States v. Nixon*, 418 U.S. 683 (1974) (holding that executive privilege, which (like sovereign immunity) is constitutionally protected but not enumerated, cannot interfere with the ability of the federal courts to carry out their essential functions; noting that "[t]he impediment that an absolute, unqualified privilege would place in the way of the primary constitutional duty of the Judicial Branch . . . would plainly conflict with the function of the Courts under [Article] III"). Allowing agencies to shield themselves from accountability behind sovereign immunity would prevent the federal courts from fulfilling their duty to remedy injuries to the litigants before them. *See Marbury v. Madison*, 5 U.S. (1 Cranch), 137, 163 (1803) ("The very essence of civil liberty certainly consists of the right of every individual to claim the protection of the laws, whenever he receives an injury."). Sovereign immunity cannot trump the award of contempt sanctions. Allowing it to do so would render judicial opinions merely advisory, and would allow the executive branch to ignore federal court orders with impunity. *See Gompers*, 221 U.S. at 445 ("For while it is sparingly used, yet the power of the courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory.").

### III. Defendants Raised Sovereign Immunity "Concerns" to Divert Attention From Their Ongoing Noncompliance.

Defendants waited until filing their Sanctions Reconsideration Opposition to mention sovereign immunity, and even then, did not clearly assert it as a defense. Instead, they note that "Plaintiffs' consequential damages theory would also raise serious concerns about sovereign immunity." ECF No. 174 at 16. Because sovereign immunity is a jurisdictional issue, the defense

Plaintiffs' Brief re: Sanctions and Sovereign Immunity                           Case No. 17-cv-7210-SK

itself cannot be waived. What is telling, however, is that Defendants have not moved to reconsider the initial award of monetary contempt sanctions. Defendants are gesturing toward sovereign immunity to do what they cannot: get out from the hole they themselves dug by repeatedly and egregiously violating the preliminary injunction.

**First**, as detailed in Plaintiffs' Reply in Support of Reconsideration, Defendants' attempt to characterize the sanctions award as "damages" is based on a false premise. Plaintiffs never argued for "consequential damages." To the extent that Plaintiffs have addressed the harm of the collections in violation of the preliminary injunction, they did so in response to this Court's determination that the $100,000 monetary sanction was at least in part connected to the harm that Defendants' noncompliance caused. *See* Sanctions Order, ECF No. 130 at 6. Defendants mischaracterize both the Court's Order and the Plaintiffs' arguments in their Opposition, in order to create the appearance of a sovereign immunity "concern" where none actually exists.

**Second**, Defendants are still not in compliance with the preliminary injunction. According to the Compliance Report filed just last week, forty-nine borrowers are currently subject to wage garnishment in violation of the preliminary injunction. February Compliance Report, ECF No. 194-3 (March 2, 2020). The problem of ongoing noncompliance has plagued Defendants throughout this litigation. In November 2019, Defendants filed a Motion for Leave to File a Motion for Partial Reconsideration of the Sanctions Order, but withdrew that motion four days later, stating that they could not "fairly represent" that they were in "full compliance." ECF No. 140 at 2 (Nov. 5, 2019). In their next Compliance Report, they revealed that there were over 45,000 borrowers potentially affected by their improper collections – *three times as many* as they had initially said. December Compliance Report, ECF No. 156-2; Errata, ECF No. 161. In their Sanctions Reconsideration Opposition, Defendants could only claim to have made "substantial progress" toward "substantial compliance." ECF No. 174 at 2. Their gesture in that brief toward a potential sovereign immunity defense is a transparent attempt to distract from the clear facts as they are. The Court issued a preliminary injunction, which Defendants violated. The Court properly imposed monetary contempt sanctions. Defendants' violation of the preliminary injunction was on a much greater scale than they originally told the Court, and it continues to this

day. Without monetary sanctions, the contempt finding is akin to a mere advisory opinion, allowing the Department to continue violating students' rights with impunity while facing no consequences for having done so for many months.

IV.    **The Court May Award Additional Sanctions If It Grants Plaintiffs' Motion for Reconsideration.**

This Court's contempt finding and reporting requirements will remain intact regardless of whether it changes the amount or characterization of the monetary sanctions awarded. In other words, whether monetary contempt sanctions are characterized as "coercive" or "compensatory" has no bearing on the finding of contempt. Defendants question only the nature of the monetary fine. *See* Order, ECF No. 130 at 6 ("[T]here is no question that Defendants violated the preliminary injunction . . . [t]he only question is the type of relief that is appropriate in this situation.").

When Plaintiffs moved for sanctions, they proposed both "coercive" and "compensatory" monetary contempt sanctions. ECF No. 126 at 19 (proposing sanctions, including but not limited to the form of a $500/day fine against the Secretary because "[s]tudents cannot afford to trust Defendants' promises and a coercive sanction is needed to ensure that they follow through."). Contempt sanctions are often per-day charges. Order, ECF No. 130 at 5 (quoting *Bagwell,* 512 U.S. at 828 ("The paradigmatic coercive, civil contempt sanction [...] involves confirming a contemnor indefinitely until he [or she] complies with an affirmative command."); *Ahearn ex rel. N.L.R.B. v. Int'l Longshore & Warehouse Union, Locals 21 & 4*, 721 F.3d 1122, 1131 (9th Cir. 2013) (characterizing sanctions as appropriate to "compel or coerce obedience to a Court order" or "compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance."). The Court awarded a $100,000 lump sum it characterized as "compensatory," while also noting that "civil contempt is coercive." Sanctions Order, ECF No. 130 at 5-6. The Court further noted: "The Court does not foreclose the possibility that, if Defendants fail to comply with the preliminary injunction in a timely matter, the Court will impose additional sanctions." *Id.* at 6.

As explained above, monetary contempt sanctions—whether they are considered

"compensatory" or "coercive"—are permissible under the APA and the Constitution. They are not separate "actions" and they are not "damages." No matter how described, courts award monetary contempt sanctions for a singular purpose: to ensure compliance with a court order. In its initial Sanctions Order, the Court characterized the monetary sanctions in this case as "compensatory" and ordered payment of a lump sum. Sanctions Order, ECF No. 130 at 5-6. If the Court grants the Plaintiffs' Motion for Partial Reconsideration of the Sanctions Order (ECF No. 167), it can increase the lump sum payment or order a per-day fine. Either way, monetary contempt sanctions are permissible, and provide a mechanism to give the Plaintiffs the compliance they were entitled to under the preliminary injunction. How to calculate them is within the Court's discretion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Reconsideration of the Sanctions Order (ECF No.167), and issue additional monetary contempt sanctions against the Defendants for violation of the preliminary injunction.

Dated: March 10, 2020                                          Respectfully submitted,

                                                              /s/ Margaret E. O'Grady

                                                              Eileen M. Connor (SBN 248856)
                                                              Toby R. Merrill (*pro hac vice*)
                                                              Margaret E. O'Grady (*pro hac vice*)
                                                              LEGAL SERVICES CENTER OF
                                                              HARVARD LAW SCHOOL
                                                              122 Boylston Street
                                                              Jamaica Plain, MA 02130
                                                              Tel.: (617) 390-3003
                                                              Fax: (617) 522-0715

                                                              Joseph Jaramillo
                                                              Natalie Lyons
                                                              HOUSING & ECONOMIC RIGHTS
                                                              ADVOCATES
                                                              1814 Franklin Street, Suite 1040

Oakland, CA 94604
Tel.: (510) 271-8443
Fax: (510) 280-2448

*Attorneys for Plaintiffs*