JOSEPH H. HUNT
Assistant Attorney General

DAVID L. ANDERSON
United States Attorney

MARCIA BERMAN
Assistant Branch Director

R. CHARLIE MERRITT
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098
robert.c.merritt@usdoj.gov

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARTIN CALVILLO MANRIQUEZ, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION and BETSY DEVOS, in her official capacity as Secretary of Education, <br><br> Defendants. | No. 3:17-cv-7210-SK <br><br> **DEFENDANTS' BRIEF IN RESPONSE TO FEBRUARY 11, 2020 ORDER** |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 4

    I.    The Court Should Not Increase The $100,000 Monetary Sanction ............................... 5

        A.    Sovereign Immunity Limits the Court's Ability to Impose Monetary Sanctions on the United States ................................................................................................................. 5

        B.    The APA Does Not Waive Sovereign Immunity for Monetary Contempt Sanctions ..... 7

        C.    The Compensatory Damages Plaintiffs Seek in Their Reconsideration Motion Are Unauthorized ................................................................................................................. 9

    II.    While The Court Has Authority To Issue Coercive Fines To Ensure Compliance With Its Orders In Certain Circumstances, There Is No Basis To Impose Such A Fine Now 12

    III.    The $100,000 Monetary Sanction Implicates The Sovereign Immunity Concerns Discussed Above ................................................................................................................. 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI*,
  541 F. Supp. 2d 274 (D.D.C. 2008) .................................................................................. 12

*Balla v. Idaho State Bd. Of Corrs.*,
  869 F.2d 461 (9th Cir. 1989) ............................................................................................ 13

*Balser v. DOJ*,
  327 F.3d 903 (9th Cir. 2003) .............................................................................................. 6

*Barry v. Bowen*,
  884 F.2d 442 (9th Cir. 1989) .......................................................................................... 6, 9

*Blalock v. United States*,
  844 F.2d 1546 (11th Cir. 1988) .......................................................................................... 7

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ............................................................................................................ 8

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ............................................................................................................ 11

*Coleman v. Espy*,
  986 F.2d 1184 (8th Cir. 1993) ..................................................................................... 6, 10

*Daniel v. Nat'l Park Serv.*,
  891 F.3d 762 (9th Cir. 2018) .............................................................................................. 5

*Department of the Army v. Blue Fox, Inc.*,
  525 U.S. 255 (1999) ........................................................................................................ 7, 8

*FAA v. Cooper*,
  566 U.S. 284 (2012) ............................................................................................................ 5

*Fox v. Vice*,
  563 U.S. 826 (2011) .......................................................................................................... 10

*Gen. Signal Corp. v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986) ...................................................................................... 9, 12

*Goodyear Tire & Rubber Co. v. Haeger*,
  137 S. Ct. 1178 (2017) ...................................................................................................... 10

*Graham v. FEMA*,
   149 F.3d 997 (9th Cir. 1998) ............................................................................................... 6

*Hicks on Behalf of Feiock v. Feiock*,
   485 U.S. 624 (1988) .............................................................................................................. 9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ............................................................................................... 14

*Int'l Union, UMWA v. Bagwell*,
   512 U.S. 821 (1993) ....................................................................................................... *passim*

*Lane v. Pena*,
   518 U.S. 187 (1996) .............................................................................................................. 5

*McBride v. Coleman*,
   955 F.2d 571 (8th Cir. 1992) ............................................................................... 6, 9, 10, 15

*Ordonez v. United States*,
   680 F.3d 1135 (9th Cir. 2012) ............................................................................................. 5

*Shell Offshore Inc. v. Greenpeace, Inc.*,
   815 F.3d 623 (9th Cir. 2016) ............................................................................................. 12

*Sossamon v. Texas*,
   563 U.S. 277 (2011) .............................................................................................................. 5

*United States v. Bright*,
   No. CIV. 07-00311 ACK-KSC, 2009 WL 2366083 (D. Haw. June 4, 2009) ......................... 13

*United States v. Dalm*,
   494 U.S. 596 (1990) .............................................................................................................. 5

*United States v. Droganes*,
   728 F.3d 580 (6th Cir. 2013) ....................................................................................... 11, 12

*United States v. Horn*,
   29 F.3d 754 (1st Cir. 1994) ........................................................................................ 6, 11, 12

*United States v. Mitchell*,
   445 U.S. 535 (1980) .............................................................................................................. 5

*United States v. Nordic Vill., Inc.*,
   503 U.S. 30 (1992) ................................................................................................................ 5

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) .................................................................................................. 8

*United States v. Powers*,
   629 F.2d 619 (9th Cir. 1980) ................................................................................................ 12

*United States v. Stein*,
   435 F. Supp. 2d 330 (S.D.N.Y. 2006) .................................................................................... 9

