JOSEPH H. HUNT
Assistant Attorney General
DAVID L. ANDERSON
United States Attorney
MARCIA BERMAN
Assistant Branch Director
R. CHARLIE MERRITT
KEVIN P. HANCOCK
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-3183
Fax: (202) 616-8470
E-mail: kevin.p.hancock@usdoj.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | No.  3:17-cv-7106-SK |
| MARTIN CALVILLO MANRIQUEZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, et al.,<br><br>Defendants. | No.  3:17-cv-7210-SK<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' JOINT BRIEF RE: COMPLETION OF THE ADMINISTRATIVE RECORD** |

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................2

I.    FACTUAL BACKGROUND ..........................................................................................2

II.   PROCEDURAL BACKGROUND..................................................................................3

STANDARD OF REVIEW ....................................................................................................7

ARGUMENT .........................................................................................................................8

I.    EACH OF THE 28 CHALLENGED DOCUMENTS IS PROTECTED FROM
     DISCLOSURE BY AT LEAST ONE PRIVILEGE ......................................................8

     A.   The Deliberative-Process Privilege Protects Entries 2, 126, 144, 180, 189,
          200, 307, 346, and 632-35 ..................................................................................8

     B.   The Attorney-Client Privilege Protects Entries 2, 9-24, 189, 307, and
          632-35 ................................................................................................................10

          1.   The Menashi Memorandum (Entry 307) and the January 19, 2017
              Memorandum (Entry 189) ...........................................................................11

          2.   The May 4, 2017 Memorandum (Entry 2) and the Partial Relief
              Approval Memoranda (Entries 9-24)............................................................12

          3.   The Percentage Approval Packages (Entries 632-35) ...................................12

     C.   The Work-Product Doctrine Protects Entries 189, 307, and 632-35 .....................13

          1.   The Menashi Memorandum (Entry 307) and the January 19, 2017
               Memorandum (Entry 189) ...........................................................................14

          2.   The Percentage Approval Packages (Entries 632-35) ...................................15

II.   PLAINTIFFS HAVE FAILED TO ESTABLISH THAT WAIVER OR ANY
     OTHER EXCEPTIONS TO DEFENDANTS' PRIVILEGES APPLY ........................15

     A.   Plaintiffs Have Not Established that the Working-Law Exception Breaches
          Defendants' Privilege Assertions...........................................................................16

     B.   Plaintiffs Have Not Established that Their Alleged Need for Defendants'
          Documents Overrides the Deliberative-Process Privilege......................................18

          1.   Plaintiffs Have Not Demonstrated that Other Evidence Is Not Available.....19

2.      Plaintiffs Have Not Demonstrated that the Government's Role in the
        Litigation Justifies Disclosure..........................................................................20

3.      Plaintiffs Have Not Demonstrated that Disclosure Will Not Hinder
        Agency Decisionmaking ...................................................................................21

4.      Plaintiffs Have Not Demonstrated that the Interest in Accurate Judicial
        Fact Finding Justifies Disclosure ....................................................................22

5.      Plaintiffs Do Not Claim Governmental Misconduct or a Federal
        Interest in the Enforcement of Federal Law ....................................................23

C.      Plaintiffs Have Not Established that Defendants Waived the Attorney-
        Client Privilege or Work-Product Immunity for the Challenged
        Documents .........................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

**TABLE OF AUTHORITIES**

**Cases**

*ACLU of N. California v. DOJ*,
  880 F.3d 473 (9th Cir. 2018) ....................................................................... 14, 15, 16

*Admiral Ins. Co. v. U.S. Dist. Court, Dist. of Arizona*,
  881 F.2d 1486 (9th Cir. 1989) ................................................................................ 13

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
  No. 07-cv-1359, 2008 WL 5214330 (N.D. Cal. Dec. 12, 2008)............................. 14

*Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
  No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ......................... 8

*Coastal States Gas Corp. v. DOE*,
  617 F.2d 854 (D.C. Cir. 1980) .................................................................................. 8

*Ctr. for Biological Diversity v. Badgley*,
  335 F.3d 1097 (9th Cir. 2003) .................................................................................. 7

*Cummings v. Norton*,
  393 F.3d 1186 (10th Cir. 2005) ................................................................................ 6

*Dole v. Milonas*,
  889 F.2d 885 (9th Cir. 1989) .................................................................................. 11

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985).................................................................................................. 7

*Frontier Found. v. DOJ*,
  739 F.3d 1 (D.C. Cir. 2014) .................................................................................... 16

*Frontier Found. v. DOJ*,
  890 F. Supp. 2d 35 (D.D.C. 2012) .......................................................................... 15

*FTC v. Warner Commc'ns, Inc.*,
  742 F.2d 1156 (9th Cir. 1984) .................................................................. 18, 21, 23

*Gomez v. Vernon*,
  255 F.3d 1118 (9th Cir. 2001) ................................................................................ 24

*Guidiville Rancheria of California v. United States*,
  No. 12-CV-1326 YGR, 2013 WL 6571945 (N.D. Cal. Dec. 13, 2013) .................. 15

iii
Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

*Hickman v. Taylor*,
  329 U.S. 495 (1947).........................................................................................13

*In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*,
  No. 81 C 7076, 1987 WL 20408 (N.D. Ill. Nov. 20, 1987).....................................24

*In re Convergent Technologies Second Half 1984 Sec. Litig.*,
  122 F.R.D. 555 (N.D. Cal. 1988).................................................................15, 23

*In re Grand Jury Investigation*,
  974 F.2d 1068 (9th Cir. 1992) ...........................................................10, 11, 13

*In re Subpeona Duces Tecum*,
  156 F.3d 1279 (D.C. Cir. 1998)...................................................................22

*In re United States*,
  875 F.3d 1200 (9th Cir. 2017) ......................................................................7

*Judicial Watch, Inc. v. DOD*,
  847 F.3d 735 (D.C. Cir. 2017) ................................................................17, 18

*Judicial Watch, Inc. v. DOJ*,
  20 F. Supp. 3d 260 (D.D.C. 2014) .................................................................16

*Judicial Watch, Inc. v. U.S. Dep't of*,
  Def., 963 F. Supp. 2d 6 (D.D.C. 2013) ........................................................24, 25

*Lahr v. Nat'l Transp. Safety Bd.*,
  569 F.3d 964 (9th Cir. 2009) ........................................................................8

*Molex v. City and Cty. of San Fran.*,
  No. C-4:11-1282-YGR (KAW), 2012 WL 1831640 (N.D. Cal. May 18, 2012).....................8

*Morgan v. United States*,
  304 U.S. 1 (1938).................................................................................21

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)................................................................................21

*Murphy v. Dept. of the Army*,
  613 F.2d 1151 (D.C. Cir. 1979)...............................................................24, 25

*Nat'l Council of La Raza v. DOJ*,
  411 F.3d 350 (2d Cir. 2005) .......................................................................17

*New York Times Co. v. DOJ*,
  282 F. Supp. 3d 234 (D.D.C. 2017) ................................................................16

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

*NLRB v. Sear, Roebuck & Co.*,
   421 U.S. 132 (1975) ...................................................................................... 16

*North Pacifica, LLC v. City of Pacifica*,
   274 F. Supp. 2d 1118 (N.D. Cal. 2003) ................................................ 18, 20, 21, 22

*Oceana, Inc. v. Pritzker*,
   No. 16-cv-06784, 2017 WL 8948945 (N.D. Cal. Aug. 15, 2017) ............................ 7

*Oceana, Inc. v. Ross*,
   920 F.3d 855 (D.C. Cir. 2019) ...................................................................... 20

*O'Connor v. Boeing N. Am., Inc.*,
   216 F.R.D. 640 (C.D. Cal. 2003) .................................................................... 8

*Phoenix Techs. Ltd., v. Vmware, Inc.*,
   195 F. Supp. 3d 1096 (N.D. Cal. 2016) ........................................................... 14

*Portland Audubon Soc. v. Endangered Species Comm.*,
   984 F.2d 1534 (9th Cir. 1993) ...................................................................... 21

