**Exhibit A**

**U.S. Department of Education**

**Office of Federal Student Aid**

**Eleventh Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. DeVos*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California**

**September 1, 2020**

## Introduction and Summary

Pursuant to the Court's Order of October 24, 2019, ECF No. 130, the U.S. Department of Education (the "Department") through its Federal Student Aid office ("FSA") submits its eleventh monthly status report regarding its attempts to comply with the preliminary injunction in this case, *see* ECF No. 60.  That injunction, as amended on June 19, 2018, ECF No. 70, and clarified on August 30, 2018, ECF No. 89, prevents the Department from collecting relevant student loan debts from members of the class that has been certified in this case.[1]  *See also* Order Granting Mot. for Class Cert., ECF No. 96.

On December 16, 2019, the Department completed the remediation of all known impacts to potential class members that had been identified in prior reports to this Court. Further, the Department is maintaining substantial compliance with the preliminary injunction by immediately placing newly identified potential class members in the appropriate repayment status to stop debt collection and maintaining potential class members in appropriate repayment status on an ongoing basis (e.g., forbearance).

The Department has continued sending borrower defense decision letters to certain borrowers as described in prior reports. To ensure that such borrowers who have been identified as potential class members in previous reports are kept in forbearance while federal loan servicers finish processing their adjudicated claims, the Department will continue to include these borrowers on the first tab of the attached spreadsheet as potential class members until their borrower defense claims are fully closed out and the changes to their federal loans are processed.

---

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction.  *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

As in prior reports, this report includes a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein.  For each potential class member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction.  Throughout the spreadsheet, "1" is used to answer "Yes," and "0" is used to answer "No."  The spreadsheet contains three sections.  The first section (pages 1 through 1143) lists each potential class member and then provides answers for the Court's first, second, and seventh questions.  The second section (pages 1144 through 1408) lists the subset of potential class members who were impacted by the Department's non-compliance.  For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions.  Finally, the third section (page 1409) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

The Department continues to take every reasonable effort to ensure compliance with the Court's injunction, including an ongoing process of monitoring and verifying borrower defense applications.

## 1. Defendants' progress toward identifying which of the 74,781 potential class members are class members

The potential class listed in the attachment currently consists of 76,394 borrowers, a net increase of 321 borrowers from the number (76,073) reported in the August 1, 2020 Compliance Report.  This change reflects the addition of 438 borrowers to the potential class and the removal of 117 borrowers from the class. The additions to the potential class were the result of activity such as new borrower defense claims received by FSA, newly opened cases that were previously incomplete (e.g., claims initiated by borrowers, but not fully documented with supporting

information or evidence), borrowers with only FFEL loans who recently consolidated into Direct

Loans, and FSA's ongoing data validation and verification efforts.  On the other hand,

contributing factors for the decrease include incomplete borrower defense applications,

borrowers with no federal loans left to discharge, and duplicate applications. As expected, the

number of potential class members will continue to be dynamic as new borrowers apply,

validation and verification continues, and notification of claims adjudications are processed and

released.

Of the 76,394 potential class members listed in the attachment, FSA has determined that

51,029 borrowers are confirmed class members (e.g., submitted a successful job placement rate

("JPR") claim against a Corinthian (CCI) school and have outstanding Direct Loans). That is a

net increase of 597 confirmed class members from last month's report (50,432 borrowers). These

confirmed class members are identified in the first section of the spreadsheet (pages 1 through

1143) and fall into two categories.  The first category consists of borrowers who asserted

Corinthian JPR claims that the Department adjudicated and awarded partial relief under the 2017

borrower defense relief methodology prior to the Court's injunction (approximately 15,000

borrowers). The second category consists of borrowers who asserted Corinthian JPR claims that

the Department has reviewed since the 2017 methodology was enjoined and has determined are

eligible for relief (approximately 37,000 borrowers).  Before the Department applies the new

methodology announced on December 10, 2019, to issue final decisions awarding partial relief to

any confirmed class member, it would seek relief from the Court from the preliminary injunction

to do so, consistent with the Court's orders.

