**Exhibit A**

# U.S. Department of Education

# Office of Federal Student Aid

# Fifteenth Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. DeVos*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California

**January 6, 2021**

## Introduction and Summary

Pursuant to the Court's Order of October 24, 2019, ECF No. 130, the U.S. Department of Education (the "Department") through its Federal Student Aid office ("FSA") submits its fifteenth monthly status report regarding its attempts to comply with the preliminary injunction in this case, *see* ECF No. 60.  That injunction, as amended on June 19, 2018, ECF No. 70, and clarified on August 30, 2018, ECF No. 89, prevents the Department from collecting relevant student loan debts from members of the class that has been certified in this case.[1]  *See also* Order Granting Mot. for Class Cert., ECF No. 96.

On December 16, 2019, the Department completed the remediation of all known impacts to potential class members that had been identified in prior reports to this Court. Further, the Department is maintaining substantial compliance with the preliminary injunction by immediately placing newly identified potential class members in the appropriate repayment status to stop debt collection and maintaining potential class members in appropriate repayment status on an ongoing basis (e.g., forbearance).

The Department has continued sending borrower defense decision letters to certain borrowers as described in prior reports. To ensure that such borrowers who have been identified as potential class members in previous reports are kept in forbearance while federal loan servicers finish processing their adjudicated claims, the Department will continue to include these borrowers on the first tab of the attached spreadsheet as potential class members until their borrower defense claims are fully closed out and the changes to their federal loans are processed.

---

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction.  *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

As in prior reports, this report includes a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein. For each potential class member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction. Throughout the spreadsheet, "1" is used to answer "Yes," and "0" is used to answer "No." The spreadsheet contains three sections. The first section (the first 949 pages) lists each potential class member and then provides answers for the Court's first, second, and seventh questions. The second section (pages 950 through 1216) lists the subset of potential class members who were impacted by the Department's non-compliance. For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions. Finally, the third section (page 1217) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

The Department continues to take every reasonable effort to ensure compliance with the Court's injunction, including an ongoing process of monitoring and verifying borrower defense applications.

1. **Defendants' progress toward identifying which of the 74,781 potential class members are class members**

The potential class listed in the attachment currently consists of 69,310 borrowers, a net decrease of 359 borrowers from the number (69,669) reported in the December 1, 2020 Compliance Report. This change reflects the addition of 526 borrowers to the potential class and the removal of 885 borrowers from the potential class. The additions to the potential class were the result of activity such as new borrower defense claims received by FSA, newly opened cases that were previously incomplete (e.g., claims initiated by borrowers, but not fully documented

with supporting information or evidence), borrowers with only FFEL loans who recently consolidated into Direct Loans, and FSA's ongoing data validation and verification efforts. On the other hand, contributing factors for the decrease include incomplete borrower defense applications, borrowers with no federal loans left to discharge, and duplicate applications. As expected, the number of potential class members will continue to be dynamic as new borrowers apply, validation and verification continues, and notification of claims adjudications are processed and released.

Of the 69,310 potential class members listed in the attachment, FSA has determined that 51,376 borrowers are confirmed class members (e.g., submitted a successful job placement rate ("JPR") claim against a Corinthian ("CCI") school and have outstanding Direct Loans). That is a net increase of 86 confirmed class members from last month's report (51,290 borrowers). These confirmed class members are identified in the first section of the spreadsheet and fall into two categories. The first category consists of borrowers who asserted Corinthian JPR claims that the Department adjudicated and awarded partial relief under the 2017 borrower defense relief methodology prior to the court's injunction (approximately 15,000 borrowers). The second category consists of borrowers who asserted Corinthian JPR claims that the Department has reviewed since the 2017 methodology was enjoined and has determined are eligible for relief (approximately 37,000 borrowers). Before the Department applies the new methodology announced on December 10, 2019, to issue final decisions awarding partial relief to any confirmed class member, it would seek relief from the Court from the preliminary injunction to do so, consistent with the Court's orders.

FSA has determined that 14,054 of the 69,310 potential class members listed in the attachment are no longer potential class members because they no longer have pending borrower

defense claims that potentially meet the criteria. This includes borrowers who have been adjudicated for 100% relief (620 borrowers); borrowers whose Corinthian JPR application has been determined ineligible because they did not attend the right program, did not attend during the right time period, or otherwise did not successfully fill out their application form (5,501 borrowers); and borrowers whose borrower defense application was approved for a non-JPR claim (7,933 borrowers). As previously noted, FSA will keep these borrowers on the list of potential class members on tab 1 until their borrower defense claims have been fully processed by the servicers and their cases closed.

