BRIAN D. NETTER
Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
STUART J. ROBINSON
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | No. 3:17-cv-7106-SK |
| MARTIN CALVILLO MANRIQUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF EDUCATION, et al., <br><br> Defendants. | No. 3:17-cv-7210-SK <br><br> **JOINT STATUS REPORT** |

The parties hereby submit the following status report in response to the Court's August 15, 2024 order.

As noted in prior reports, the U.S. Department of Education ("ED") announced, on June 1, 2022, a group discharge to cancel all remaining federal loans for 560,000 borrowers who attended any campus owned or operated by Corinthian from its founding in 1995 through its closure in April 2015 ("Corinthian Group Discharge"). *See* https://www.ed.gov/news/press-releases/education-department-approves-58-billion-group-discharge-cancel-all-remaining-loans-560000-borrowers-who-attended-corinthian-colleges. The announced action provides full relief, including discharge of remaining loan balances and refunds of amounts paid, to Corinthian borrowers regardless of whether any such borrower has filed a borrower defense application. ED began the process of effectuating the announced relief.

For the last two years, the parties in the related cases have jointly reported to the Court that they believe the Corinthian Group Discharge will resolve outstanding issues in these cases and have jointly requested that the Court continue to hold pending litigation deadlines in abeyance. Subsequently, based on ED confirming that the Corinthian Group Discharge includes "full relief" both for Corinthian borrowers who applied for borrower defense relief and for Corinthian borrowers who did not apply for borrower defense relief, the parties determined that a formal settlement agreement was not necessary and the parties have been working towards a negotiated dismissal of the above-referenced litigation in light of the Department's progress effectuating the Corinthian Group Discharge. *See* ECF No. 379 (*Calvillo Manriquez*); ECF No. 186 (*California*). ED has agreed to complete the Corinthian Group Discharge and provide periodic reporting on the progress of implementation to both class counsel and to California.

Implementation, however, is taking longer than anticipated.

As noted in the Joint Status Report filed March 18, 2024, discharge data in that report (which reported nearly 100% completion of Corinthian borrowers who applied for relief, and approximately 85% of Corinthian borrowers who did not apply for borrower-defense relief [ECF No. 199]) and data in prior Joint Status Reports was based on information reported to the Department by the servicers. Since March 18, 2024, the Department has worked to examine and

verify the status of the Corinthian discharges reported by the servicers by cross-referencing records reported in the National Student Loan Data System (NSLDS) and analyzing these records for indications about the status of these discharges. As of September 19, 2024, that analysis suggests the following information for borrowers determined to be eligible for relief as of July 25, 2022 (shortly after the announcement of the Corinthian Group Discharge was made):

|  | 9/19/2024 Analysis of NSLDS Data |
|---|---|
| **CCI Borrowers who applied** | 86% have had their loans discharged |
| **CCI Borrowers who did not apply** | 393,500 (75%) |

In addition, the Department has not been making significant progress on implementation of the Corinthian Group Discharge in the last several months for two main reasons: prioritization of effectuating relief in *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal.), and complications with consolidated loans.

The Department acknowledges that the progress on effectuating relief for Corinthian borrowers through the Corinthian Group Discharge has been slower than was anticipated when the Department first announced the discharge in June 2022. The Department's understanding of the rate of the progress, the way in which progress has been reported in this case, and its actual progress have all been impacted by *Sweet v. Cardona*, No. 3:19-cv-03674-WHA (N.D. Cal.).

In this case (as in *Sweet*), the Department has historically relied on servicer-provided data to track progress in effectuating loan discharges. As of a year ago, relying on servicer-provided data, the Department believed (and reported in this case) that nearly 100% of Corinthian borrowers who applied for borrower defense relief had their loans discharged and approximately 76% of borrowers who did not apply for relief had their loans discharged. *See* ECF 404. Thus, the Department believed that significant progress had been made toward effectuating the relief announced in the Corinthian Group Discharge. That determination changed based on information about data reporting in the *Sweet* litigation.

The parties in *Sweet* agreed in late June 2022 to settle that case, which also involved

providing full relief to a class of borrowers that submitted borrower-defense claims. The settlement agreement, which was granted final approval by the court in November 2022, required the Department and its servicers to discharge approximately 2.9 million loans of approximately 200,000 class members (as well as provide refunds and delete credit trade lines) by January 28, 2024, and to provide relief to other class members on a staggered schedule, the first deadline for which was July 28, 2024. In determining whether it had met its obligations with respect to the January 28, 2024 deadline, the Department realized that the way in which servicers were reporting completion of discharges did not account for the fact that many borrowers had consolidation loans, some of which were a mix of loans eligible for a *Sweet* discharge and some of which were not. In addition, a number of these borrowers had consolidated their loans multiple times. Although the original underlying direct school loans may have been discharged (and servicers reported those discharges as complete), portions of consolidated loans "up the chain" that were eligible for discharge had not yet been discharged. As a result, the rate of progress toward meeting the January 28, 2024 deadline in *Sweet* was not as great as the Department had previously understood.

Once the Department fully understood the reports from servicers regarding completed discharges, it concluded that it likewise lacked a complete picture of the progress of the Corinthian discharges. Thus, after additional investigation, while the Department believed (and reported) a year ago that nearly 100% of Corinthian borrowers who applied for borrower defense relief, and 85% of those who had not applied for relief, had their loans discharged, *see* ECF No. 404, by May 2, 2024 the Department learned that those numbers were closer to 85% and 71%, respectively.

