# U.S. Department of Education

# Office of Federal Student Aid

# Eighty-third Monthly Compliance Report in response to ECF 130, *Manriquez et al. v. McMahon*, Case No. 17-cv-07210-SK, U.S. District Court for the Northern District of California

**September 1, 2026**

## Introduction and Summary

Pursuant to the Court's Order of October 24, 2019, ECF No. 130, the U.S. Department of Education (the "Department") through its Federal Student Aid office ("FSA") submits its eighty-third monthly status report regarding its attempts to comply with the preliminary injunction in this case, *see* ECF No. 60. That injunction, as amended on June 19, 2018, ECF No. 70, and clarified on August 30, 2018, ECF No. 89, prevents the Department from collecting relevant student loan debts from members of the class that has been certified in this case.[1] *See also* Order Granting Mot. for Class Cert., ECF No. 96.

The Department is maintaining substantial compliance with the preliminary injunction by immediately placing newly identified potential class members in the appropriate repayment status to stop debt collection and maintaining potential class members in appropriate repayment status on an ongoing basis (e.g., forbearance).

The Department has continued sending borrower defense decision letters to certain borrowers as described in prior reports. To ensure that such borrowers who have been identified as potential class members in previous reports are kept in forbearance while federal loan servicers finish processing their adjudicated claims, the Department will continue to include these borrowers on the first tab of the attached spreadsheet as potential class members until their borrower defense claims are fully closed out and the changes to their federal loans are processed.

As in prior reports, this report includes a spreadsheet containing a list of the currently known potential class members, which the Department will separately move to file under seal due to the personally identifying information contained therein. For each potential class

[1] Because the borrowers covered by the preliminary injunction are co-extensive with the borrowers covered by the order certifying the class in this case, references to class members in this Report refer to borrowers covered by the preliminary injunction. *See* Order Certifying the Class, ECF No. 96; Amended PI Order ¶¶ A-C.

member, the spreadsheet includes information the Court has requested about the Department's attempts to comply with the preliminary injunction. Throughout the spreadsheet, "1" is used to answer "Yes," and "0" is used to answer "No." The spreadsheet contains three sections. The first section (pages 1 through 569) lists each potential class member and then provides answers for the Court's first, second, and seventh questions. The second section (pages 570 through 577) lists the subset of potential class members who were impacted by the Department's non-compliance. For these impacted borrowers, the spreadsheet provides answers to the Court's third, fourth, fifth, and sixth questions. Finally, the third section (page 578) contains an index of shorthand terms and abbreviations used throughout the spreadsheet.

The Department continues to take every reasonable effort to ensure compliance with the Court's injunction, including an ongoing process of monitoring and verifying borrower defense applications.

**1. Defendants' progress toward identifying which of the 74,781 potential class members are class members**

The potential class listed in the attachment currently consists of 80,722 borrowers, a net increase of 3 borrowers from the number reported in the August 3, 2026 Compliance Report. This change includes the addition of 9 borrowers to the potential class and the removal of 6 borrowers from the potential class. The additions to the potential class were the result of activity such as new borrower defense claims received by FSA, newly opened cases that were previously incomplete (e.g., claims initiated by borrowers, but not fully documented with supporting information or evidence), borrowers with only FFEL loans who recently consolidated into Direct Loans, and FSA's ongoing data validation and verification efforts. The borrowers who were removed had no federal loans to discharge. As previously indicated, the number of potential

class members will continue to be dynamic as new borrowers apply and validation and verification continue.

Of the 80,722 potential class members listed in the attachment, FSA has determined that 238 borrowers are currently confirmed class members (e.g., submitted a successful job placement rate ("JPR") claim against a Corinthian ("CCI") school and have outstanding Direct Loans).[2] This reflects no change from the August 3, 2026 report.

At this time, there are 5,485 still unconfirmed potential class members (a net decrease of 112 unconfirmed potential class members from last month's report). On June 1, 2022, however, the Department announced it will discharge all remaining federal student loans borrowed to attend any campus while it was owned or operated by CCI from its founding in 1995 through its closure in April 2015. This includes borrowers who have not yet applied for a borrower defense discharge. Consequently, because all remaining class members and unconfirmed potential class members will receive relief according to the announcement, FSA has ceased its ongoing efforts to determine the class status of the remaining still unconfirmed potential class members.

[2] In total, 74,999 of the 80,722 potential class members listed in the attachment are not confirmed class members because they no longer have pending borrower defense claims that potentially meet the criteria. This includes borrowers who have been adjudicated for 100% relief (as described in prior reports, such borrowers no longer qualify for membership in a class consisting of individuals "who have not received a full discharge of associated student loan debt and a return of any money the Department collected on the loan," ECF No. 96); borrowers who have been notified that they have been approved for 100% percent borrower defense relief; borrowers whose CCI JPR application has been determined ineligible because they did not attend the right program, did not attend during the right time period, or otherwise did not successfully fill out their application form; and borrowers whose borrower defense application was approved for a non-JPR claim. As previously noted, FSA will keep these borrowers on the list of potential class members on tab 1 until their borrower defense claims have been fully processed by the servicers.

**2. The repayment status of each potential and confirmed class member**

As stated in prior reports, the Department continues to maintain all identified potential class members in forbearance, stopped collections or a similar repayment status, unless a particular borrower has proactively opted out of that status.

The first section of the spreadsheet attachment provides the repayment status of each potential class member. For each potential class member not in forbearance or stopped collection status, the spreadsheet indicates the reason, such as being in an alternative status that is similar to forbearance (e.g., a $0/month income-driven repayment plan or in-school deferment status). The abbreviations and shorthand terms used on this portion of the spreadsheet are defined in the third section of that spreadsheet.