*United States v. UMWA*,
   330 U.S. 258 (1947) .............................................................................................................. 10

*United States v. Woodley*,
   9 F.3d 774 (9th Cir. 1993) ............................................................................................... 9, 11

*W. Shoshone Nat'l Council v. United States*,
   408 F. Supp. 2d 1040 (D. Nev. 2005) .................................................................................... 6

*Whittaker v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) ................................................................................................. 9

**Statutes**

5 U.S.C. § 702 .............................................................................................................................. 7

18 U.S.C. § 401 ............................................................................................................................ 6

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* (3d ed) ..................................... 14

# INTRODUCTION

Although Plaintiffs have moved this Court to reconsider and increase, in some unspecified amount, the $100,000 monetary sanction the Court previously ordered Defendants to pay, they have still identified no basis on which the Court should take such action and, more importantly, no permissible method for calculating an increased damages award. Rather, they seek sweeping compensation, based on the anecdotal experience of a subset of class members, for a potentially unlimited set of consequential damages. As Defendants have explained in opposing Plaintiffs' request, Plaintiffs offer no support for this theory of damages, which is inconsistent with fundamental principles of measuring compensatory sanctions even in cases not involving the federal government. But because the government *is* the defendant in this case, Plaintiffs' unbounded theory of liability raises special concerns, sovereign immunity and separation of powers among them.

After the parties completed briefing on Plaintiffs' motion for reconsideration, the Court entered an order on February 11, 2020 requiring that the parties brief the issue of "the Court's ability to impose sanctions of a compensatory nature against the government for violating the Court's Order regarding preliminary injunction," and posing three additional questions in the process. Order Requiring Briefing & Setting Hearing at 2, ECF No. 188 ("February 11 Order"). In brief, Congress has not waived the federal government's sovereign immunity for compensatory contempt sanctions (and because the Executive Branch cannot waive sovereign immunity, Defendants have not waived that argument here by not raising it in a brief prior to the Court's imposition of sanctions). That is particularly true where, as Plaintiffs request here, those sanctions take the form of consequential damages designed to provide compensatory relief to substitute for claimed losses. Tellingly, Plaintiffs do not cite a single case in which a court ordered the federal government to pay a compensatory sanction (or any other kind of monetary sanction) under the court's contempt authority. For these reasons, and those Defendants explained in their brief opposing Plaintiffs' motion for reconsideration, the Court should deny Plaintiffs' motion.

# BACKGROUND

The Court issued its preliminary injunction in this case on May 25, 2018, which it amended

to apply beyond the named Plaintiffs on June 19, 2018. *See* ECF Nos. 60 & 70. The injunction requires Defendants to "cease all efforts to collect debts from Plaintiffs and any other borrower who has successfully completed an attestation form." ECF No. 70 at 1. After Plaintiffs filed a motion requesting that the Court enforce compliance, *see* ECF No. 103, the Court ordered Defendants to submit a full report detailing their compliance with the preliminary injunction, ECF No. 110. Defendants submitted their report and the Court held a hearing, after which the Court solicited briefing and requested that the parties address, among other things, "[t]he types of remedy available" if the Court were to find Defendants in contempt and "how each one would or would not further the goals of aiding the Plaintiffs and strongly deterring future violations of the Court's orders." ECF No. 118 at 1-2. Plaintiffs filed their brief after Defendants did, but in a joint case management statement predating the hearing and the parties' briefs, Plaintiffs submitted a list of proposed sanctions. *See* Further Joint Case Management Statement at 5-6, ECF No. 115. Among these were requests that the Court impose coercive fines subject to purging upon compliance and provide Plaintiffs an opportunity, at some unspecified future date, to "file a motion for any appropriate, additional sanctions" to compensate Plaintiffs for their losses. *Id*. at 6. Defendants contended that fines of any kind were not an appropriate sanction. Defs.' Br. in Resp. to Oct. 8, 2019 Order at 12-13, ECF No. 125.

On October 24, 2019, the Court entered its order finding Defendants in civil contempt. ECF No. 130 ("Sanctions Order"). The Court determined that a $100,000 "monetary sanction," to be paid to a "fund held by Plaintiffs' counsel," was "the best method to remedy" the Department's noncompliance, noting that "there may be some administrative expenses to remedy the harm." *Id*. at 6. Plaintiffs moved for leave to file a motion for reconsideration with respect to the $100,000 monetary sanction, which the Court granted on January 7, 2020. ECF No. 165. In that motion, Plaintiffs contend that certain developments that post-date the Court's Sanctions Order "warrant[] a significant increase to the compensatory sanctions fund of $100,000." Pls.' Mot. for Partial Recons. at 1, ECF No. 167 ("Pls.' Recons. Mot."). Plaintiffs did not say what they believe the appropriate amount should be or provide a basis for calculating that amount. They did, however, collect survey responses documenting anecdotal evidence of the harms certain class