*Redlands Soccer Club, Inc. v. Dep't of the Army*,
   55 F.3d 827 (3d Cir. 1995) ........................................................................... 18

*Sakamoto v. EPA*,
   443 F. Supp. 2d 1182 (N.D. Cal. 2006) ..................................................... 8, 9, 10

*Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*,
   925 F.3d 1000 (9th Cir. 2019) ........................................................................ 9

*Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*,
   940 F.2d 685 (D.C. Cir. 1991) ........................................................................ 7

*Thompson v. U.S. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) .......................................................................... 7

*Univ. of California v. DHS*,
   No. C 17-05211 WHA, 2018 WL 1210551 (N.D. Cal. Mar. 8, 2018) ...................... 8

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. 1981) ..................................................................... 23, 24

## **Statutes**

5 U.S.C. § 706 ................................................................................................ 7

20 U.S.C. § 1070 ............................................................................................ 2

v

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

20 U.S.C. § 1087e(h) .................................................................................................. 2

**<u>Rule</u>**

Fed. R. Civ. P. 26(c)(3)............................................................................................... 13

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1      Defendants, the U.S. Department of Education ("Department") and Elisabeth DeVos, in

2  her official capacity as Secretary of Education ("Secretary"), oppose Plaintiffs' joint request that

3  the Court complete the administrative records in these cases with documents that are protected

4  by the attorney-client privilege, work-product doctrine, and deliberative-process privilege.

5      Plaintiffs have failed to make the showing required to overcome the presumption of

6  completeness that attaches to Defendants' administrative record in these Administrative Procedure

7  Act cases.  Although Plaintiffs assert that 28 documents entered in Defendants' privilege log must

8  be added to the record in unredacted form, an agency's logged documents should not be disclosed

9  where the claimed privileges validly apply, as is the case here.

10     Defendants have made a *prima facie* showing that each of the 28 challenged documents is

11 protected from disclosure by one or more privileges, which Plaintiffs do not contest for at least 19

12 of these documents.  As established by Defendants' privilege log and attached declaration, 12

13 documents — internal memoranda dated May 4, 2017, January 19, 2017, and December 14, 2017,

14 as well as what Plaintiffs have termed the "Percentage Approval Packages" and the "Deliberative

15 Process Materials" — were prepared (often by attorneys) to assist Department decision-makers'

16 subsequent final adjudication of the applications of Corinthian JPR claimants.  These documents

17 are therefore predecisional and deliberative, and in many cases also protected by the attorney-

18 client privilege and work-product doctrine.  The other 16 documents — the "Partial Relief

19 Approval Memoranda" — reflect the Department's final adjudications and thus appear in the

20 record subject to relatively minor redactions for privacy and attorney-client privilege.

21     Plaintiffs nevertheless demand that these documents be fully disclosed on the basis of

22 arguments on which they bear a burden they cannot carry.  First, Plaintiffs have failed to show that

23 disclosure is required based on a "working law exception" to the deliberative-process privilege.

24 That exception is not even applicable to the attorney-client privilege or work-product doctrine,

25 which protects 23 of the 28 challenged documents.  As for the five documents that are protected

26 only by the deliberative-process privilege (the "Deliberative Process Materials"), Plaintiffs do not

27 even claim that the working-law doctrine requires their disclosure.  In any event, Plaintiffs offer

28 nothing more than their assertions and speculation that Defendants transformed otherwise

deliberative and predecisional memoranda into "working law," which is insufficient to meet their burden of presenting actual evidence of the agency's express adoption of such documents.

Second, Plaintiffs have also failed to meet their burden of demonstrating that the deliberative-process privilege should give way due to Plaintiffs' alleged need for the documents the privilege protects.  While disclosure of the Department's deliberative and predecisional documents would harm the agency's decisionmaking, Plaintiffs are unable to show that any more than two of the eight *Warner-North Pacifica* factors weigh in favor of overriding the government's interest in non-disclosure.  Plaintiffs concede that other evidence of the agency's final decision making exists in the administrative record.  Also, Plaintiffs have not demonstrated that the government has used the privilege selectively or that the mental processes of agency actors are at issue in this case.  Instead, Plaintiffs rely heavily on the truism that relevant documents that have been validly withheld on the basis of privilege would be helpful for "accurate fact-finding," but if that were enough, it would all but eliminate the deliberative-process privilege.

Finally, Defendants did not waive the attorney-client privilege or work-product immunity over any documents that were leaked and then entered into the public record by Congress without authorization and without giving the Department a reasonable opportunity to object.

Defendants respectfully submit that Plaintiffs' request to complete the record be denied.

## BACKGROUND

### I.   FACTUAL BACKGROUND

The Secretary of Education is charged with carrying out certain student loan programs under Title IV of the HEA, 20 U.S.C. § 1070 *et seq.*, including, as relevant here, the William D. Ford Federal Direct Loan Program ("Direct Loan").  Although borrowers generally are obligated to repay any federal loans received, Congress has authorized the Secretary to "specify in regulations which acts or omissions of an institution of higher education a borrower may assert as a defense to repayment[.]"  20 U.S.C. § 1087e(h).

In 2015, the Department determined that Corinthian Colleges, Inc. ("Corinthian") systematically misrepresented the rates at which its graduates were employed (*i.e.*, its "job placement rates" or "JPR") across a number of its campuses nationwide.  Throughout 2015 and

2

2016, as the number of borrower defense applications began to increase exponentially, the Department awarded full discharges of Direct Loan debt to some Corinthian borrowers who were able to establish a successful defense to repayment based on the Department's job placement rate findings. The Department reviewed its procedures for resolving such claims, however, and, on December 20, 2017, announced an "improved discharge process for borrower defense to repayment [] claims." *See Cal.* ECF No. 65 (Admin. R. ("AR") 131-32).[1] Under this methodology, the Department afforded borrower defense relief based on the harm Corinthian borrowers incurred due to their school's misconduct, measured by comparing the average earnings of graduates of Corinthian programs with the average earnings of completers of comparable programs that the Department determined met its "gainful employment" requirement. *Id.* On May 25, 2018, the Court in *Manriquez* preliminarily enjoined the Department from using the 2017 methodology based on its finding that the Department likely obtained certain data used in that methodology in violation of the Privacy Act. *Manriquez* ECF Nos. 60, 70.

## II.     PROCEDURAL BACKGROUND

The complaints in both cases allege that the Department, through its Corinthian JPR findings and various other informal means, created a binding "rule" (sometimes called the "Corinthian Full-Relief Rule" or "Corinthian Job Placement Rate Rule"), from which the Department can never depart, prospectively qualifying all borrowers covered by the Department's JPR findings (*i.e.*, borrowers who attended programs identified by the Department during the relevant time periods) for "full relief" (*i.e.*, full discharges of their relevant student loan debt and refunds of all amounts paid on such loans). *See, e.g.*, *Cal.* Am. Compl. ¶¶ 42-44, 52, ECF No. 37; *Manriquez* Am. Compl. ¶¶ 3, 78, ECF No. 58. Plaintiffs seek full relief for Corinthian JPR claimants under a number of theories.

On July 8, 2019, Defendants timely lodged the certified administrative record ("record" or "AR") in *California*. *Cal.* ECF No. 65. California challenged the completeness of that Record, arguing, among other things, that the record improperly excluded "eight specific, identifiable

---

[1]     For the sake of brevity, Defendants will cite only the *California* docket when an identical filing also appears on the *Manriquez* docket.

documents." *Cal.* ECF No. 66 at 6-7.  California argued that the record was incomplete in part because the Department had excluded privileged documents and had not produced a privilege log for such documents.  *Id.* at 9-10, 12.  In response, Defendants took the position that privileged documents are not part of a proper administrative record (and thus a privilege log is unnecessary) because an agency's internal deliberations are immaterial as a matter of law under the APA standard of review.  *Cal.* ECF No. 72 at 14-17.