FSA has determined that 21,950 of the 76,394 potential class members listed in the

attachment are no longer potential class members because they no longer have pending borrower

defense claims that potentially meet the criteria. This includes borrowers who have been adjudicated for 100% relief (578 borrowers); borrowers whose Corinthian JPR application has been determined ineligible because they did not attend the right program, did not attend during the right time period, or otherwise did not successfully fill out their application form (13,605 borrowers); and borrowers whose BD application was approved for a non-JPR claim (7,767 borrowers). As previously noted, FSA will keep these borrowers on the list of potential class members on tab 1 until their borrower defense claims have been fully processed by the servicers and their cases closed.

Finally, FSA continues to make progress determining the class status of the remaining 3,415 still unconfirmed potential class members (a decrease of 2,891 unconfirmed potential class members from last month's report). Based on initial adjudication determinations for the unconfirmed potential class members, FSA estimates that of the remaining unconfirmed potential class members:

- 21% will become confirmed class members (JPR claims approved for less than 100%),
- 67% will be determined to be ineligible for the class (49% do not assert a qualifying JPR claim but will be approved for a non-JPR claim; 17% deemed ineligible for borrower defense relief at all; and 1% approved for a JPR claim and will receive 100% relief), and
- 12% are pending adjudication and/or more case information is required.

As part of FSA's ongoing validation and verification process, FSA has identified 391 borrowers who had submitted borrower defense applications that related to multiple programs and/or contained multiple claims against CCI schools. These borrowers had been initially reviewed for non-JPR claims and were consequently labelled as ineligible class members in the previous monthly compliance report. After further review of these borrowers' borrower defense

claims, it was determined that the borrowers had also asserted a valid JPR claim and have

therefore been included in this month's compliance report as confirmed class members (if their

claim has already been adjudicated) or unconfirmed class members (pending adjudication of

their JPR claim).

### 2. The repayment status of each potential and confirmed class member

As stated in prior reports, the Department continues to maintain all identified potential

class members in forbearance, stopped collections or a similar repayment status, unless a

particular borrower has proactively opted out of that status.

The first section of the spreadsheet attachment provides the repayment status of each

potential class member.  For each potential class member not in forbearance or stopped

collection status, the spreadsheet indicates the reason why, such as being in an alternative status

that is similar to forbearance (e.g., a $0/month income-driven repayment plan or in-school

deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet

are defined in the third section of that spreadsheet.

### 3. Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored

FSA has continued its efforts to reduce the overcounting of impacts to potential class

members. Beginning a process it started in the March report, in April's report, FSA removed

those borrowers from the impacted lists whose only impacts occurred (1) prior to the date they

filed their BD application or (2) within the reasonable amount of time it takes for FSA to process the borrower defense application.[2]

FSA is continuing the process of confirming which borrowers in the impacted categories experienced debt collection activities caused by noncompliance with the injunction and identifying and removing those borrowers who only experienced debt collection activities unrelated to noncompliance with the injunction.

All 26,995 borrowers whom FSA has identified at some point as having been erroneously taken out of forbearance or stopped collections status are currently in the correct repayment status. This total number of impacted borrowers represents a net decrease of 1,057 borrowers since the August Report.

The main contributing factor to the decrease in the number of affected borrowers is, as mentioned above, that FSA is reducing the overcounting of impacts that occurred before a borrower became subject to the Court's injunction.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was in an erroneous payment status and whether the status has been corrected.

---

[2] As previously reported, this takes account of the time that it takes the borrower's loan servicer to initiate applicable borrower defense protections (i.e., place the borrower into forbearance or stopped collections). For example, the contracts FSA has with its non-default servicers require those servicers to process all borrower defense related forbearance requests within five (5) business days of receiving the request in the borrower defense system of record (CEMS). To account for this processing time, impacts that occurred five or fewer days after a borrower submitted a borrower defense application have been removed from this report. For defaulted borrowers, it can take FSA's loan servicer approximately three weeks to effectively cease involuntary collection efforts (e.g., wage garnishment or tax offset). The default servicer also has 5 business days to apply a "stop collections" tag to the borrower's accounts once they have been notified by the BD system of record. However, the default servicer must then notify the borrower's employer and/or the Department of the Treasury to cease the involuntary collections. Those stopped collection notifications are then transmitted in batches on a weekly basis to employers and Treasury. While Treasury acts immediately on these notifications, it can take the employers a couple of weeks to fully process and cease collection activity. Thus, FSA has started to remove involuntary collections that occurred 21 days or fewer after a borrower submitted a borrower defense application from the report. This process remains ongoing and will continue in future reports.