Finally, FSA continues to make progress determining the class status of the remaining 3,880 still unconfirmed potential class members (an increase of 216 unconfirmed potential class members from last month's report). Based on initial adjudication determinations for the unconfirmed potential class members, FSA estimates that of the remaining unconfirmed potential class members:

- Approximately 22% will become confirmed class members JPR claims approved for less than 100%,
- Approximately 75% will be determined to be ineligible for the class (52% do not assert a qualifying JPR claim but will be approved for a non-JPR claim; 23% deemed ineligible for borrower defense relief at all; and less than 1% approved for a JPR claim and will receive 100% relief), and
- Approximately 3% are pending adjudication and/or more case information is required.

**2. The repayment status of each potential and confirmed class member**

As stated in prior reports, the Department continues to maintain all identified potential class members in forbearance, stopped collections or a similar repayment status, unless a particular borrower has proactively opted out of that status.

The first section of the spreadsheet attachment provides the repayment status of each potential class member. For each potential class member not in forbearance or stopped collection status, the spreadsheet indicates the reason why, such as being in an alternative status that is similar to forbearance (e.g., a $0/month income-driven repayment plan or in-school deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet are defined in the third section of that spreadsheet.

**3.     Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored**

FSA has continued its efforts to reduce the overcounting of impacts to potential class members. Beginning a process it started in the March report, in April's report, FSA removed those borrowers from the impacted lists whose only impacts occurred (1) prior to the date they filed their borrower defense application or (2) within the reasonable amount of time it takes for FSA to process the borrower defense application.[2]

---

[2] As previously reported, this takes account of the time that it takes the borrower's loan servicer to initiate applicable borrower defense protections (i.e., place the borrower into forbearance or stopped collections). For example, the contracts FSA has with its non-default servicers require those servicers to process all borrower defense related forbearance requests within five (5) business days of receiving the request in the borrower defense system of record (CEMS). To account for this processing time, impacts that occurred five or fewer days after a borrower submitted a borrower defense application have been removed from this report. For defaulted borrowers, it can take FSA's loan servicer approximately three weeks to effectively cease involuntary collection efforts (e.g., wage garnishment or tax offset). The default servicer also has 5 business days to apply a "stop collections" tag to the borrower's accounts once they have been notified by the borrower defense system of record. However, the default servicer must then notify the borrower's employer and/or the Department of the Treasury to cease the involuntary collections. Those stopped collection notifications are then transmitted in batches on a weekly basis to employers and Treasury. While

FSA is continuing the process of confirming which borrowers in the impacted categories experienced debt collection activities caused by noncompliance with the injunction and identifying and removing those borrowers who only experienced debt collection activities unrelated to noncompliance with the injunction.

All 27,112 borrowers whom FSA has identified at some point as having been erroneously taken out of forbearance or stopped collections status are currently in the correct repayment status. This total number of impacted borrowers represents a net increase of 98 borrowers since the December Report. The primary contributing factor for the net increase in the number of affected borrowers is FSA's ongoing validation and verification efforts, which have identified a small number of borrowers who were not previously reported as potential class members due to isolated issues, described below, and a small number of borrowers who were previously identified as confirmed or unconfirmed class members who were mistakenly sent notifications by their loan servicers. In each case, FSA has either corrected or directed the servicers to correct the issues. All of these borrowers are currently in the correct repayment status.

During FSA's validation and verification efforts, FSA identified 46 borrowers who were not previously flagged as potential Manriquez class members because they did not initially select a Corinthian school when they submitted their initial borrower defense applications. As a result, the Office of Postsecondary Education Identifier (OPEID #) associated with their initial borrower defense application were non-Corinthian schools. During the review and adjudication of the borrowers' applications, FSA identified the issues with the incorrect OPEIDs, corrected the

---

Treasury acts immediately on these notifications, it can take the employers a couple of weeks to fully process and cease collection activity. Thus, FSA has started to remove involuntary collections that occurred 21 days or fewer after a borrower submitted a borrower defense application from the report. This process remains ongoing and will continue in future reports.

borrowers' files with the appropriate Corinthian OPEIDs, and logged them in the borrower defense tracking system.

Additionally, during FSA's validation and verification efforts, FSA identified 11 borrowers whose social security numbers (SSN) were not correct or were missing in the borrower defense system. Without the proper SSN in the system, it appeared that these borrowers did not have any Direct Loans and therefore were not considered as potential class members in previous compliance reports.  FSA has updated and corrected each borrower's records and placed each borrower into the correct repayment status.

FSA has also identified seven borrowers who had either originally submitted incomplete borrower defense applications or had recently requested that their closed application be reopened (e.g., submitting additional evidence).  As a result, these borrowers were not considered as having a pending borrower defense application and were not included in previous compliance reports. None of the borrowers mentioned above have received a billing notice since February 2020.