The Department maintains that its realization that it had not met its obligations in *Sweet* has impacted more than just the way discharges are reported; according to the Department, it has also impacted the time and staff resources that servicers have been able to spend on discharging the loans made to borrowers attending Corinthian. As a result of the Department's failure to meet the January 28, 2024 *Sweet* deadline, the *Sweet* class—who are represented by the same counsel representing the *Manriquez* class here—asserted a material breach and moved to enforce the settlement agreement. The court in *Sweet* held a hearing on the plaintiffs' motion on April 24, 2024, and ultimately ordered the Department to effectuate full settlement relief by August 31,

2024, for those remaining borrowers who were entitled to, but had not received, such relief by the January 28, 2024 deadline. Additionally, the court ordered semi-monthly in-person meetings attended by the attorneys, representatives of the Department, servicers, and counsel for the servicers—the same servicers responsible for effectuating the Corinthian discharges. As a result, the Department maintains that its loan servicers have prioritized effectuating relief for the *Sweet* class members who were due relief by the ordered August 31, 2024 deadline. In the weeks since August 31, 2024, Department staff and servicers have devoted a significant amount of resources (both time and staff) to compiling—and verifying—complex data so that the Department could update the court in *Sweet* during the September 26, 2024 hearing concerning the Department's progress in meeting the August 31, 2024 deadline. Further, in late August, the *Sweet* plaintiffs asserted another material breach of the settlement agreement, this time concerning the group of class members who were due relief by July 28, 2024. The Department has spent additional time and resources over the last few weeks regarding a resolution of that breach, anticipating it would be addressed at the September 26, 2024 court hearing.

Because Department resources over the last several months have been devoted to meeting the August 31, 2024 *Sweet* deadline, progress concerning the Corinthian Group Discharges has slowed. However, the Department remains committed to effectuating relief for Corinthian borrowers as soon as possible.

In the next joint status report in this case, the Department will provide a further update as to the progress being made and, if able to do so, an expected approximate timeline for substantial completion of discharges and, where due, refunds.

In light of these updates from the Department, Plaintiffs have requested additional information from the Department, which the Department is currently compiling, and have requested to confer about the following items:

(1) Whether Secretary Cardona, in announcing the Corinthian Group Discharge, agreed that full relief, which includes discharge of remaining balances and refund of amounts paid on eligible loans, is the appropriate relief for Corinthian borrowers.

(2) Whether Secretary Cardona relinquished the right to change the Secretary's determination that borrowers who attended Corinthian Colleges are entitled to full relief and not partial relief. In other words, the Secretary gave up discretion to change the amount of relief appropriate for Corinthian borrowers under 34 C.F.R. § 685.206(c)(1). (This is material to the parties' agreement that a settlement agreement is not necessary and this case should be dismissed once ED completes or is well on its way to completing implementation of the Corinthian Group Discharge.)

(3) Clarification of what notices have been provided to class members in <u>Calvillo Manriquez v. U.S. Department of Education, et al.</u>, 17-cv-07210-SK, and to other borrowers eligible for relief under the Corinthian Group Discharge. In Addition, whether additional notices should be sent – particularly if prior notices have not been clear that eligible borrowers are entitled to full relief.

(4) Whether ED will consider the lessons learned and implement the effective methods utilized in <u>Sweet et al. v. Cardona, et al.</u>, 19-cv-03674-WHA, to complete implementation of the Corinthian Group Discharge. This includes but is not limited to using the relief methodology it has applied in the <u>Sweet</u> case to rapidly effectuate discharge of certain still outstanding ("terminal") consolidation loans.

(5) Detail on steps taken (or that will be taken) to ensure loans eligible under the Corinthian Group Discharge will not return to repayment status; and

(6) A proposed timeline for completion of the Corinthian Group Discharge.

The parties believe that additional time would be beneficial to allow them to continue their negotiations and respectfully request that the Court set a further deadline for a status report by November 8, 2024.

The parties are likely to suggest a Status Conference following the next Joint Status Report, to help ensure progress. They intend to propose dates for such a conference in their next joint submission.

| | | |
|---|---|---|
| 1 | Dated:   September 27, 2024 | Respectfully submitted, |
| 2 | | BRIAN D. NETTER |
| | | Deputy Assistant Attorney General |
| 3 | | |
| 4 | | MARCIA BERMAN |
| | | Assistant Branch Director |

/s/ Stuart J. Robinson
STUART J. ROBINSON
Senior Counsel
R. CHARLIE MERRITT
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(415) 436-6635
E-mail: stuart.j.robinson@usdoj.gov

*Attorneys for Defendants*


/s/  Bernard A. Eskandari
ROB BONTA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
BERNARD A. ESKANDARI (SBN 244395)
Supervising Deputy Attorney General
AMOS E. HARTSTON (SBN 186471)
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6348
Fax: (213) 897-4951
Email: bernard.eskandari@doj.ca.gov

*Attorneys for Plaintiff the People of the State of California*


/s/ Eileen M. Connor
EILEEN M. CONNOR (SBN 248856)
Project on Predatory Student Lending, Inc.
769 Centre Street, Suite 166
Jamaica Plain, MA 02130
Tel.: (617) 322-2271
Fax: (617) 781-9625
Email: econnor@ppsl.org

*Attorneys for Class Plaintiffs*

Joint Status Report
3:17-cv-7106-SK; 3:17-cv-7210-SK

Joint Status Report
3:17-cv-7106-SK; 3:17-cv-7210-SK