**3. Whether each potential and confirmed class member was erroneously taken out of forbearance or stopped collections status and whether the correct status has been restored**

FSA has continued its efforts to reduce the overcounting of impacts to potential class members. As explained in prior reports, FSA removed those borrowers from the impacted lists whose only impacts occurred (1) prior to the date they filed their borrower defense application or (2) within the reasonable amount of time it takes for FSA to process the borrower defense application.

FSA is continuing the process of confirming which borrowers in the impacted categories experienced debt collection activities caused by noncompliance with the injunction and identifying and removing those borrowers who only experienced debt collection activities unrelated to non-compliance with the injunction.

All 599 borrowers whom FSA has identified at some point as having been erroneously taken out of forbearance or stopped collections status are currently in the correct repayment

status. That is a net decrease of 3 borrowers since the August 3, 2026 Report. The issue impacted borrowers at multiple servicers. The servicers sent the billing notices in error and contrary to the Department's repeated express instructions that potential and confirmed class members should remain in forbearance. This was done as a result of various situations such as school enrollment updates and processing errors. All of these newly identified borrowers are currently in the correct repayment status and FSA will request refunds if any impacted borrower made payments. FSA has confirmed that borrowers erroneously billed have been sent notices to advise no payment is due.

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower was in an erroneous payment status and whether the status has been corrected.

**4. Whether each potential and confirmed class member made a payment or multiple payments due to Defendants' negligence, and whether refunds have been issued**

FSA has identified 590 borrowers who made one or more voluntary payments, a net decrease of 12 borrowers from the August 3, 2026 Report.

As discussed in prior compliance reports, the Department did not request that the U.S. Department of the Treasury process refunds for some of the potential class members identified at that time as having made voluntary payments because these borrowers appear to have made payments for reasons unrelated to the incorrect payment due notices they were sent, and so refunding these borrowers would lead to unintended consequences and potential financial harm. (*See* Nov. 2019 Report at 6-7 and Dec. 2019 Report at 10).

Additionally, FSA has identified 20 borrowers who may have already been issued refunds for payments they made prior to the last Report, but who are still voluntarily making payments on their student loans. This is no change from the August 3, 2026 Report. In light of

these borrowers' decision to continue making payments, FSA has categorized those borrowers on the spreadsheet as "During the time that the CARES Act protections were in place, borrower submitted additional payments."

For each potential class member impacted by the Department's non-compliance, the second section of the spreadsheet attachment indicates whether the borrower made one or more payments and refunds have been issued.

**5. Whether each potential and confirmed class member was erroneously subjected to wage garnishment or tax offset due to the Defendants' negligence, and whether refunds have been issued**

FSA has not identified any borrowers who were subjected to wage garnishment (no change from the August 3, 2026 Report) or tax offsets for this reporting period (no change from the August 3, 2026 Report). As part of FSA's ongoing validation and verification process, FSA identified no confirmed or potential class members who were subject to involuntary collection this past month.

**6. Whether each potential and confirmed class member was subject to adverse credit reporting due to Defendants' negligence, and whether each false credit report has been corrected**

FSA has completed or initiated credit corrections for all 32 borrowers listed in the spreadsheet as having been subject to adverse credit reporting, no change from the August 3, 2026 Report. As noted in prior reports, servicers have advised FSA that past adverse credit reporting for borrowers was in error and has been corrected.

**7. Whether each potential and confirmed class member has received the revised notice of Defendants' non-compliance, to be approved by the Court**

FSA completed distribution of the Court-approved notice to the members of the class as of December 31, 2019. In order to prevent any borrower confusion, FSA did not send class notifications to those borrowers who received separate notice of claim adjudication on December

11, 2019, and therefore did not have pending borrower defense applications at the time the revised notices were sent.

For each potential and confirmed class member, the first section of the spreadsheet attachment (starting on page 1) indicates whether the borrower was sent the revised notice.

**8. Whether Defendants have established a hotline and webpage specifically for Corinthian borrowers**

The Department's communications team has revised the StudentAid.gov website to include a link regarding this case in the "Announcement" section on the website's home page.[3] Additionally, highlighted and simplified language has been included on the linked webpage[4] within the website. As previously reported, these improvements were made on October 21, 2019. The communications team will continue to improve the website's content regarding this case and for Corinthian borrowers.

Additionally, the Department's communication team has improved the existing borrower defense telephone hotline at 1-855-279-6207, to include a targeted greeting, a dedicated menu option regarding this case, and current targeted information for customer service representatives to answer general questions regarding this litigation, as well as the adjudication and litigation class member notifications disseminated in December 2019.

**9. Any other information relevant to the Defendants' compliance with the preliminary injunction**

As reflected in past reports, on March 27, 2020 the CARES Act became law which, among other things, suspended all payments due for Department-held loans and extended the waiver of interest accrual on those loans. Pursuant to the Fiscal Responsibility Act of 2023

---

[3] https://studentaid.gov/

[4] https://studentaid.gov/announcements-events/corinthian#preliminary-injunction

(signed into law June 3, 2023), the waivers and modifications of statutory and regulatory provisions that allowed the payment pause and suspension of interest accrual ceased to be effective 60 days after June 30, 2023. Pub. L. No. 118-5, §271, 137 Stat. 10 (2023). Student loan interest resumed starting September 1, 2023, and payments for borrowers not covered by the preliminary injunction in this case resumed starting in October 2023.

The Department remains focused not only on remediating any harm to any and all borrowers that have been affected, but also on making strategic improvements to our operational program management and loan servicing oversight, control, and communication frameworks. The Department will continue its exhaustive efforts to verify, validate, and report on progress to ensure compliance with the terms of the Court's Order and reestablish the trust and confidence of our borrowers and the public.