1  members are claiming and suggest that such individualized consequential harms "need[]
2  compensating." *Id.* at 7; *see, e.g.*, Decl. of Melissa Young ¶¶ 14-15, ECF No. 167-2
3  borrower(describing the "stress" that the Department allegedly caused, along with the institution
4  she attended, including that her "children now view college as a waste of time" and that her son
5  "faced extreme bullying at school" because borrower could not afford to buy him school supplies
6  or clothing); Decl. of Julie Decker ¶ 12, ECF No 167-3 (borrower who was unable to pursue the
7  career she had hoped after attending a Corinthian campus asserting that it is "hard to get a job"
8  because her "car is getting repoed and [her] credit is terrible").

9      Defendants filed an opposition to Plaintiffs' motion on January 22, 2020, in which they set
10 forth, in detail, the Department's significant efforts to achieve substantial compliance with the
11 Court's injunction. *See* Defs.' Opp'n to Pls.' Mot. for Partial Recons. at 4-7, 8-9, ECF No. 174
12 ("Defs.' Recons. Opp'n"). Defendants respectfully refer the Court to that filing for a more fulsome
13 description, but, in short, it confirmed that the Department had not only stopped debt collection
14 activities against class members in compliance with the Court's injunction, but had also completed
15 the remediation of all known impacts to potential class members identified in any of its prior
16 reports and significantly improved its internal oversight procedures to identify any additional
17 violations and prevent them from occurring in the future. *Id.* at 5-6, 9. Notably, the Department
18 explained it had discovered that a small number of employers were improperly continuing to
19 garnish the wages of potential class members in violation of the Department's instruction to place
20 such individuals in stopped collections status. *Id.* at 6-7. As the Department explained in that
21 filing and its January compliance report, such actions by employers are "out of its control," but the
22 Department had taken "additional steps to reiterate the stop collection orders to these borrowers'
23 employers and refunded the payments." *Id.* (citing Third Monthly Compliance Report at 9-10
24 (Jan. 8, 2020), ECF No. 168-2 ("January Report")). Defendants also explained why Plaintiffs'
25 request for reconsideration is improper, including because its call for consequential compensatory
26 damages as a contempt sanction raised serious sovereign immunity concerns. *Id.* at 10-13.

27     Since that time, Defendants have filed two additional monthly compliance reports. Both
28 of those reports detailed the Department's compliance with the injunction and confirmed that the

1  Department had remedied all known instances of potential noncompliance. *See* Fourth Monthly Compliance Report (Feb. 5, 2020), ECF No. 183-2 ("February Report"); Fifth Monthly Compliance Report (Mar. 2, 2020), ECF No. 194-2 ("March Report").  In each report, the Department disclosed that certain employers were continuing to garnish the wages of potential class members in violation of the Department's stopped collection orders. February Report at 8; March Report at 9-10.  The Department reiterated that it "does not have the capability to prevent employers from continuing to garnish wages following a stopped collection order," but that it had continued to communicate its stopped collection order to the relevant employers and "initiated enhanced contact protocols" to ensure that the message reached the employers.  *E.g.*, March Compliance Report at 9-10.

After the parties completed briefing on Plaintiffs' motion, the Court entered its February 11 Order, requesting additional briefing on the "issue regarding the Court's ability to impose sanctions of a compensatory nature against the government for violating" the preliminary injunction. February 11 Order at 2.  Plaintiffs filed their supplemental brief on March 10, 2020. *See* Pls.' Br. in Resp. to Order Requiring Briefing, ECF No. 199 ("Pls.' Suppl. Br.").

## **ARGUMENT**

As discussed below, sovereign immunity generally prevents courts from imposing compensatory sanctions on the federal government pursuant to their contempt authority.  At the very least, it forecloses the argument that the Court should increase the monetary sanction in this case to provide individualized, consequential damages based on the number of class members impacted by the Department's noncompliance or the specific harms such individuals may have suffered.  The Court also requested that the parties' briefs respond to three specific questions. Defendants do so below in their discussion of sovereign immunity and compensatory damages, but to summarize:

- Defendants have not waived the argument that sovereign immunity prevents the Court from imposing sanctions against the government to compensate for injuries resulting from the violation of a court's order.  As Plaintiffs' concede, sovereign immunity is jurisdictional and Defendants cannot waive it by not mentioning it in prior briefing.

- Coercive monetary contempt sanctions, that are paid to the court and offer the opportunity to purge upon compliance, can be appropriate against the federal government, but there is no basis to award them now given the Department's current state of substantial compliance.
- Defendants have not moved for reconsideration, but note that, now that Plaintiffs have, the Court is empowered to correct any error that comes to its attention during these proceedings, not just any errors Plaintiffs assert.