On October 11, 2019, the Court ordered Defendants to submit the eight challenged documents, as well as a privilege log "covering both [those] documents and the entire administrative record," to the Court for *in camera* review, *Cal.* ECF No. 81 at 1, which Defendants did, *see Cal.* ECF Nos. 90, 96.  The Court had also required Defendants' privilege log to "indicate whether each document has already been provided to the public pursuant to FOIA request(s)." *Cal.* ECF No. 81 at 4.  But after Defendants raised the fact that determining whether each of the 639 documents entered on their privilege log was released in FOIA would have required months, *see Cal.* ECF No. 95, the Court allowed the parties to meet and confer to identify the "most relevant documents" from the log for Defendants' FOIA review, *see Cal.* ECF No. 107 at 2, ¶ 5.  During the meet-and-confer process, California provided Defendants with six categories "that may identify highly relevant" non-draft documents from the log, *id.* at 2, ¶ 6, and the parties later agreed on a narrowed set of 27 documents for Defendants' FOIA review, *see Cal.* ECF No. 110.

On December 12, 2019, the Secretary of Education testified before the U.S. House of Representatives Committee on Education and Labor.  During that hearing, members of the Committee entered into the public hearing record unredacted versions of three documents over which the Department had claimed privilege in *California.*  Two of these three documents were among the eight that California sought to have added to the administrative record: memoranda dated October 24, 2016 and January 9, 2017.  *See* Decl. of Jordan Harding at 2, ¶ 8, *Cal.* ECF No. 118-2.  The third privileged document Congress entered into the public record was not subject to California's motion to complete the record: a memorandum from Steven Menashi, Acting General Counsel for the Department, to James Manning dated December 14, 2017 ("Menashi Memorandum").  *See id.*

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

Defendants did not provide Congress with these documents, did not release them in response to a FOIA request, were not informed that the documents would be entered into the record, do not know how Congress obtained them, and did not make any knowing, intentional waiver of the privileges applicable to those documents. Harding Decl. ¶¶ 9-11, 14; Decl. of Robert Wehausen ¶¶ 13-14, *Cal.* ECF No. 118-5. The Department has thus concluded that the documents must have been leaked without authorization. Harding Decl. ¶ 12. At no point before or during the hearing did Congress provide Defendants with copies of the documents entered into the record or give them an opportunity to object to their entry. *Id.* ¶ 9. The Department subsequently objected to Congress's disclosure. *Id.* ¶ 13. The day after the December 12 hearing, California filed a notice informing the Court of Congress's disclosure. *Cal.* ECF No. 104.

On December 27, 2019, the Court issued an order granting in part and denying in part California's motion to complete the record. *Cal.* ECF No. 105 ("December 27 Order"). The Court concluded that the administrative record must include four of the eight documents California had challenged, including the October 24, 2016 and January 9, 2017 memos that Congress had entered into the hearing record, and two additional documents, legal memoranda dated May 14, 2015 and October 20, 2016. First, the December 27 Order explained that although the four memoranda to be added to the record were predecisional and "deliberative in nature," the deliberative-process privilege was nevertheless overridden because California's need for the documents outweighed the government's interest in non-disclosure. *Id.* at 9-10.

Second, the December 27 Order concluded that Defendants waived the attorney-client privilege for the four memoranda to be added to the record because Defendants did not object during the December 12, 2019 Congressional hearing when Congress entered the October 24, 2017, January 9, 2017, and Menashi memoranda into the public record. *Cal.* ECF No. 105 at 13-14. Although the May 14 and October 20 memos were not also entered into the record, the Court found that the privilege was also waived for those documents because the "Menashi Memorandum clearly refers to both documents and summarizes them." *Id.* at 13. As for the Menashi Memorandum itself, the Court concluded that while "it appears that the Menashi Memorandum should also be included in the administrative record," it would allow "the parties to argue the

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1    inclusion of the Menashi Memorandum at a later date" because California's motion had not

2    challenged it.  *Id.* at 14 n.8.[2]

3            On February 26, 2020, the Court denied as untimely Defendants' motion for leave to move

4    for partial reconsideration of the Court's December 27 Order.  *Cal.* ECF No. 124.  Two days later,

5    Defendants added the four documents to the *California* administrative record, *see* ECF No. 125,

6    and filed an identical administrative record and privilege log in *Manriquez*, *see* ECF No. 193.  Also

7    on February 28, Defendants concluded their FOIA review, which determined that just one of the

8    27 documents under review had been released, and only in a partially redacted form that did not

9    reveal any information that does not already appear in the ARs.  *See Cal.* ECF No. 129 at 2.

10           On March 20, 2020, the parties filed a joint status report in which Plaintiffs requested *in*

11   *camera* review of 31 documents, *see Cal.* ECF No. 129, which defendants submitted to the Court

12   by email on April 9, 2020, *see Cal.* ECF No. 133.  Also on that date, Plaintiffs filed their joint brief

13   requesting completion of the administrative records with unredacted versions of 28 of the initially

14   selected 31 documents.[3]  *Cal.* ECF No. 134.  According to the parties' Court-approved plan,

15   "[a]fter the Court's resolution of the parties' motions regarding privilege issues, if any," the parties

16   will then "meet and confer on any remaining issues related to the administrative record and a

17   dispositive motion briefing schedule."  *See Cal.* ECF No. 117.

18

19

20

21   ────────────────

[2]     Defendants acknowledge that the reasoning of the December 27, 2019 Order appears to
22   apply to the Menashi Memorandum and the January 19, 2017 Memorandum, which is referenced
     in, described by, and attached to, the Menashi Memorandum.  Defendants recognize that the
23   Court denied their motion for leave to move for reconsideration of that Order.  *See Cal.* ECF No.
     124.  Because Defendants continue to disagree, respectfully, with the Court's conclusions in the
24   December 27 Order, we argue below that the Menashi Memorandum and January 19, 2017
     Memorandum should not be added to the administrative record because they are privileged and
25   Defendants have not waived those privileges, in order to, at a minimum, preserve these issues for
     appeal.  *See, e.g.*, *Cummings v. Norton*, 393 F.3d 1186, 1190-91 (10th Cir. 2005) ("Because of the
26   importance of raising an issue below, we have consistently turned down the argument that the
     raising of a related theory was sufficient to preserve an issue for appeal." (citation omitted)).

27   [3]     Five of the 28 documents Plaintiffs seek to have added to the administrative record in
     unredacted form (entries 126, 632-635) were not included among the narrowed set of 27
28   documents that were identified for FOIA review.  *See Cal.* ECF No. 110-1.

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STANDARD OF REVIEW

Because Plaintiffs bring their actions under the APA, judicial review is narrow and limited to inquiry into "whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Ctr. for Biological Diversity v. Badgley*, 335 F.3d 1097, 1100 (9th Cir. 2003) (citation omitted).  The "focal point" of this inquiry is the "administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (citation omitted).  It is therefore a fundamental principle of administrative law that, with rare exceptions, judicial review is "confined to the administrative record" designated by the agency.  *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991).  The APA directs the reviewing court to review "the whole record," 5 U.S.C. § 706, which the Ninth Circuit has explained "consists of all documents and materials directly or indirectly considered by agency decision-makers." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989).

An agency's certification of the administrative record is "entitled to a presumption of administrative regularity," and "[t]o rebut this presumption of completeness of the administrative record, the plaintiff must show clear evidence that the record is not complete by identify[ing] reasonable, non-speculative grounds for the belief that . . . documents were considered by the agency and not included in the record."  *Oceana, Inc. v. Pritzker*, No. 16-cv-06784, 2017 WL 8948945, at *3 (N.D. Cal. Aug. 15, 2017) (internal quotation marks omitted); *see also In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017) (explaining that an agency's designation of the record is entitled to a rebuttable "presumption of completeness").[4]

---

[4]     Defendants have maintained throughout this litigation that privileged materials are immaterial to the administrative record as a matter of law, and therefore the Department could not have "directly or indirectly considered" such materials as that standard has been articulated under APA case law.  *See, e.g.*, *Cal.* ECF No. 72 at 14-15.  Given the Court's rejection of Defendants' position, *see Cal.* ECF No. 81, however, Defendants do not reiterate those arguments here in response to Plaintiffs' claim that the 28 privileged documents Plaintiffs seek to add to the record were directly or indirectly considered by the Department, *see Cal.* ECF No. 134 at 11-12.  *See also* Tr. of Proceedings on Nov. 25, 2019, at 15, ll. 11-16, *Cal.* ECF No. 103 ("THE COURT: . . . [W]e will understand that the Department is maintaining its position that all the documents on the log are not part of the administrative record.  That goes without saying.").  Defendants do, however, preserve their objection for purposes of appeal.