4.      **Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

FSA has identified 9,923 borrowers who made one or more voluntary payments, a net decrease of 337 borrowers since the August Report. The main factors contributing to the change are that FSA is continuing to reduce the overcounting of impacts that occurred before a borrower became subject to the Court's injunction, while some borrowers are continuing to voluntarily pay down their loans. FSA has issued refunds for these borrowers who made voluntary payments and who would not be potentially harmed by a refund.

As discussed in prior compliance Reports, the Department did not request that the U.S. Department of the Treasury process refunds for some of the potential class members identified at that time as having made voluntary payments because these borrowers appear to have made payments for reasons unrelated to the incorrect payment due notices they were sent, and so refunding these borrowers would lead to unintended consequences and potential financial harm. (*See* Nov. Report at 6-7 and Dec. Report at 10.) For example, during this period of national crisis where FSA has suspended billing for all Federally held student loans, any payments being submitted during this time are likely voluntarily and are not being automatically refunded.

Additionally, FSA has identified 133 borrowers who may have already been issued refunds for payments they made prior to the last Report, but who are still voluntarily making payments on their student loans. In light of these borrowers' decision to continue making payments, FSA has categorized those borrowers on the spreadsheet as "Borrower has submitted additional payments after CARES Act protections in place."

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower made one or more payments and refunds have been issued.

**5.     Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

FSA has initiated refunds for all involuntary payments made by the 873 borrowers it has identified as having been subjected to wage garnishment or tax offsets, a net decrease of 67 borrowers since the August Report. Again, the main contributing factor to the decrease in the number of affected borrowers is that FSA is reducing the overcounting impacts that occurred before a borrower became subject to the Court's injunction.

As part of FSA's ongoing validation and verification process, FSA has identified no confirmed or potential class members who were subject to involuntary collection this past month.

**6.     Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

FSA has initiated correction to the credit reports for all 3,576 borrowers who FSA has identified as having been subject to adverse credit reporting.  That number is a net decrease of 164 borrowers since the August Report. Again, the main contributing factor to the decrease in the number of affected borrowers is that FSA is reducing the overcounting of impacts that occurred before a borrower became subject to the Court's injunction.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was subject to adverse credit reporting and each false credit report has been corrected.

9

**7.    Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court**

FSA completed distribution of the court-approved notice to the members of the class as of December 31, 2019.  In order to prevent any borrower confusion, FSA did not send class notifications to those borrowers who received separate notice of claim adjudication on December 11, 2019, and therefore did not have pending borrower defense applications at the time the revised notices were sent.

For each potential and confirmed class member, the first section of the spreadsheet attachment (starting on page 1) indicates whether the borrower was sent the revised notice.

**8.    Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the StudentAid.gov website to include prominently placed links regarding this case on the website's home page (specifically in its "Announcement" and "Popular Topic" sections.)[3]  Additionally, highlighted and simplified language has been included on the linked webpage[4] within the website.  As previously reported, these improvements were made on October 21, 2019. The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing borrower defense telephone hotline at 1-855-279-6207, to include a targeted greeting, a dedicated menu option regarding the this case, and current targeted information for customer service

---

[3] https://studentaid.gov/

[4] https://studentaid.gov/announcements-events/corinthian#preliminary-injunction

representatives to answer general questions regarding this litigation, as well as the adjudication and litigation class member notifications disseminated in December.

**9.      Any other information relevant to the Defendants' compliance with the preliminary injunction**

The Department has and will continue to work closely with its servicers and private collection agencies to implement the student loan provisions of the CARES Act, oversee servicers' efforts and monitor progress, and make changes as events warrant.

The Department remains not only focused on remediating any harm to any and all borrowers that have been affected, but also on making strategic improvements to our operational program management and loan servicing oversight, control, and communication frameworks. The Department will continue its exhaustive efforts to verify, validate, and report on progress to ensure compliance with the terms of the Court's order and reestablish the trust and confidence of our borrowers and the public.