The remaining borrowers were previously identified as confirmed or unconfirmed class members who were mistakenly sent billing notifications by FSA's loan servicers due to recent changes in the borrowers' status. For example, several borrowers who rehabilitated their defaulted loans received a billing notice as part of a welcome letter sent to them when they were transferred from the default loan servicer to their new non-default loan servicer. Several other borrowers were in a school deferment status and were automatically sent billing notices when the servicer was notified of an early withdrawal date. A pair of borrowers whose defaulted loans had been reinstated from a Total Permanent Disability (TPD) discharge received a billing notice when the default servicer sent them a letter reinstating their defaulted loans. Lastly, several

borrowers were mistakenly sent billing notices simply in error (e.g., one borrower was sent a billing notice saying their next payment was due April 2029 when their borrower defense forbearance was scheduled to end in the servicer's system). Many of these borrowers were immediately notified that they were in a borrower defense forbearance and to disregard the errant billing notices. FSA has instructed the servicers to notify the remaining borrowers that they are currently in a borrower defense forbearance and do not need to make payments.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was in an erroneous payment status and whether the status has been corrected.

**4.    Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

FSA has identified 10,080 borrowers who made one or more voluntary payments, the same number as the December Report.

As discussed in prior compliance Reports, the Department did not request that the U.S. Department of the Treasury process refunds for some of the potential class members identified at that time as having made voluntary payments because these borrowers appear to have made payments for reasons unrelated to the incorrect payment due notices they were sent, and so refunding these borrowers would lead to unintended consequences and potential financial harm. (*See* Nov. 2019 Report at 6-7 and Dec. 2019 Report at 10.) For example, during this period of national crisis, FSA has suspended billing for all Federally held student loans and therefore any borrowers still submitting payments during this time are doing so voluntarily and are not being refunded.

Additionally, FSA has identified 284 borrowers who may have already been issued refunds for payments they made prior to the last Report, but who are still voluntarily making payments on their student loans. In light of these borrowers' decision to continue making payments, FSA has categorized those borrowers on the spreadsheet as "Borrower has submitted additional payments after CARES Act protections in place."

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower made one or more payments and refunds have been issued.

**5. Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

FSA has initiated refunds for all involuntary payments made by the 877 borrowers it has identified as having been subjected to wage garnishment or tax offsets, a net increase of 4 borrowers from the December Report. These four borrowers were identified through FSA's ongoing validation and verification efforts and none of them have been subject to involuntary payments since April 2020. These borrowers were identified through the processes described above, and they were not initially flagged as potential class members because their applications either had the wrong OPEID school identifier in FSA's borrower defense system or an incorrect or missing SSN.

As part of FSA's ongoing validation and verification process, FSA has identified no confirmed or potential class members who were subject to involuntary collection this past month.

**6. Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

10

FSA has initiated correction to the credit reports for all 3,591 borrowers who FSA has identified as having been subject to adverse credit reporting.

That number represents a net increase of 16 since the December Report. These sixteen borrowers were identified through the processes described above, and they were not initially flagged as potential class members because their applications either had the wrong OPEID school identifier in FSA's borrower defense system or an incorrect or missing SSN which meant they were not initially flagged as a potential class members in previous compliance reports. None of these borrowers were subject to adverse credit reporting since February 2020.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was subject to adverse credit reporting and each false credit report has been corrected.

**7. Whether each potential and confirmed class member has received the revised notice of Defendants' noncompliance, to be approved by the Court**

FSA completed distribution of the court-approved notice to the members of the class as of December 31, 2019.  In order to prevent any borrower confusion, FSA did not send class notifications to those borrowers who received separate notice of claim adjudication on December 11, 2019, and therefore did not have pending borrower defense applications at the time the revised notices were sent.

For each potential and confirmed class member, the first section of the spreadsheet attachment (starting on page 1) indicates whether the borrower was sent the revised notice.

**8. Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the StudentAid.gov website to include prominently placed links regarding this case on the website's home page (specifically in its "Announcement" and "Popular Topic" sections.)[3]  Additionally, highlighted and simplified language has been included on the linked webpage[4] within the website.  As previously reported, these improvements were made on October 21, 2019. The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing borrower defense telephone hotline at 1-855-279-6207, to include a targeted greeting, a dedicated menu option regarding this case, and current targeted information for customer service representatives to answer general questions regarding this litigation, as well as the adjudication and litigation class member notifications disseminated in December.

**9.    Any other information relevant to the Defendants' compliance with the preliminary injunction**

The Department has and will continue to work closely with its servicers and private collection agencies to implement the student loan provisions of the CARES Act, oversee servicers' efforts and monitor progress, and make changes as events warrant.

The Department remains not only focused on remediating any harm to any and all borrowers that have been affected, but also on making strategic improvements to our operational program management and loan servicing oversight, control, and communication frameworks.

---

[3] https://studentaid.gov/

[4] https://studentaid.gov/announcements-events/corinthian#preliminary-injunction

The Department will continue its exhaustive efforts to verify, validate, and report on progress to ensure compliance with the terms of the Court's order and reestablish the trust and confidence of our borrowers and the public.