## I. The Court Should Not Increase The $100,000 Monetary Sanction

### A. Sovereign Immunity Limits the Court's Ability to Impose Monetary Sanctions on the United States

It is fundamental that "the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Dalm*, 494 U.S. 596, 608 (1990) (citations omitted); *accord, e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768-69 (9th Cir. 2018); *Ordonez v. United States*, 680 F.3d 1135, 1137-38 (9th Cir. 2012). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internal citations omitted); *see also Daniel*, 891 F.3d at 768 ("To maintain a suit against the government for money damages, 'the waiver of sovereign immunity must extend unambiguously to such monetary claims, thus foreclosing an implied waiver.'" (citation omitted)). This "clear textual waiver rule 'ensures that Congress has specifically considered . . . sovereign immunity and has intentionally legislated on the matter.'" *Daniel*, 891 F.3d at 768 (quoting *Sossamon v. Texas*, 563 U.S. 277, 290 (2011)). The waiver must be strictly construed in favor of the sovereign, *e.g.*, *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992), and "[a]ny ambiguities in the statutory language are to be construed in favor of immunity." *FAA v. Cooper*, 566 U.S. 284, 290 (2012). "Unlike actions involving private parties, 'where a cause of action is authorized against the federal government, the available remedies are not those that are appropriate, but only those for which sovereign immunity has been expressly waived.'" *Ordonez*, 680 F.3d at 1138 (quoting *Lane*, 518 U.S. at 197).

Applying these principles, the Ninth Circuit has expressed "doubts about the power of the district court to impose monetary sanctions" against the federal government, noting that it is aware of no authority "which suggests that the United States expressly has waived its sovereign immunity with respect to contempt sanctions." *Barry v. Bowen*, 884 F.2d 442, 443-44 (9th Cir. 1989); *accord Coleman v. Espy*, 986 F.2d 1184, 1190-92 (8th Cir. 1993) (in action seeking compensatory contempt sanctions against federal government based on violation of a court order, requiring an "explicit, unequivocal waiver of sovereign immunity," finding none in the federal contempt statute, 18 U.S.C. § 401, and concluding that, particularly "in light of the potentially significant effect on the public fisc," it was not "within [the court's] power" to authorize "compensatory civil contempt proceedings"); *McBride v. Coleman*, 955 F.2d 571, 576-78 (8th Cir. 1992) (vacating compensatory contempt sanction, expressing "grave doubts" about the district court's authority to enter it, and considering it a "dubious proposition" that "by filing a contempt motion a claimant can be positioned to recover an unlimited amount of compensatory damages from the United States without being bound by the strictures of either the Tucker Act or the Federal Tort Claims Act, which are express (but carefully limited) waivers by the United States of its sovereign immunity with respect to contract and tort claims").

Defendants have not waived the ability to raise sovereign immunity as a bar to the type of compensatory damages Plaintiffs newly seek in their motion for reconsideration. As Plaintiffs concede, "[b]ecause sovereign immunity is a jurisdictional issue, the defense itself cannot be waived." Pls.' Suppl. Br. at 10-11; *see also W. Shoshone Nat'l Council v. United States*, 408 F. Supp. 2d 1040, 1047 (D. Nev. 2005) (sovereign immunity is a "jurisdictional bar," and a party bringing an action against the United States "bears the burden of demonstrating an unequivocal waiver of immunity" (citing *Balser v. DOJ*, 327 F.3d 903, 907 (9th Cir. 2003) & *Graham v. FEMA*, 149 F.3d 997, 1005 (9th Cir. 1998))). It cannot be waived because it was not raised in a brief. *E.g.*, *United States v. Horn*, 29 F.3d 754, 762 (1st Cir. 1994) ("executive officers lack the power to waive the federal government's sovereign immunity").[1]

---

[1] In any event, sovereign immunity was not squarely presented prior to the Court's issuance of the Sanctions Order. As noted above, Plaintiffs at that point only raised the possibility of petitioning for compensatory sanctions in the future, *see supra* p. 2; they did not, as they do now, actually

**B.     The APA Does Not Waive Sovereign Immunity for Monetary Contempt Sanctions**

In arguing that compensatory contempt sanctions are authorized in this case, Plaintiffs rely on the Administrative Procedure Act ("APA").  While Plaintiffs' underlying claims in this case are brought pursuant to the APA, the Court's Sanctions Order was based on its inherent supervisory authority to ensure compliance with its orders, not the APA.  Sanctions Order at 5-6.  Unsurprisingly, Plaintiffs cite to no authority finding that the APA's sovereign immunity waiver authorizes the imposition of monetary contempt sanctions against the federal government.  And notwithstanding Plaintiffs' passing suggestion to the contrary, *see* Pls.' Suppl. Br. at 3, standard sovereign immunity principles, discussed above, are fully applicable to the APA waiver.  *See Department of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (in case analyzing scope of APA waiver, noting that "a waiver of sovereign immunity is to be strictly construed . . . in favor of the sovereign," and "must also be 'unequivocally expressed' in the statutory text").