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

Although courts in this District have "required administrative agencies to provide a privilege log in withholding documents that otherwise belong in the administrative record," *Regents of the Univ. of California v. DHS*, No. C 17-05211 WHA, 2018 WL 1210551, at *6 (N.D. Cal. Mar. 8, 2018)*, those courts have generally not required that privileged documents be included in the record, recognizing that such documents are "protected from inclusion" where the agency establishes that the claimed privilege applies, *e.g.*, *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006); *see also Cal.* ECF No. 81 (recognizing that the purpose of Defendants' privilege log is to allow "courts and counterparties" to review "[a]gency assertions of privilege").  This is particularly true for the attorney-client privilege, which "is absolute," and so cannot be balanced "against the need for the information," *Molex v. City and Cty. of San Fran.*, No. C-4:11-1282-YGR (KAW), 2012 WL 1831640, at *2 (N.D. Cal. May 18, 2012), and opinion work product, which similarly "enjoys almost absolute immunity," *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003).

## ARGUMENT

## I.   EACH OF THE 28 CHALLENGED DOCUMENTS IS PROTECTED FROM DISCLOSURE BY AT LEAST ONE PRIVILEGE

### A.   The Deliberative-Process Privilege Protects Entries 2, 126, 144, 180, 189, 200, 307, 346, and 632-35

The deliberative process privilege protects documents that are both "predecisional" and "deliberative" in order to "allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (citation omitted); *see also Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980) (noting that the privilege "protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted").  A document is "predecisional" when it has been "prepared in order to assist an agency decision maker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Sakamoto v. EPA*, 443 F. Supp. 2d 1182, 1191 (N.D. Cal. 2006) (citations omitted).

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

A document is "deliberative" if "the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* at 1191-92.

Here, Defendants claim the deliberative-process privilege over 12 of the 28 disputed documents, not "all of the documents under review," as Plaintiffs incorrectly represent. *Cal.* ECF No. 134 at 4. These 12 documents — the May 4, 2017 (entry 2), January 19, 2017 (entry 189), and Menashi Memoranda (entry 307), the Percentage Approval Packages (entries 632-35), and the Deliberative Process Materials (entries 126, 144, 180, 200, and 346) — are protected because they were prepared to assist Department decision-makers' subsequent final adjudication of the applications of Corinthian JPR claimants. The final agency actions challenged in this case are the Department's decisions, as implemented in its adjudication of borrower defense claims, to award Corinthian JPR claimants less than the "full relief" to which Plaintiffs believe such borrowers are entitled. Defendants have included the documents reflecting those final decisions in the Record, *see* AR at 1652-3347 (including the "Partial Relief Approval Memoranda"), and do not claim the deliberative-process privilege over those documents, *see Cal.* ECF No. 96-1 (entries 9-67).

By contrast, the documents challenged by Plaintiffs are predecisional and deliberative because they were prepared either by attorneys or someone besides the decisionmaker, "in order to assist an agency decision-maker in arriving at his decision." *Sakamoto*, 443 F. Supp. 2d at 1191; *cf. Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*, 925 F.3d 1000, 1014 (9th Cir. 2019) (explaining where "a document is created by a final decision-maker and represents the final view of an entire agency as to a matter which, once concluded, is a final agency action . . . it is not pre-decisional" (citation omitted)). Department attorneys wrote the Menashi Memorandum, the January 19, 2017 memorandum, the May 4, 2017 Memorandum, and the Percentage Approval Packages as support for their recommendations to Department decision-makers regarding how to adjudicate the claims of, and award relief to, Corinthian borrowers. *See Cal.* ECF No. 96-1 at 15, 25, 58; *see also* Ex. A (Decl. of Diane Auer Jones ¶¶ 7(e), 7(g), 7(i)-7(*l*)). In fact, the Percentage Approval Packages (for which Defendants do claim the deliberative-process privilege, *see* entries 632-35) are nothing more than emails transmitting drafts of the Partial Relief Approval Memoranda (for which

9

Defendants do not, *see* entries 9-24).  *See Sakamoto*, 443 F. Supp. 2d at 1191 (explaining that predecisional documents include "draft documents").  Similarly, the "Deliberative Process Materials" (entries 126, 144, 180, 200, and 346) are agency emails and documents (some involving attorneys) that pertain to the 2017 partial relief methodology but predate its announcement (let alone any final decisions awarding partial relief), and that deliberate over and make recommendations regarding the processing of claims under that then-not-yet-final methodology. The public disclosure of these documents would expose the Department's decision-making process, which would chill open and honest deliberation within the agency and thereby undermine the Department's ability to perform its functions.  *See* Ex. A (Jones Decl. ¶ 8).

Because these documents are predecisional and deliberative, they do not reflect the "final action and rationale" of the agency, as Plaintiffs incorrectly contend, *see Cal.* ECF No. 134 at 4.[5] Indeed, in the Court's December 27 Order, it held that four Department legal memoranda — which Plaintiffs previously challenged and which share similar characteristics with those challenged here — are predecisional and deliberative because "[t]he very nature of the documents expose the decision-making process of the Department, as either the Office of General Counsel or Borrower Defense Unit wrote the memoranda as support for recommendations to the then-Undersecretary Mitchell about the proposed relief for Corinthian borrowers."  *Cal.* ECF No. 105 at 10.

**B.     The Attorney-Client Privilege Protects Entries 2, 9-24, 189, 307, and 632-35**

The attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures."  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (citation omitted).  The party asserting the attorney-client privilege "has the burden of "mak[ing] a *prima facie* showing that the privilege protects the information [that] the party intends to withhold," and can meet that burden by "demonstrat[ing] that its documents adhere to the essential elements of

---

[5]      To the extent Plaintiffs claim that Defendants' predecisional and deliberative documents reflect final agency action to support their argument that a "working law exception" applies, Defendants address that argument below.  *See infra* Part II.A.

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

the attorney-client privilege adopted by this court." *Id.* at 1070-71. This demonstration is generally accomplished by the submission of a privilege log that identifies:

> (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.

*Id.* at 1071 (citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989).)  If necessary, the party asserting the privilege may submit affidavits to address "[w]hatever questions the . . . log might leave open." *Id.*

### 1.   The Menashi Memorandum (Entry 307) and the January 19, 2017 Memorandum (Entry 189)

Defendants have made a *prima facie* showing that the Menashi Memorandum and the January 19, 2017 Memorandum, are protected by the attorney-client privilege, and Plaintiffs do not claim otherwise, *see Cal.* ECF No. 134 at 12-16.  For the Menashi Memorandum, Defendants' privilege log states that it is a legal document drafted by "OGC" attorney Steven Menashi (the agency's then-Acting General Counsel), "regarding [the] legal basis for borrower defense relief for certain" borrower defense claims by Corinthian students and which was "prepared to facilitate pre-decisional deliberative discussion" regarding that topic.  *See Cal.* ECF No. 96-1 at 25. Plaintiffs are also aware that the Menashi Memorandum is dated December 14, 2017, and was sent from Menashi through another Department attorney to James Manning, then-acting Undersecretary of the Department.  *See Cal.* ECF No. 104-4.  Finally, Defendants have never authorized any Department employee to provide this confidential memorandum to anyone outside of the Department.  *See Cal.* ECF No. 118-2 (Harding Decl. ¶¶ 8-14).