The APA waives sovereign immunity for "action[s] . . . seeking relief other than money damages."  5 U.S.C. § 702.  But as Plaintiffs readily admit, the Court's award of contempt sanctions is not such an "action" because "there is no such thing as an independent cause of action for civil contempt."  Pls.' Suppl. Br. at 4 (emphasis omitted) (quoting *Blalock v. United States*, 844 F.2d 1546, 1550) (11th Cir. 1988)).  Plaintiffs make this point to suggest that the sanctions are not a freestanding "'action' for 'money damages,'" *id.*, but get the inquiry exactly backwards.  The APA does not waive immunity for all proceedings other than "actions for money damages"; rather, it provides a waiver for *only* "action[s] . . . seeking relief other than money damages."  The United States has sovereign immunity unless the contempt proceeding is an "action . . . seeking relief other than money damages," and Plaintiffs concede that it is not.  That should end the Court's inquiry into whether the APA waives Defendants' sovereign immunity for the type of contempt sanctions at issue in Plaintiffs' reconsideration motion.

Even if the Court's imposition of contempt sanctions could be classified as an "action . . . seeking relief," the award of compensatory sanctions is appropriately characterized as "money

---

request that such compensatory sanctions be imposed, much less did they request the type of inappropriate consequential damages they now seek through reconsideration.

Defendants' Brief in Response to February 11, 2020 Order
3:17-cv-7210-SK

7

damages" under the APA. As the Supreme Court has recognized, and Plaintiffs emphasize, the mere fact that "a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988).[2] But the "crucial question under § 702" is "what Congress meant by 'other than money damages,'" and the key distinction, per *Bowen*, is "between specific relief and compensatory, or substitute, relief." *Blue Fox*, 525 U.S. at 261. Whereas compensatory relief is "intended to provide a victim with monetary compensation for an injury to his person, property, or reputation," *Bowen*, 487 U.S. at 893, and "substitute for a suffered loss," *id*. at 895, specific relief "attempt[s] to give the plaintiff the very thing to which he was entitled," *id*. Only the latter, narrow type of monetary relief falls within the APA's waiver. Applying this distinction, *Bowen* permitted a suit to enforce a federal statutory entitlement to funds because it sought "to enforce the statutory mandate itself, which happens to be one for the payment of money," *not* "money in *compensation* for the damage sustained by the failure of the Federal Government to pay as mandated." *Id*. at 900. As the Ninth Circuit has explained, "[t]he entire point of specific relief is that it is relief that the plaintiff would be owed *even if the defendant had never engaged in wrongful conduct*." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 930 (9th Cir. 2009) (emphasis in original).

Monetary contempt sanctions, and particularly such sanctions that seek to compensate the victims of wrongful conduct, are plainly not "specific relief." Indeed, they *only* exist as a result of the wrongful conduct, and Plaintiffs here have no independent entitlement to the money they would receive in the form of monetary sanctions. There is no contract between Defendants and Plaintiffs requiring Defendants to pay class members the specific sums of money they seek. Rather, any sanctions award made payable to Plaintiffs is inherently compensatory, *i.e.*, "relief that substitutes

---

[2] Plaintiffs argue that *Bowen* somehow "h[eld] that courts may impose monetary contempt sanctions if the underlying suit is one for equitable relief." Pls.' Suppl. Br. at 4-5. This is doubly wrong because *Bowen* had nothing to do with sanctions, or contempt, and "did not turn on distinctions between . . . equitable and nonequitable categories of remedies." *Blue Fox*, 525 U.S. at 261-62. And because sovereign immunity waivers must be unequivocally expressed and narrowly construed, the mere fact that a party seeks one form of acceptable relief does not allow that party to seek other kinds of relief for which sovereign immunity has not been waived.

Defendants' Brief in Response to February 11, 2020 Order
3:17-cv-7210-SK

8

for that which ought to have been done." *Id*. The APA does not provide a waiver for such "money damages," and Plaintiffs cite no case holding otherwise.[3] *See United States v. Stein*, 435 F. Supp. 2d 330, 376 (S.D.N.Y. 2006) (rejecting argument that APA waived sovereign immunity for monetary sanctions in light of "the Court's obligation to construe narrowly any statutory waiver of sovereign immunity"); *cf. McBride*, 955 F.2d at 576, 580-81 (noting, over a dissenting opinion that specifically argued that the APA waiver authorized compensatory contempt sanctions against the federal government, that "[t]here does not appear to be any express waiver of sovereign immunity applicable to this case").