As for the January 19, 2017 memo, Defendants' privilege log states that the document was authored by a Department attorney, and concerns the "[l]egal bases for certain types of borrower defense claims." *Cal.* ECF No. 96-1 at 15.  Moreover, Plaintiffs are aware of the document's date, its title, and that it was sent to the Department's Borrower Defense Unit.  *Cal.* ECF No. 134 at 1. The Department has maintained the confidentiality of each of the 28 documents Plaintiffs challenge, including the January 19, 2017 Memorandum.  *See* Ex. A (Jones Decl. ¶ 5).

11

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

2.      The May 4, 2017 Memorandum (Entry 2) and the Partial Relief Approval Memoranda (Entries  9-24)

Defendants have also made a *prima facie* showing that the May 4, 2017 and Partial Relief Approval Memoranda are protected by the attorney-client privilege to the extent they are redacted, and, here too, Plaintiffs do not claim otherwise.  *See Cal.* ECF No. 134 at 16-17.  For each of these 17 documents, Defendants' privilege log states the title, author, recipient, and date of the document, and describes the nature of the OGC legal advice discussed in the document.  *See Cal.* ECF No. 96-1 at 1-3.  The information necessary to establish the attorney-client privileged nature of these documents also exists in the administrative record, which contains versions of these documents that are only partially redacted to properly withhold only privileged information, not "targeted to conceal" as Plaintiffs pejoratively claim, *see Cal.* ECF No. 134 at 17.  As Plaintiffs observe, the redactions withhold language relating to "'recommendations on how to resolve the pending claims,'" the Department's "rationale for approving partial relief," and other legal and deliberative matters.  *Id.* at 16-17.  The Department has maintained the confidentiality of the redacted portions of these documents.  *See* Ex. A (Jones Decl. ¶ 5).

3.      The Percentage Approval Packages (Entries 632-35)

Finally, Defendants have also made a *prima facie* showing that the Percentage Approval Packages are attorney-client privileged.[6]  As the privilege log states, each of these four documents is an email from a Borrower Defense Unit attorney to an attorney from the Department's Office of General Counsel and to the Department's then-head of the Office of Federal Student Aid.  *Cal.* ECF No. 96-1 at 58.  As the log further describes, each email transmits a memorandum recommending approval of a specified amount of relief for certain borrower defense claims, among other attachments.  *See Cal.* ECF No. 96-1 at 58.  Finally, the Department has maintained the confidentiality of these documents.  *See* Ex. A (Jones Decl. ¶ 5).

---

[6]      As Defendants explained to Plaintiffs in an email dated April 8, 2020, Defendants "inadvertently asserted only the deliberative process privilege over entry 632 during the press of business completing the privilege log and on [an] expedited timeline.  The Department also asserts the Attorney-Client Privilege and Work-Product Privilege over entry 632 for the reasons described on the log, just as it has for entries 633, 634, and 635."  Ex. B (April 8, 2020 email); *see also* Ex. A (Jones Decl. ¶¶ 10-11).

On April 8, 2020, Defendants responded by email with detailed answers to Plaintiffs' nine multi-part questions regarding these and the other documents they now challenge.  *See* Ex. B.  As Plaintiffs' note, Defendants provided additional information about the Percentage Approval Packages, including that attached to each logged email was "a list of borrowers receiving partial relief at the specified percentage and a draft of a notice that would be sent to those borrowers," in addition to the memorandum recommending approval of that relief, which is "addressed from Julian Schmoke to Jim Manning and [is] undated."  *Cal.* ECF No. 134 at 18 n.14.  Defendants' answers also reiterated the log's representation that these entries are "all emails . . . that relate to different groups of borrowers whose claims were adjudicated at different times and who all received some level of partial relief," and that the "privileges asserted in each entry on the Department's privilege log . . . are asserted for every document described in that entry, including any described attachments to the entry's primary document."  Ex. B (April 8, 2020 email).

The Department therefore has provided more information than even the Ninth Circuit requires, *see In re Grand Jury Investigation*, 974 F.2d at 1071, despite Plaintiffs' incorrect claim that Defendants must also "fully explain how these documents were used," *see Cal.* ECF No. 134 at 17.  In light of the information Defendants have provided in their log and by email, it is unclear why Plaintiffs claim to need more information on issues such as whether the log entries describe "just memoranda" or also "cover emails"; the identities of the "recipients, authors, dates, subjects, [and] contents" of the documents; and whether the Department's "privilege claims apply to each separate document[]," *id.* at 18.  Defendants have met their burden.

## C.    The Work-Product Doctrine Protects Entries 189, 307, and 632-35

The work-product doctrine is an immunity protecting, from discovery, documents and tangible things prepared by a party or its representative in anticipation of litigation.  Fed. R. Civ. P. 26(c)(3); *Admiral Ins. Co. v. U.S. Dist. Court, Dist. of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989).  This protection provides absolute immunity for "opinion" work product, *i.e.*, documents which reflect an attorney's mental impressions, conclusions, opinions, or legal theories; and a qualified immunity for all other non-opinion work product.  *Hickman v. Taylor*, 329 U.S. 495, 508, 511-13 (1947).  "[T]he degree to which counsel is involved in creating a document bears directly

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1    on whether the document was prepared in anticipation of litigation, because attorneys are the ones

2    who actually litigate cases, and whether or not a company involves [an] attorney in creating a

3    document is a telling indication about whether the document was prepared in anticipation of

4    litigation." *Phoenix Techs. Ltd.*, *v. Vmware, Inc.*, 195 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016)

5    (citation omitted).   The party asserting the work-product privilege can meet its burden by

6    "submitting affidavits showing that certain facts exist to support the work product rule, or by

7    providing a privilege log describing the documents the proponent claims to be protected." *Baxter*

8    *Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. 07-cv-1359, 2008 WL 5214330, at

9    *3 (N.D. Cal. Dec. 12, 2008).

10             1.    <u>The Menashi Memorandum (Entry 307) and the January 19, 2017</u>
<u>Memorandum (Entry 189)</u>

11

12        Plaintiffs do not contest that Defendants have met their *prima facie* burden for establishing

13    the that the work-product doctrine applies to the Menashi Memorandum (entry 307) and the

14    January 19, 2017 Memorandum (entry 189), *see* Cal. ECF No. 134 at 12-16, nor could they.   For

15    the Menashi Memorandum, Defendants' privilege log states that this document was authored the

16    Department's then-Acting General Counsel, describes the "[l]egal basis for borrower defense relief

17    for certain [Corinthian] borrowers," and was "prepared to facilitate [a] pre-decisional deliberative

18    discussion" on that topic.   *Cal.* ECF No. 96-1 at 25.   Similarly, the January 19, 2017 Memorandum

19    was also authored by a Department attorney, and also provided "OGC's legal opinion regarding

20    [the] Borrower Defense Unit's recommendations for adjudicating certain types of borrower

21    defense claims." *Id.* at 15.   These memoranda were prepared in anticipation of litigation given

22    that it was reasonable to expect potential APA litigation (such as the instant cases) challenging the

23    Department's borrower defense decisions.   *See* Ex. A (Jones Decl. ¶ 11); *see also ACLU of N.*

24    *California v. DOJ*, 880 F.3d 473, 487 (9th Cir. 2018) ("Like attorneys preparing for a specific

25    case, agency attorneys anticipating potentially recurring legal issues must be free to work with a

26    certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.").

27

28

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

2.     The Percentage Approval Packages (Entries 632-35)

Defendants have also met their burden of establishing that the Percentage Approval Packages are protected by the work-product doctrine, and Plaintiffs do not seriously claim otherwise.[7]  The privilege log demonstrates that each email was sent by a Department attorney. *Cal.* ECF No. 96-1 at 58.  The log description states that each email transmits a "memo prepared by [Borrower Defense Unit] attorneys" recommending that the agency approve claims by certain borrowers, who are identified in an attached list.  *Id.*; *see also* Ex. A (Jones Decl. ¶¶ 10(e)-10(h)); Ex. B.  These memoranda, and their cover emails, were prepared in anticipation of litigation given that it was reasonable to expect potential APA litigation (such as the instant cases) challenging the Department's borrower defense decisions.  *See* Ex. A (Jones Decl. ¶ 11).