### C. The Compensatory Damages Plaintiffs Seek in Their Reconsideration Motion Are Unauthorized

As a general matter, civil contempt sanctions "are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).[4] Coercive sanctions, when monetary, are paid to the court rather than the victims of the contempt and are "purged" through compliance. *See, e.g.*, *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 829 (1994); *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632-34 (1988); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d

---

[3] Plaintiffs note that courts have imposed monetary sanctions on the government for "misconduct in litigation" pursuant to the Federal Rules of Civil Procedure. Pls.' Suppl. Br. at 6. But that is not because, as Plaintiffs misleadingly suggest, courts have found that "monetary contempt sanctions are not 'money damages'" for purposes of the APA waiver. *Id*. Rather, it is because those courts have found that the Rules, *e.g.*, Rule 11; Rule 37(b), "expressly provide for monetary sanctions." *See United States v. Woodley*, 9 F.3d 774, 781 (9th Cir. 1993). That is in stark contrast to the APA, and the Ninth Circuit has rejected the argument that the Rules, which "perhaps can be viewed as an explicit waiver of sovereign immunity," are an appropriate analogy when litigants seek monetary sanctions against the federal government under different sources of congressional authority that contain no such waiver for monetary sanctions. *Barry*, 884 F.2d at 444. And, of course, the Court's Sanctions Order here was not grounded in any Federal Rule of Civil Procedure.

[4] Plaintiffs are thus plainly incorrect in contending that the "purpose of all civil contempt sanctions is to punish 'disobedience to the orders of the Judiciary.'" Pls.' Suppl. Br. at 5 (citation omitted). Indeed, where the purpose of a sanction is to "punish past defiance and to vindicate the court's judicial authority," the sanction is *criminal*, not civil. *Whittaker*, 953 F.2d at 517. And there is no "[f]alse [d]ichotomy" in distinguishing between compensatory and coercive civil contempt sanctions. *See* Pls.' Suppl. Br. at 7. As discussed above, the distinction between compensatory and coercive is well-established in the case law, and Plaintiffs are incorrect that the APA provides a blanket waiver for civil contempt sanctions of all kinds. *See supra* pp. 7-9.

1376, 1380 (9th Cir. 1986). Compensatory sanctions, on the other hand, are designed to "compensate the complainant for losses sustained," but must "be based upon evidence of [a] complainant's actual loss." *United States v. UMWA*, 330 U.S. 258, 303-04 (1947).

Even in cases not involving the federal government, a court's ability to award compensatory sanctions "is limited to reimbursing the victim." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). That means that the complaining party may recover only those expenses he would not have incurred "except for the misconduct." *Id.* at 1188; *see also Fox v. Vice*, 563 U.S. 826, 836 (2011). "A sanctioning court must determine which [harms] were incurred because of, and solely because of, the misconduct at issue," irrespective of the egregiousness of the misconduct, *Goodyear*, 137 S. Ct. at 1189. Where a claimed cost or damage "would have been incurred in the absence of" the misconduct, "the court (possessing only the power to compensate for harm the misconduct has caused) must leave it alone." *Id.* at 1187 (citation omitted); *see also Bagwell*, 512 U.S. at 834 (concluding that a fine issued as a sanction was not compensatory because "the trial court [did not] attempt to calibrate the fines to damages caused by the union's contumacious activities or indicate that the fines were 'to compensate the complainant for losses sustained'" (citation omitted)).

As Defendants have previously explained, Plaintiffs' request for an increase to the sanctions award based on anecdotal evidence of individualized consequential damages does not meet this standard. *See* Defs.' Recons. Opp'n at 10-12. And Plaintiffs' request for unbounded and inherently speculative damages to compensate class members for asserted harms that are far afield from the Department's actual noncompliance raises particular problems in a case where such damages would be paid by the federal government. As discussed above, Plaintiffs point to no valid waiver of sovereign immunity for such an award and cite no case in which a court ordered comparable monetary penalties (or any monetary penalties) against the federal government under its contempt authority. *See Coleman*, 986 F.2d at 1192 (affirming dismissal of request for "sanctions from the government to place [asserted contempt victims] in the position they would be in if the [court order] had not been breached," *inter alia*, "in light of the potentially significant effect on the public fisc"); *McBride*, 955 F.2d at 577 (reversing monetary contempt sanction that

lacked requisite nexus to the government's violation of the relevant court order, and noting that "the contempt power is not to be used as a comprehensive device for redressing private injuries"). The damages Plaintiffs seek through their reconsideration motion are not authorized, and the Court should reject the invitation to reconsider its prior order to provide them.