## II.     PLAINTIFFS HAVE FAILED TO ESTABLISH THAT WAIVER OR ANY OTHER EXCEPTIONS TO DEFENDANTS' PRIVILEGES APPLY

While Defendants have satisfied their burden of establishing the applicability of the privileges they have asserted, Plaintiffs have failed to carry their burden of proving that a privilege for any particular document was waived or does not otherwise apply due to an alleged privilege exception.  *See, e.g.*, *Elec. Frontier Found. v. DOJ*, 890 F. Supp. 2d 35, 46-47 (D.D.C. 2012) ("[I]t is the plaintiff, not the agency, who carries the burden of producing at least some evidence that the deliberative process privilege has been waived."); *In re Convergent Technologies Second Half 1984 Sec. Litig.*, 122 F.R.D. 555, 565 (N.D. Cal. 1988) ("[T]he party asserting waiver [of work-product immunity] has the burden of proving the facts necessary to support the finding."); *Guidiville Rancheria of California v. United States*, No. 12-CV-1326 YGR, 2013 WL 6571945, at *5 (N.D. Cal. Dec. 13, 2013) ("[W]here an opposing party asserts that the [attorney-client] privilege has been waived, that party shares a burden of production to support waiver," given the

---

[7]     Although Plaintiffs assert that the Department failed to "meet its burden of demonstrating that the [Percentage Approval Packages] are shielded by valid claims of the attorney-client privilege or the work-product doctrine," *see* ECF No. 134 at 18, their subsequent arguments attempting to support this assertion all relate solely to the attorney-client privilege, *id.* at 18-19, which Defendants addressed above.

"conundrum" that "the only way a party asserting the privilege can establish non-waiver is by proving a negative, *i.e.*, disproving any and every possible basis for waiver").

### A.   Plaintiffs Have Not Established that the Working-Law Exception Breaches Defendants' Privilege Assertions

In the context of FOIA Exemption 5, the Ninth Circuit has recognized a "'working law' exception" applying "only to documents that would otherwise be exempt under the deliberative process privilege." *ACLU*, 880 F.3d at 489.  The exception "places a boundary on the deliberative process privilege, requiring disclosure of 'opinions and interpretations which embody the agency's effective law and policy' and 'have the force and effect of law.'"  *Id.* at 490 (quoting *NLRB v. Sear, Roebuck & Co.*, 421 U.S. 132, 153 (1975)).

The working-law exception is thus inapplicable to the extent Defendants' legal memoranda are covered by the attorney-client privilege or work-product doctrine (entries 189, 307, 632-35) which, as discussed above, they are.  *See New York Times Co. v. DOJ*, 282 F. Supp. 3d 234, 241 n.2 (D.D.C. 2017) (stating that it is "aware of no case that has ever applied the 'working law' exception to abrogate the attorney-client privilege rather than the deliberative process privilege"). Plaintiffs rely heavily upon out-of-circuit case law to argue otherwise even as they acknowledge that the Ninth Circuit has squarely held that "'the premises underlying the working law exception have no application in the attorney work-product context.'" *Cal.* ECF No. 134 at 15 (quoting *ACLU*, 880 F.3d at 489).  Plaintiffs cite no case applying the working-law exception to override the attorney-client privilege within this Circuit, and Defendants are aware of no such case.

Where the working-law exception applies, it does not require the disclosure of "legal memoranda that concern the advisability of a particular policy, but do not authoritatively state or determine the agency's policy." *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 8 (D.C. Cir. 2014). Thus, even against "working law" challenges, "documents generated by legal counsel within agencies to advise more senior officials regarding a decision to be made by the latter have regularly been found subject to the deliberative process privilege." *Judicial Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 270 (D.D.C. 2014).

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

The documents over which Defendants have asserted the deliberative-process, attorney-client, and work-product protections are precisely these types of documents.  *See supra* Part I.A. Indeed, Plaintiffs do not claim that the "Deliberative Process Materials" (entries 126, 144, 180, 200, and 346) or the May 4, 2017 Memo (entry 2) should be disclosed under the working-law exception.  *See Cal.* ECF No. 16-17. 19-21.  They nevertheless maintain that the Menashi Memorandum (entry 307), the January 19, 2017 Memorandum (entry 189), and the Percentage Approval Packages (entries 632-35) qualify as working law, *see Cal.* ECF No. 134 at 15-17, even though those documents consist of drafts and intra-agency memoranda from attorneys making recommendations to Department decision-makers, *see supra* Part I.A.

Plaintiffs assert that these documents should nevertheless be considered "working law" because the Department allegedly adopted or incorporated them by reference into its policy, but Plaintiffs come nowhere near satisfying the showing required by the cases they rely upon.  *See Cal.* ECF No. 134 at 15.  For instance, in *National Council of La Raza v. DOJ*, the Second Circuit held that "there must be *evidence* that an agency has actually adopted or incorporated by reference the document at issue; mere speculation will not suffice."  411 F.3d 350, 359 (2d Cir. 2005) (emphasis added) (finding sufficient evidence where the agency had "repeatedly invoked," in public statements, the document in question "to assure those outside of the agency that its policy was lawful"); *see also Judicial Watch, Inc. v. DOD*, 847 F.3d 735, 739 (D.C. Cir. 2017) ("To adopt a deliberative document . . . the agency must make an 'express' choice to use a deliberative document as a source of agency guidance.").

Here, Plaintiffs offer nothing more than *ipse dixit* and their speculation that the Department adopted the Menashi Memorandum, the January 19, 2017 Memorandum, and the Percentage Approval Packages.  *See, e.g.*, *Cal.* ECF No. 134 at 5 (asserting that adoption is "apparent from the documents and context"), 10 (contending that some of the documents "appear to represent the final view of the agency").  Plaintiffs point to nothing that constitutes *evidence* of *express* adoption akin to an agency "repeatedly invok[ing]" the documents in question "to assure those outside of the agency that its policy was lawful." *La Raza*, 411 F.3d at 359.  Even assuming there is a "Partial Relief Rule" that "is obviously based on the analysis and reasoning of the Menashi Memorandum,"

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

as Plaintiffs emphasize, *see Cal.* ECF No. 134 at 16, that alone demonstrates, at most, that an "agency employee" may have "silently 'carr[ied] out' the memo's recommended course of action," which is not enough to show express adoption. *Judicial Watch*, 847 F.3d at 739.[8]

**B.**     **Plaintiffs Have Not Established that Their Alleged Need for Defendants' Documents Overrides the Deliberative-Process Privilege**

Once the government has established that the deliberative-process privilege applies by showing that documents are deliberative and predecisional, the deliberative-process privilege can be overcome, but only if the party seeking the documents can show that the "need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC v. Warner Commc'ns, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984); *see also Redlands Soccer Club, Inc. v. Dep't of the Army*, 55 F.3d 827, 854 (3d Cir. 1995) ("The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest."). In determining whether a litigant has met their burden, the Court may consider:

> '1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions[;]' . . . (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

*Cal.* ECF No. 105 at 10-11 (quoting *Warner*, 742 F.2d at 1161, and citing *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003)).