As a last gasp, Plaintiffs contend that their requested compensatory sanctions are "[d]emanded by the Constitution," relying on the "inherent authority" of the courts. Pls.' Suppl. Br. at 9. But they vastly overstate the case. As the Second Circuit has recognized, "there is nothing sacrosanct about the courts' power to impose sanctions." *Horn*, 29 F.3d at 767. And the Supreme Court has noted that inherent powers, "[b]ecause of their very potency," "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see also Bagwell*, 512 U.S. at 831 (noting that "inherent contempt authority" is "uniquely . . . liable to abuse" and "its fusion of legislative, executive, and judicial powers summons forth the prospect of the most tyrannical licentiousness" (citations omitted)).

It is true that the Ninth Circuit has noted that "[s]overeign immunity does not bar a court from imposing monetary sanctions under an exercise of its supervisory powers." *Woodley*, 9 F.3d at 782. But *Woodley* stressed that "separation-of-powers principles suggest that the creation of a rule by supervisory power can be justified only when a recognized right has been violated," and, most importantly, it *reversed* the district court's sanctions award where it had "identified no violation of any statute, constitutional or other recognized right." *Id*. (citation omitted). No statutory or constitutional right is at issue here. And to the extent the Ninth Circuit's statement in *Woodley* carries any precedential value, it is expressly limited to an exercise of "supervisory powers,"—*i.e.*, "to remedy a violation of recognized statutory, procedural, or constitutional rights," or to "deter future governmental misconduct and protect the integrity of the judicial process," *id*. (citation omitted)—and does not extend to providing wide-ranging consequential damages to compensate individuals impacted by the government's contempt.

Moreover, other courts have forcefully rejected the principle expressed in *Woodley*'s dicta. *E.g.*, *Horn*, 29 F.3d 754; *United States v. Droganes*, 728 F.3d 580 (6th Cir. 2013). In *Horn*, the Second Circuit held that, in the absence of a statute authorizing such an award, "sovereign

immunity saves the federal government harmless from all court-imposed monetary assessments, regardless of their timing and purpose," 29 F.3d at 767, and rejected many of the same alarmist arguments—*e.g.*, that allowing sovereign immunity to foreclose monetary contempt sanctions would "allow the executive branch to ignore federal court orders with impunity," Pls.' Suppl. Br. at 10—Plaintiffs assert here.  The court reasoned that even without the ability to impose monetary sanctions, "[c]ourts have many other weapons in their armamentarium . . . to catch the [government's] attention, punish the culprit, and deter future [misconduct]." *Horn*, 29 F.3d at 766-67; *see also Droganes*, 728 F.3d at 590 (rejecting argument that "the district court's inherent authority to sanction . . . trumps the government's sovereign immunity" and noting that, even so, courts are not "powerless to control the government when it refuses to play by the rules"); *Alexander v. FBI*, 541 F. Supp. 2d 274, 301 (D.D.C. 2008) ("[W]hen it comes to monetary sanctions against the government, the doctrine of sovereign immunity prevails over inherent judicial power." (citation omitted)).

Whatever the limits of a Court's inherent authority to impose monetary sanctions, there is no need to explore it here.  Plaintiffs cite no case in which the Ninth Circuit, or any other court, has awarded any compensatory damages, much less the type of unbounded consequential damages Plaintiffs seek here, against the federal government pursuant to its inherent contempt authority. The Court should reject Plaintiffs' invitation to use its authority in this unprecedented manner.

**II.  While The Court Has Authority To Issue Coercive Fines To Ensure Compliance With Its Orders In Certain Circumstances, There Is No Basis To Impose Such A Fine Now**

"[C]oercive civil sanctions, intended to deter, generally take the form of conditional fines." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016); *see United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980) (civil contempt sanctions are generally "conditional and must be lifted if the contemnor obeys the order of the court").  Thus, civil coercive fines are "payable to the court," *Gen. Signal Corp.*, 787 F.2d at 1380, and must afford the contemnor "an opportunity to purge," *Bagwell*, 512 U.S. at 829.  In light of these considerations, Defendants do not take the position that sovereign immunity forecloses a court from ever imposing a conditional, purgeable monetary fine to coerce compliance with its orders.

Defendants wish to emphasize, however, that insofar as coercive sanctions are designed to coerce compliance, *e.g.*, "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order," *id.*, such sanctions are inappropriate at this time. Defendants stated in January that their "current and ongoing substantial compliance with the injunction demonstrates that there is no basis for additional sanctions." Defs.' Recons. Opp'n at 9. As noted above, the compliance reports filed since that time show that the Department's substantial compliance continues. *Supra* pp. 3-4. Because "[s]ubstantial compliance with a court order is a defense to an action for civil contempt," *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir. 1989), the Court should "purge" its contempt finding—not impose additional sanctions to coerce compliance that has already been substantially achieved. *See* Defs.' Recons. Opp'n at 9 (citing *United States v. Bright*, No. CIV. 07-00311 ACK-KSC, 2009 WL 2366083, at *2 (D. Haw. June 4, 2009)).