---

[8]     The same is true for Defendants' acknowledgement that some of the documents Plaintiffs challenge fall within the six categories of documents that Defendants determined were not publicly released in response to a FOIA request. *See Cal.* ECF No. 134 at 11-12, 16. During the meet-and-confer process, California described its six categories as those that "may identify highly relevant documents" from the privilege log. *See Cal.* ECF No. 107 at 2, ¶ 6. Now, California describes those categories as identifying documents that are *per se* "not deliberative" and "constitut[ing] the agency's working law." *Cal.* ECF No. 134 at 16. Putting aside California's self-serving characterization of these documents, the mere fact that a document, for example, summarizes findings or legal bases that were later employed by the Department does not, on its own, demonstrate that the document lost its deliberative character via express adoption, despite Plaintiffs' attempt to equate the two. *See Judicial Watch*, 847 F.3d at 739 (stating that "vague or equivocal statements implying that a position presented in a deliberative document has merit" are insufficient to show express adoption).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, plaintiffs do not claim that their need overrides the government's interest in non-disclosure of the Percentage Approval Packages (entries 632-35) and the May 4, 2017 Memo (entry 2).  *See Cal.* ECF 134 at 16-19.  Although Plaintiffs do so claim as to the Menashi Memorandum (entry 307), the January 19, 2017 Memorandum (entry 189), and the Deliberative Process Materials (entries 126, 144, 180, 200, and 346), Plaintiffs have not made a sufficient showing under the eight *Warner-North Pacifica* factors to justify disclosures that will harm the Department's decisionmaking in the future.  At most, only two of the eight factors weigh in favor of disclosure,[9] while the other six all weigh against disclosure or are neutral.

### 1.   Plaintiffs Have Not Demonstrated that Other Evidence Is Not Available

Far from showing a lack of other evidence, Plaintiffs' declarations admit the availability of other evidence and otherwise fail to satisfy their burden.  In this litigation, Plaintiffs allege that the Department created a "rule" through various informal means, but the actual agency actions they challenge are the Department's decisions, as implemented in its adjudication of borrower defense claims, to award Corinthian JPR claimants less than the "full relief" to which California believes such borrowers are entitled.  The Record is thus appropriately limited to the materials the Department's decision-makers considered in determining the measure of relief to award Corinthian JPR claimants — not any document, that would, in Plaintiffs' conception, "explain the development of the legal policy at issue in this case."  *Cal.* ECF No. 66 at 7.

The Department's administrative record includes these final agency decisions, *see* AR 1652-3347, as well as the non-privileged materials that the agency considered, directly or indirectly, in developing the partial relief methodology that Plaintiffs challenge in this lawsuit. Indeed, the declaration submitted by the *Manriquez* Plaintiffs concedes that "the Partial Relief Approval Memoranda (Privilege Log Entry Nos. 9-24)," appear in the Record and "explain E[D]'s recommendations concerning relief under the Partial-Relief Rule."  *Cal.* ECF No. 134-3 at 2, ¶ 12. The Partial Relief Approval Memoranda are subject only to relatively minor privacy and attorney-client privilege redactions.  *See* AR 1652-2113.  The administrative record also includes a

---

[9]    Defendants do not dispute that the documents at issue are relevant (factor (1)), *see supra* note 7, and that the issues in the case are serious (factor (6)).

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

memorandum explaining the operation of the 2017 partial relief methodology, *see* AR 136-183, and agency declarations explaining the Department's basis for adopting that methodology, *see* AR 1431-1651, *see also Manriquez* ECF Nos. 42-1 to 42-4.  Yet in the course of claiming that other evidence is unavailable, Plaintiffs' declarations do not otherwise address the Partial Relief Approval Memoranda or the additional documents in the administrative record reflecting the Department's final decisions granting and denying both full relief and partial relief to borrower defense applicants from 2015 through 2018, including its development of the 2017 relief methodology.  *See North Pacifica*, 274 F. Supp. 2d at 1125 (stating that "[t]he Court recognizes that there is an administrative record and that the existence of this record is significant" when analyzing the "availability of other evidence" factor).

Instead, Plaintiffs' declarations state that Plaintiffs would like access to unredacted versions of every document bearing on the various aspects of their theory of the case, *Cal.* ECF No. 134-3, at 2, ¶¶ 10-13, and that they "believe[]" that no other documents in the record "meaningfully and accurately" reflect the agency's decisionmaking other than the documents they have selected.  *See Cal.* ECF No. 134-2 at 3, ¶ 15.  But Plaintiffs' apparent belief that the other evidence in the record reflecting the agency's decisionmaking is not meaningful and is incomplete does not constitute a showing that other evidence is *unavailable*.  Allowing a plaintiff to complete an administrative record based on nothing more than its subjective belief that other (predecisional, deliberative) documents would be more helpful in proving its case would eviscerate not only the deliberative-process privilege but also standard principles of APA review.  *See, e.g.*, *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (under APA, "absent a showing of bad faith or improper behavior, agency deliberations not part of the record are deemed immaterial" (citation omitted)).

### 2.    Plaintiffs Have Not Demonstrated that the Government's Role in the Litigation Justifies Disclosure

Plaintiffs put forth no specific argument relating to the "government role" factor.  Courts, including the Ninth Circuit, have found that this factor weighs in favor of disclosure not merely where the government is a litigant, but where the government's particular actions in the case or its facts undermine the usual justifications for according deliberative-process protection to

20

government decisionmaking.   For example, in *Warner*, the Ninth Circuit found that the "government role" factor did not weigh in favor of disclosure where "the defendants have presented no evidence of bad faith or misconduct on the part of the [agency]" suggesting that it had used the deliberative-process privilege as a sword and a shield.  742 F.2d at 1162 (concluding that "the district court abused its discretion in ordering the production of the memoranda").  Plaintiffs have made no such allegations about Defendants' privilege assertions here.  Similarly, in *North Pacifica*, the district court found that the "government role" factor weighed in favor of disclosure because the plaintiff's equal protection and due process claims put the government's "motive and intent" squarely at issue in the litigation, in which case "it makes no sense to permit the government to use the privilege as a shield."  274 F. Supp. 2d at 1120, 1124 (citation omitted).

In contrast here, Plaintiffs' APA claims do not purport to put the motives and intent of individual Department decisionmakers or other actors at issue; indeed, under the APA "it is "not the function of the court to probe the mental processes" of the agency, *Morgan v. United States*, 304 U.S. 1, 18 (1938), and an "agency's action must be upheld, if at all, on the basis articulated by the agency itself," *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *see also Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993) (distinguishing between documents that must be included in an AR and documents concerning "the internal deliberative processes of the agency [and] the mental processes of individual agency members").

### 3.   Plaintiffs Have Failed to Demonstrate that Disclosure Will Not Hinder Agency Decisionmaking

As the Ninth Circuit in *Warner* explained, the compelled disclosure of deliberative memoranda can "injure[] the quality of agency decisions," by "chill[ing] frank discussion and deliberation in the future among those responsible for making governmental decisions," and by "encouag[ing] the [agency] to have deliberative reports and recommendations prepared only by those [advisors] who will draw the conclusions sought by the [agency]."  742 F.2d at 1162.  Here, as explained above, disclosure of Defendants' predecisional and deliberative documents would harm the Department's ability to perform its functions by exposing its decisionmaking process.

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1   *See* Ex. A (Jones Decl. ¶ 8).  Although, as Plaintiffs point out, *Cal.* ECF No. 134 at 13, the Menashi

2   Memorandum is already in the public record as a result of an unauthorized leak, the same is not

3   true for 11 of the other 12 predecisional and deliberative documents Plaintiffs seek.  Plaintiffs put

4   forth no argument that disclosure of these documents would not hinder agency decisionmaking.

5   As for the Menashi Memorandum, Congress's unauthorized public release of that document may

6   have already injured the Department's decisionmaking, and the Court should not compound that

7   injury, reward that unauthorized disclosure, and incentivize future unauthorized disclosures, by

8   adding the document to the administrative record.  Such a result would effectively allow two

9   Members of Congress who disagree with the Department's policy positions to injure the agency's

10  ability to defend those positions in Court by effecting the waiver of its asserted privileges.  *See*

11  *also Cal.* ECF No. 118-1 at 18-19 & n.14.