Plaintiffs contend that Defendants are "still not in compliance," Pls.' Suppl. Br. at 11, but their misleading characterization of the Department's compliance efforts provides no basis for additional sanctions. *See* Defs.' Recons. Opp'n at 8-9. The only evidence Plaintiffs cite in support of their claim is that Defendants reported in March that "forty-nine borrowers are currently subject to wage garnishment."[5] Pls.' Suppl. Br. at 11. Of course, Plaintiffs ignore that the Department has forthrightly acknowledged this situation and explained that because it is the borrowers' employers, not the Department or even its servicers, that actually garnish wages, the Department "does not have the capability to prevent employers from continuing to garnish wages following a stopped collection order." March Report at 9-10. The Department did, however, verify that each of these borrowers were in the correct repayment status (thus confirming that the wage garnishment was in violation of the Department's orders), and that it had "initiated refunds" for all

---

[5] Plaintiffs also suggest that the "problem of ongoing noncompliance has plagued Defendants throughout this litigation," pointing to fluctuation in Defendants' reporting of the number of individuals impacted by its noncompliance. Pls.' Suppl. Br. at 11. As Defendants have explained, however, these fluctuations were due to prior "isolated" errors in reporting, "not continued issues of noncompliance." Defs.' Recons. Opp'n at 5-6. These reporting issues as the Department engaged the process of reviewing its vast student loan portfolio and updating its tracking procedures, which have now been corrected in any event, provide no basis for additional sanctions.

of the garnished wages. *Id*. at 9. The actions taken by third party employers over whom the Department has no control and in direct violation of the Department's instructions provide no basis for any finding of contempt or additional sanctions award now. *See* Sanctions Order at 5 (contempt only appropriate where party has "fail[ed] to take all reasonable steps *within the party's power to comply*") (emphasis added) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993))).

### III. The $100,000 Monetary Sanction Implicates The Sovereign Immunity Concerns Discussed Above

As the Court is aware, Defendants have not, to this point, requested that the Court reconsider the $100,000 monetary sanction on the grounds that it violates sovereign immunity. But the same principles outlined above apply to the $100,000 sanction, to the extent it is compensatory—namely that Congress has not expressly waived sovereign immunity for compensatory contempt sanctions, whether through the APA or otherwise. Now that Plaintiffs have moved for reconsideration of the sanction, the Court is "empowered to correct any error that c[omes] to its attention and [is] not limited to those errors alleged in [Plaintiffs'] motion." 11 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and Proc.* § 2817 & n.20 (3d ed.). To the extent the Court agrees with Defendants that compensatory contempt sanctions against the federal government are unauthorized, it can and should vacate that award.

But even if the Court does not agree and determines to keep the $100,000 monetary sanction in place, it should still not add the unbounded consequential damages that Plaintiffs request because, as discussed above, such sanctions do not comport with ordinary principles of compensatory sanctions and would not be appropriate even against a private litigant. The Court's prior $100,000 in monetary sanctions appeared to be intended to compensate plaintiffs for a limited set of harms directly attributable to the Department's noncompliance, to include easily quantifiable and non-speculative "administrative expenses." Sanctions Order at 6. By contrast, the newly requested sanctions are far more speculative and attenuated. As Defendants have noted previously, Plaintiffs now attempt to provide each impacted potential class member an individualized award of consequential damages to compensate them for a potentially limitless set of inherently

speculative and non-quantifiable claimed harms. *See* Defs.' Recons. Opp'n at 10-12. Because the federal government is a defendant here, and because there is no express waiver of sovereign immunity, the ordinary principles limiting compensatory sanctions must be applied all the more rigorously. *E.g.*, *McBride*, 955 F.2d at 577 (noting that "the contempt power is not to be used as a comprehensive device for redressing private injuries"). Thus, even if the Court is inclined to leave the $100,000 sanction in place, it should still decline to increase that award for the reasons stated in this brief and in Defendants' brief opposing Plaintiffs' motion for reconsideration.

## **CONCLUSION**

For the foregoing reasons, and those stated in Defendants' opposition brief, ECF No. 174, Defendants respectfully request that the Court deny Plaintiffs' motion for reconsideration.

Dated:  March 24, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ R. Charlie Merritt*
R. CHARLIE MERRITT (VA Bar No. 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
919 East Main Street, Suite 1900
Richmond, VA 23219
(202) 616-8098
robert.c.merritt@usdoj.gov

*Counsel for Defendants*