12       4.   Plaintiffs Have Not Demonstrated that the Interest in Accurate Judicial Fact
             Finding Justifies Disclosure

13       Even if it were true that the mental impressions of individual agency actors contained in

14  the documents Plaintiffs seek "are material to the merits" and necessary for "accurate fact-finding"

15  in this case, as Plaintiffs assert, *Cal.* ECF No. 134 at 5, the same could be said of any document

16  over which an agency asserts a valid claim of the deliberative-process privilege.  *See North*

17  *Pacifica*, 274 F. Supp. 2d at 1124 ("In every case, the desirability of accurate fact finding weighs

18  in favor of disclosure.").  Recognizing this truism, the *North Pacifica* court found that this factor

19  weighed in favor of disclosure only where "the interest in accurate judicial fact finding is

20  *heightened*" because the plaintiff's equal protection claims put the government's motive and intent

21  at issue.  *Id.*  Plaintiffs do not claim any similarly "heightened" need that could override the

22  government's counterbalanced interest in non-disclosure.  Indeed, as explained above and in prior

23  briefing, the opposite is true because Plaintiffs bring suit under the APA, where the reasonableness

24  of agency action is assessed on the basis of the agency's stated reasons and "the actual subjective

25  motivation of agency decisionmakers is immaterial as a matter of law."  *In re Subpoena Duces*

26  *Tecum*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998).

27

28

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 5. Plaintiffs Do Not Claim Governmental Misconduct or a Federal Interest in the Enforcement of Federal Law

Plaintiffs assert no argument regarding the seventh and eighth factors, and so those factors also fail to help Plaintiffs' carry their burden of showing that their alleged need "override[s]" the deliberative-process privilege. *Warner*, 742 F.2d at 1161.

 **C. Plaintiffs Have Not Established that Defendants Waived the Attorney-Client Privilege or Work-Product Immunity for the Challenged Documents**

The public disclosure of a document protected by the attorney-client privilege or work-product immunity waives those protections only where the party asserting the privileges *voluntarily* disclosed the document. *See, e.g.*, *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *In re Convergent Tech. Second Half 1984 Sec. Litig.*, 122 F.R.D. at 565 ("Waiver requires a knowing and voluntary relinquishment of a right.").

Plaintiffs do not claim that Defendants publicly disclosed any privileged information from the 28 documents they challenge in response to a FOIA request. *See also supra* p. 6. They also do not allege that Defendants waived the attorney-client privilege or work-product immunity for the May 4, 2017 Memorandum (entry 2), the Partial Relief Approval Memoranda (entries 9-24), or the Percentage Approval Packages (entries 632-35). *See Cal.* ECF No. 134 at 16-19.

For the following three reasons, Defendants also did not waive the attorney-client privilege or work-product immunity for the Menashi Memorandum or the January 19, 2017 Memorandum when Members of Congress publicly released a leaked, unredacted version of the Menashi Memorandum, as Plaintiffs contend, *see Cal.* ECF No. 134 at 13-16.[10]

***First***, Defendants did not voluntarily provide Congress or any other third party with the Menashi Memorandum, which was entered into the record after an unauthorized leak. In contrast to a voluntary disclosure that waives a privilege, "when there has been an involuntary disclosure, the privilege will be preserved if the privilege holder has made efforts 'reasonably designed' to

---

[10] These three reasons are fully detailed in Defendants' Proposed Motion for Partial Reconsideration of the Dec. 27, 2019 Order (Feb. 18, 2020), and its attachments, *Cal.* ECF Nos. 118-1 to 118-5, which Defendants incorporate herein by reference. As noted above, these arguments apply to the Menashi Memorandum to the same extent as the documents addressed in the Court's December 27, 2019 Order, and Defendants seek to preserve their argument that the documents be accorded the same treatment.

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

protect the privilege." *Gomez v. Vernon*, 255 F.3d 1118, 1131-32 (9th Cir. 2001). A federal agency has voluntarily disclosed privileged information only where an agency employee who is authorized to do so has made the disclosure. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 963 F. Supp. 2d 6, 16 n.3 (D.D.C. 2013).

Here, neither California's Notice informing the Court about the December 12 Congressional hearing, nor Plaintiffs' Joint Brief claims that Defendants voluntarily provided the Menashi Memorandum or any other document to Congress. *See Cal.* ECF Nos. 104, 134 at 13-15. Defendants in fact did not provide Congress with the unredacted Menashi Memorandum, do not know how Congress obtained it, did not make any knowing, intentional waiver of the privileges applicable to that document, and have thus concluded that the document must have been leaked without authorization, despite the reasonably designed measures the Department took to prevent such an occurrence.[11] *Cal.* ECF No. 118-1 at 13 n.12.

**Second**, just as a Department employee could not have waived the agency's privileges with an unauthorized disclosure, a third party such as Congress or Plaintiffs also could not have. *Cal.* ECF No. 118-1 at 16. At no time did Defendants authorize Congress or Plaintiffs to disclose the Menashi Memorandum. *See id.* at 13. Prior to the December 12 Congressional hearing, Defendants had repeatedly asserted all three privileges over the Menashi Memorandum and the January 19, 2017 Memorandum in their full privilege log. *See Cal.* ECF No. 96-1 (entries 105 (draft), 189, 307, and 315 (draft)). Both before and at the hearing, Defendants had no reasonable opportunity to object to Congress's release of the documents. *Id.* at 17. If an executive agency could be deemed to have waived privilege under these circumstances, it would raise serious public policy and separation of powers concerns. *Id.* at 19.

---

[11]     In any event, even if the Department had voluntarily provided the document to Congress it would not have waived any privileges. When Congress is seeking "privileged information in pursuit of its duties" to ensure "the proper functioning of government," the "disclosure to Congress in compliance with its request, including requests from its committees, does not waive the privilege." *In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, No. 81 C 7076, 1987 WL 20408, at *9 (N.D. Ill. Nov. 20, 1987) (citing *Murphy v. Dept. of the Army*, 613 F.2d 1151, 1155-56, 1158 (D.C. Cir. 1979) (rejecting plaintiff's attempt to equate "disclosure of information to Congress" with "disclosure to the whole world")).

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants also did not waive their privileges when Plaintiffs engaged in their own unauthorized disclosure of the unredacted Menashi Memorandum by filing it on the public docket in this case, as Plaintiffs' argue.  *See Cal.* ECF No. 134 at 14-15 (citing *Cal.* ECF No. 104). Plaintiffs' filing did not result in the public disclosure of the Menashi Memorandum given that, as Plaintiffs' acknowledge, the document had already been made public by Congress and various news sources as a result of the unauthorized leak.  *Id.* at 14 & n.13.  Defendants need not engage in a futile game of whack-a-mole to preserve its privileges, as Plaintiffs apparently demand, particularly when Defendants did in fact object to the Congressional disclosure that resulted in Plaintiffs' filing the next day.  *See Cal.* ECF No. 118-4.

*Third* and finally, because Congress's entry of the Menashi Memorandum into the hearing record did not waive the attorney-client or work-product privileges over that document, those privileges were also not waived for the January 19, 2017 Memorandum, which is referenced by the Menashi Memorandum, but which was not also entered into the hearing record.

But even if Defendants had waived its privileges for the Menashi Memorandum, the scope of the resulting waiver should be limited to communications containing the same information as was disclosed, and should not extend to all other Department communications merely on the same subject.  *See Cal.* ECF No. 118-1 at 19-20; *Murphy*, 613 F.2d at 1156 (explaining that implying broad agency waivers is contrary to public policy "encourage[ing] broad congressional access to governmental information" by making "executive agencies . . . more cautious in furnishing sensitive information to the legislative branch").

## CONCLUSION

For the foregoing reasons, the Court should uphold Defendants' challenged privilege assertions and deny Plaintiffs' joint motion to complete the administrative record.

DATED: May 4, 2020                              Respectfully submitted,

                                                JOSEPH H. HUNT
                                                Assistant Attorney General

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK

MARCIA BERMAN
Assistant Branch Director

*/s/  Kevin P. Hancock*
R. CHARLIE MERRITT (VA Bar # 89400)
KEVIN P. HANCOCK
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-3183 (phone)
(202) 616-8470 (fax)
kevin.p.hancock@usdoj.gov

*Counsel for Defendants*

Defendants' Opposition to Plaintiffs' Joint Brief Re: Completion of the Administrative Record
Nos. 3:17-cv-7106-SK; 3:17-cv-7210-SK